**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMANDA MEO, on behalf of herself and all others similarly situated,<br><br>          Plaintiff,<br><br>    -against-<br><br>LANE BRYANT, INC.,<br><br>         Defendant. | Civil Action No.: 2:18-cv-06360 |

---

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**

---

MORGAN, LEWIS & BOCKIUS LLP

Sean P. Lynch
502 Carnegie Center
Princeton, New Jersey 08540
Phone: (609) 919-6611
Fax: (609) 919-6701
sean.lynch@morganlewis.com

Anne Marie Estevez
Morgan, Lewis & Bockius LLP
200 South Biscayne Boulevard – Suite 5300
Miami, FL 33131-2339
Tel: 305.415.3330
Fax: 877.432.9652
annemarie.estevez@morganlewis.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................................. 1

ARGUMENT ..................................................................................................................... 5

I.      The Court should disregard Plaintiff's declarations or, alternatively, exercise its
        discretion to afford them no weight on this motion. ............................................... 5

II.     Plaintiff's evidence is so objectively false that it cannot be considered. ........................... 8

III.    Even considering Plaintiff's evidence, certification is improper because the
        evidence confirms that liability must be determined on an individual basis for
        each store. ..................................................................................................................... 11

IV.     Though certification is not proper, any collective conditionally certified by the
        Court must be limited to New York locations. ................................................................. 14

V.      Plaintiff's Proposed Form And Methods of Notice Are Improper. ................................ 17

        A.      The Proposed Form of Notice Is Deficient. ......................................................... 17

        B.      Plaintiff's proposed method of dissemination of the notice is improper ............. 18

        C.      The proposed reminder notice is inappropriate. .................................................. 19

CONCLUSION ................................................................................................................. 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agerbrink v. Model Service*, LLC,
No. 14-7841, 2016 WL 406385 (S.D.N.Y. 2016)....................................................20

*Amendola v. Bristol-Myers Squibb Co.*,
558 F. Supp. 2d 459 (S.D.N.Y. 2008)..........................................................11, 13

*Anderson v. Minacs Group (USA) Inc.*,
No. 16-13942, 2017 WL 1856276 (E.D. Mich. May 9, 2017) ...............................19

*Bai v. Zhuo*,
No. 13-CV-5790(ILG)(SMG), 2014 WL 7385119 (E.D.N.Y. Dec. 29, 2014) ........7

*Benavides v. Serenity Spa NY Inc.*,
166 F. Supp. 3d 474 (S.D.N.Y. 2016)................................................................6, 7

*Bhumithanarn v. 22 Noodle Mkt. Corp.*,
No. 14-cv-2625(RJS), 2015 WL 4240985 (S.D.N.Y. July 13, 2015) ...................19

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cnty.*,
137 S. Ct. 1773 (2017)....................................................................................15, 16

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016).................................................................................15

*Castillo v. Perfume Worldwide Inc.*,
CV 17-2972 (JS)(AKT), 2018 WL 1581975 (E.D.N.Y. March 30, 2018) .......17, 18

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010).................................................................................14

*Daimler AG v. Bauman*,
571 U.S. 117 (2014).............................................................................................15

*Garriga v. Blonder Builders Inc.*,
CV 17-497(JMA)(AKT), 2018 WL 4861394 (E.D.N.Y. Sept. 28, 2018) ...6, 17, 18

*Guzelgurgenli v. Prime Time Specials Inc.*,
883 F. Supp. 2d 340 (E.D.N.Y. 2012) .................................................................19

*Hotaranu v. Star Nissan Inc.*,
16 CV 5320(KAM)(RML), 2017 WL 1390808 (S.D.N.Y. Apr. 12, 2017) .............19

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Iriarte v. Redwood Deli and Catering, Inc.*,
   07-cv-5062(FB)(SMG), 2008 WL 2622929 (E.D.N.Y. June 30, 2008) ...................................18

*Ji v. Jling Inc.*,
   15-cv-4194 (JMA)(SIL), 2016 WL 2939154 (E.D.N.Y. May 19, 2016) ...............................6

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007).....................................................................................18

*Lujan v. Cabana Mgmt., Inc.*,
   284 F.R.D. 50 (E.D.N.Y. 2012) ...............................................................................5, 6

*Maclin v. Reliable Reports of Tex., Inc.*,
   314 F. Supp. 3d 845 (N.D. Ohio 2018)..................................................................16, 17

*Martin v. Sprint/United Mgmt. Co.*,
   15-cv-5237(PAE), 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016) ................................19

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)........................................................................................6

*PDK Labs, Inc. v. Friedlander*,
   103 F.3d 1105 (2d Cir. 1997)....................................................................................14

*Qi Zhang v. Bally Produce, Inc.*,
   12-cv-1045(FB)(JMA), 2013 WL 1729274 ..............................................................6

*Roy v. FedEx Ground Package Sys., Inc.*,
   --- F. Supp. 3d ---, 17-cv-30116-KAR, 2018 WL 6179504 (D. Mass. 2018).........................17

*Sharma v. Burberry Ltd.*,
   52 F. Supp. 3d 443 (E.D.N.Y. 2014) ................................................................5, 7

*Slamna v. API Rest. Corp.*,
   12-cv-757(RWS), 2013 WL 3340290 (S.D.N.Y. July 2, 2013).............................18

*Sonera Holding B.V. v Cukurova Holding A.S.*,
   750 F.3d 221 (2d Cir. 2014)......................................................................................15

*Spagnuoli v. Louie's Seafood Rest., LLC*,
   No. CV 13-4907(ADS)(ARL), 2014 WL 2534836 (E.D.N.Y. June 5, 2014) .................5, 6, 7

*Tanski v. Avalonbay Communities, Inc.*,
   15-cv-6260 (AKT), 2017 U.S. Dist. LEXIS 112506 (E.D.N.Y. March 31,
   2017) ............................................................................................................18, 19

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Trinidad v. Pret A. Manger (USA) Ltd.*,
   962 F. Supp. 2d 545 (S.D.N.Y. 2013)..........................................................................5

*Velazquez v. Digital Page, Inc.*,
   11-cv-3892(LDW)(AKT), 2014 WL 2048425 (E.D.N.Y. May 19, 2014) ...........................17

*Weiss v. Nat'l Westminster Bank PLC*,
   176 F. Supp. 3d 264 (E.D.N.Y. 2016) ....................................................................15

Plaintiff Amanda Meo's Motion fails to satisfy even the low standard for conditional certification.  Specifically:

- The declarations submitted by Plaintiff cannot form the basis of a conditional certification order as they are objectively unreliable and demonstrably false.  The paystubs and payroll records of Plaintiff and the opt-in declarants, as well as sworn statements from the very store managers referenced in Plaintiff's declarations, prove the inaccuracy of the statements in Plaintiff's declarations and the absence of any unlawful common plan or policy.  The Court should disregard those sham declarations.

- Even if her sham declarations are considered, Plaintiff has failed to show that an unlawful common plan or practice underlies the asserted claim.  The record confirms that the experiences of Store Managers vary so widely that liability can only be assessed individually based on specific, idiosyncratic factors unique to each Store Manager.

- Even if conditional certification were otherwise permissible, the Court lacks sufficient personal jurisdiction over Lane Bryant to adjudicate a nationwide FLSA collective.  Lane Bryant is not subject to general jurisdiction in the Eastern District of New York.  Instead, Lane Bryant is only subject to specific jurisdiction in New York.  Thus, if a collective is conditionally certified, it must be limited to New York locations.

- Plaintiff's proposed form of notice and methods of dissemination suffer from multiple deficiencies as confirmed by this Court's prior, indistinguishable decisions.

Authorizing notice to a nationwide class based upon a generic and plainly false allegation of a "de facto" "no overtime policy" resulting from "workplace pressures," and factually bankrupt declarations that are refuted by documentary evidence and sworn statements from multiple putative class members would reduce the already low "phase one" collective certification burden to a true rubber stamp.  As that is not the law, Plaintiff's Motion should be denied in its entirety.

Further, Plaintiff's proposed notice is deficient and inconsistent with this Court's prior decisions and Plaintiff's proposed methods of dissemination are unwarranted in this action.

## BACKGROUND

Lane Bryant is nationally recognized retailer specializing in plus-size women's apparel that is headquartered in Columbus, Ohio.[1]  Lane Bryant operates more than 700 stores across 46 states,

---

[1] Ex. A (Hilton Decl.), ¶ 3.  References herein to "Ex. __" are to the exhibits attached to the Declaration of Sean P. Lynch dated February 21, 2019.  References to "Exh. __" are to the exhibits filed by Plaintiff on January 25, 2019 (ECF. No. 12).

each with a Store Manager who reports to a District Manager.[2]  At all times relevant to this case, Store Managers have been paid on an hourly-plus-overtime basis.[3]

Lane Bryant prides itself on the extraordinary effort it makes to cultivate happy, well-paid, long-term employees at every level of its organization.  At the core of that effort, Lane Bryant continually impresses upon its employees the importance of work-life balance, and it takes steps to make it easier for employees to meet the challenges of their professional and personal lives.[4] Lane Bryant instructs its employees that, while client service is paramount and may require overtime, working excessive hours is not personally or professionally healthy, beneficial to the company, or in employees' best interests.[5]  As a result, Store Managers are permitted to work overtime to meet business needs, but encouraged to make every effort to distribute work in a way that allows them to stay around 37.5 hours per week in most weeks.[6]

Lane Bryant made several changes over the past several years to make striking the right balance easier for Store Managers:

- Lane Bryant transitioned Store Managers to hourly-based pay to provide greater predictability to working hours and better help Lane Bryant identify situations where Store Managers were doing too much themselves and needed additional resources.[7]

- Lane Bryant created a dedicated block of "office time" for Store Managers each week and allocated extra Associate hours to stores to allow Store Managers to leave the floor to perform other job-related, non-selling tasks.  During that time, Store Managers work in the store office  preparing schedules, completing reports, and participating in calls.[8]

- Lane Bryant implemented the Matrix scheduling software tool, which automated the process of determining appropriate staffing and shift lengths. With Matrix, Store Managers need only "drag and drop" team members into the pre-calculated shifts.  Since Matrix is

---

[2] *Id.*
[3] *Id.,* ¶ 4.
[4] *Id.,* ¶ 5; *see also* Ex. E (Costello Decl.), ¶ 8; Ex. M, ¶ 11; Ex. O, ¶ 6-7.
[5] Ex. A, ¶ 6.
[6] *Id.*; *see also* Ex. B (Russo Decl.), ¶¶ 3-4, 11; Ex. C (Vigue Decl.), ¶ 4; Ex. D (Stevens Decl.) ¶ 3; Ex. E (Costello Decl.), ¶ 4; Ex. I (Golding Decl.) ¶ 4, 11; Ex. H (Mooney Decl.) ¶ 11.
[7] Ex. A, ¶ 4.
[8] *Id.,* ¶ 7; *see also* Ex. F (Czako Decl.), ¶ 12; Ex. D, ¶ 8; Ex. J (Pasour Decl.) ¶ 8.

accessible only on the store computer, scheduling must be done there.[9]

As a result, Store Managers typically work at or below 40 hours per week almost every week.[10]  In fact numerous declarants confirm that they regularly schedule themselves for 37-40 hours per week and have ample time to complete their job in that period.[11]

This desire to maintain a healthy work-life balance also serves as the foundation for Lane Bryant's explicit and aggressively-enforced timekeeping policy, which emphasizes that employees *must* report and Lane Bryant *will pay* all time worked.[12]  After all, Lane Bryant cannot be sure it is providing adequate personnel resources to its team if it does not know how much they are working.[13]  Beginning the day a Store Manager joins Lane Bryant, she is instructed that all time doing any form of work in furtherance of Lane Bryant's business must be reported.  This message is delivered through a number of channels, including orientation, the employee handbook, regularly distributed memoranda, during district conference calls, and through informal reminders by each level of management to their direct reports.[14]  It is also strictly enforced. *See* Ex. R (Ambrose Decl.) (detailing how opt-in Davis was terminated for allowing off-the-clock work).

Time keeping is conducted through a terminal located in each store.[15]  However, Lane Bryant makes clear that any work performed outside the store of any sort for any reason must be reported and will be compensated.[16]  For example, when a Store Manager travels to another store

---

[9] Ex. A, ¶ 8; Ex. B, ¶ 7 (must be in store for scheduling); Ex. C, ¶ 7; Ex. D, ¶ 10; Ex. K (Bosnich Decl.) ¶ 11; Ex. O (Hogan Decl.) ¶ 10.

[10] Ex. A, ¶¶ 12-13; *see also* Ex. A, Attachment 3 (summary of payroll and timestamp data).

[11] *See* Ex. E, ¶ 4; Ex. C, ¶ 4; Ex. D, ¶ 3; Ex. H (Mooney Decl.), ¶ 11; Ex. I (Golding Decl.) ¶ 4; Ex. O (Hogan Decl.), ¶3; Ex. G (Foster Decl.), ¶ 3 (describing reduced 32-34 hour schedule).

[12] Ex. A, ¶¶ 9-10; *see also* Ex. A, Attachment 1 ("Time Keeping and Pay Policy"); Ex. A., Attachment 2 ("Operational Guidelines").  Declarant Seymour initialed and signed this copy of Operational Guideline that she now contradicts in her declaration.  *Compare* Ex. A, Attachment 1 ¶¶ 79, 82, 83, 84 *with* Exh. G (Seymour Decl.), ¶¶ 5, 9.

[13] Ex. A, ¶ 12.

[14] Ex. A, Attach. 2; Ex. D, ¶ 4, 12; Ex. E, ¶ 6; Ex. F, ¶ 4; Ex. L ¶ 4, Ex. O ¶ 8; Ex. Q, ¶6.

[15] Ex. A, ¶ 8; *see, e.g.*, Ex. B, ¶ 5; Ex. L, ¶ 5.

[16] *See, e.g.*, Ex. D, ¶ 7; Ex. G, ¶¶ 4, 6-9; Ex. C, ¶¶ 4, 6; Ex. M, ¶ 8.

to provide training or coverage, Lane Bryant pays travel time and mileage for the drive to the other store, all time worked at the other store, and return travel time and mileage in addition to any reported time in the store.[17]   Additionally, though Store Managers are expressly discouraged from participating in work calls outside their scheduled shifts, they are instructed to report any time spent on such calls and, when reported as required, that time is always paid.[18]   Store Managers utilize two different methods to track this occasional out-of-store work time.  Some contact another team member in the store and have them make the time adjustment that the Store Manager later ratifies.[19]   Others keep their own records of out-of-office time worked and then make an upward correction upon returning to their home store with assistance of another team member.[20] Regardless, absence from the store is not an excuse for not reporting time.[21]

This mandatory reporting is paired with equally rigorous payment policies.  For instance, Lane Bryant pays overtime *to the minute*.[22]   Lane Bryant pays even such legally *de minimis* increments to reinforce to its team that it values all work performed and all reported time, no matter how brief, will be paid.[23]   In fact, Plaintiff and at least one opt-in reported and received payment for increments as little as one minute of overtime in various pay periods.[24]   Meanwhile, though Lane Bryant seeks to minimize overtime through resource allocation, it regularly pays out overtime to Store Managers across its stores.  Plaintiff and the opt-in declarants reported overtime during

---

[17] Ex. E, ¶ 12; Ex. G, ¶ 7; Ex. K, ¶ 7, Ex. N (Gargano Decl.), ¶ 8.
[18] Ex. F, ¶ 11; Ex. G, ¶ 8; *see also* Ex. D, ¶ 6 ("It has been made clear to me that even calling into conference calls on a day off is not appropriate and should be handled by whomever is working that day."); Ex. E, ¶ 13.
[19] *See, e.g.*, Ex. F., ¶ 10.
[20] *See, e.g.*, Ex. D, ¶ 7; *see also* Ex. B, ¶ 6.
[21] Ex. A, ¶ 9.
[22] *See* Ex. A., ¶ 13.
[23] *Id.*
[24] *See* Ex. A, Attachment 7 (showing payment of one-minute increment to A. Meo) and Attachment 8 (showing payment of one-minute increment to D. Koehler).

45.3% of their pay periods during the three years between October 2015 and October 2018.[25]  In

fact, Lane Bryant paid over 82,000 hours of weekly overtime *to Store Managers* in that period.[26]

## ARGUMENT

I.      **The Court should disregard Plaintiff's declarations or, alternatively, exercise its discretion to afford them no weight on this motion.**

The declarations that Plaintiff submits to suggest the existence of similarly situated

individuals and a common unlawful practice are so facially inaccurate that the Court should

disregard them outright or, in the alternative, afford them *de minimis* probative weight.  As detailed

herein, the statements in those declarations are so patently wrong that relying upon them would be

manifestly unjust and render the Court's "phase one" analysis meaningless.

Lane Bryant does not make this request to disregard Plaintiff's declarations lightly.  It does

so cognizant that – at this stage – this Court generally does not engage in individualized inquiries

to resolve factual disputes, decide substantive merits issues, or make credibility determinations

and that this court does not typically address motions to strike or evidentiary challenges where the

parties contest ""minor inconsistenc[ies]" in the evidence.  *See e.g. Sharma v. Burberry Ltd.*, 52

F. Supp. 3d 443, 456 (E.D.N.Y. 2014); *Spagnuoli v. Louie's Seafood Rest., LLC*, No. 13-cv-

4907(ADS)(ARL), 2014 WL 2534836, at *3 (E.D.N.Y. June 5, 2014); *see also Trinidad v. Pret A.*

*Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 554 (S.D.N.Y. 2013) (indicating "minor inconsistencies

will go to the credibility of the declarant. . . rather than the admissibility of the testimony").  **This,**

**however, is a different situation.**

As detailed below, the frequency and substance of Plaintiff's discernibly false "evidence"

amounts to more than the "minor inconsistencies" as discussed in *Sharma*.  *Cf. Lujan v. Cabana*

*Mgmt., Inc.*, 284 F.R.D. 50, 67 (E.D.N.Y. 2012) (describing statement that plaintiffs "were always

---

[25] Ex. A, ¶ 17; *see also* Ex. A, Attachment 4.
[26] *Id.,* ¶ 18.

paid by two paychecks" and later concession that such "practice occurred only for a short period in 2007" as "minor inconsistencies [that] go to the credibility of the declarants and do not alone warrant striking their declarations").  Here, irrefutable, objective evidence confirms that the self-serving statements Plaintiff proffers to induce the Court to send notice to hundreds of people have no basis in fact.  *See Spagnuoli*, 2014 WL 2534836, at *4 (denying certification, noting "[t]he court is required even at this stage of the conditional certification process to verify that the named plaintiffs and other potential plaintiffs were victims of a common plan and policy that violated the law and is unable to do so" since "plaintiffs' papers in support of their motion for conditional certification are so riddled with errors and inconsistencies that the court is concerned that they are not reliable").  In that case, the Court should disregard any "evidence" lacking a factual basis.  *Id*.

On this point, it bears noting that Lane Bryant is **not** requesting the resolution of a fact dispute or credibility conflict.  Rather, Lane Bryant contends that the Court's issuance of notice based upon objectively inaccurate evidence would be manifestly unjust and render conditional certification a *per se* right, even where it is premised on conclusively false assertions.  That is not the law.  *See Garriga v. Blonder Builders Inc.*, 17-cv-497(JMA)(AKT), 2018 WL 4861394, at *3 (E.D.N.Y. Sept. 28, 2018) (standard for conditional certification may be lenient, but "it is not non-existent – certification is not automatic"); *Ji v. Jling Inc.*, 15-cv-4194 (JMA)(SIL), 2016 WL 2939154, at *4 (E.D.N.Y. May 19, 2016) (denying conditional certification); *Qi Zhang v. Bally Produce, Inc.*, No. 12-CV-1045(FB)(JMA), 2013 WL 1729274, *2 (stating that plaintiffs were required to show that the named plaintiffs and potential plaintiffs "'together were victims of a common policy or plan that violated the law.'") (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  Even at this stage of the proceeding, the Court has a gatekeeping role to ensure that the motion before it is based upon fact rather than fiction.  *See e.g. Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 481-82 (S.D.N.Y. 2016) (examining the sufficiency of plaintiff's

assertions regarding her own observations and conversations with other employees).  Consistent with that, the Court need not, and indeed should not, consider declarations that are plainly inaccurate, let alone invite hundreds of individuals to join a lawsuit based on such "evidence." Here, even a cursory review of the record confirms that the declarations upon which Plaintiff's motion is based do not have any ring of truth.  They should, therefore, be disregarded.

In the alternative, the Court should exercise its discretion to afford Plaintiff's declarations the weight that they deserve – none.  This Court has previously recognized its own inherent "discretion to determine the weight to assign to the various declarations" when assessing conditional certification.  *Sharma*, 52 F. Supp. 3d at 454 ("[I]t is in the Court's discretion to determine the weight to assign to the various declarations.") (internal citations omitted).  This case presents a uniquely troubling example of a circumstance – for the detailed reasons set forth below – where that discretion should be exercised to look past Plaintiff's deeply defective submissions and address the real facts underlying Plaintiff's Motion.

Importantly, Lane Bryant is not requesting that the Court weigh the merits of Plaintiff's claims.  Because Plaintiff relies solely upon "evidence" that is demonstrably wrong, Plaintiff has, in effect, submitted no cognizable evidence in support of her required elements—similarly situated status and the existence of a uniform unlawful policy.  *See Bai v. Zhuo*, No. 13-cv-5790(ILG)(SMG), 2014 WL 7385119, at *1 (E.D.N.Y. Dec. 29, 2014) ("bare-bones" affidavits were "factually inaccurate" as to "purportedly similarly situated co-workers" and "'not reliable evidence of defendants' pay practices'" and thus "did not even make the 'modest showing' required for preliminary certification"); *Spagnuoli*, 2014 WL 2534836, at *4 (denying certification because "plaintiffs' papers in support of their motion for conditional certification are so riddled with errors and inconsistencies that the court is concerned that they are not reliable").

Regardless of whether the Court disregards Plaintiff's declarations in their entirety or

affords them no evidentiary weight, the result is the same: Plaintiff has failed to meet her burden of establishing that conditional certification is proper.

## II.    Plaintiff's evidence is so objectively false that it cannot be considered.

The declarations submitted by Plaintiff and the opt-ins are rife with major, material, and objectively unsupportable assertions designed to induce this Court to authorize the sending of notice. The inaccurate statements fall into three categories: (1) incorrect claims that declarants were not permitted to report all time worked; (2) false claims that overtime was rarely if ever approved or paid; and (3) incorrect claims that others had – and reported – similar experiences.  Taking each in turn, first, Lane Bryant's timekeeping and payroll records show that the declarants and other Store Managers regularly report overtime, including some employees reporting overtime every pay period:

| AVERMENTS/ALLEGATIONS | |
|---|---|
| "I generally only recorded approximately 40 hours per week." | |
| "My District Managers told me I could not record overtime hours work and had to record at or around 40 or less hours of work each week . . ." | |
| **REALITY** | |
| The declarants recorded overtime in approximately **45.3%** of pay periods. | |
| Amanda Meo | Recorded overtime in **17.2%** of pay periods.[27] |
| Allison Smith | Recorded overtime in **60%** of pay periods. |
| Debra Devlin | Recorded overtime in **17.9%** of pay periods. |
| Diana Koehler | Recorded overtime in **100%** of pay periods. |
| Ivory Davis | Recorded overtime in **39.7%** of pay periods. |
| Jennifer Seymour | Recorded overtime in **27.5%** of pay periods. |
| Monico-Jo Marchand | Recorded overtime in **40%** of pay periods. |
| Sheena Clark | Recorded overtime in **78.6%** of pay periods. |
| Susan McCreery | Recorded overtime in **27.1%** of pay periods. |

*Compare* Exh. B (Meo Decl.) at ¶¶ 6-7, 11; Exh. C (Smith Decl.) at ¶¶ 7-8, 12, 14; Exh. D (Devlin Decl.), at ¶¶ 7-8, 11; Exh. E (Koehler Decl.), at ¶¶ 7-8, 13; Exh. F (Davis Decl.), at ¶¶ 5, 7, 11; Exh. G at ¶¶ 5-6, 9-10; Exh. H (Marchand Decl.), at ¶¶ 5–6, 9, 12; Exh. I (Clark Decl.), at ¶¶ 4-5,

---

[27] Reporting statistics were calculated using the period of October 2015 through present.  Without waiving any arguments regarding the applicable statutory period, this period is expanded one month beyond the November 2015 earliest possible FLSA statutory cutoff out of an abundance and in an effort to provide the most reasonably complete picture of the data.

10, 12; Exh. J (McCreery Decl.), at ¶¶ 6-7, 10-11 *with* Ex. A (Hilton Decl.) at ¶ 18.  Thus, the

claim that the declarants were not allowed to record overtime or forced to work off-the-clock under

a blanket policy to always stay below 40 hours per week is just plain wrong.

Likewise, the suggestion that Lane Bryant did not approve or pay overtime is false based

on declarants own time records and paystubs:

| AVERMENTS/ALLEGATIONS | | |
|---|---|---|
| "Due to Lane Bryant's no-overtime reporting policy, I worked many hours each workweek without compensation." | | |
| **REALITY** | | |
| In weeks where they did work OT, the declarants were collectively paid a total of 280.35 hours of overtime.  The declarants reported OT in amounts as small as one minute. | | |
| Amanda Meo | Total OT Paid During Period: | 7.32 hrs. |
| | Range of OT Reported and Paid: | 1 min to 7 hrs. 7 min. |
| Allison Smith | Total OT Paid During Period: | 40.52 hrs. |
| | Range of OT Reported and Paid: | 45 min. to 11 hrs. 48 min. |
| Debra Devlin | Total OT Paid During Period: | 1.64 hrs. |
| | Range of OT Reported and Paid: | 5 min. to 1 hrs. 14 min. |
| Diana Koehler | Total OT Paid During Period: | 30.3 hrs. |
| | Range of OT Reported and Paid: | 1 hr. 36 min. to 14 hrs. 36 min. |
| Ivory Davis | Total OT Paid During Period: | 101.1 hrs. |
| | Range of OT Reported and Paid: | 1 min to 16 hrs. 14 min. |
| Jennifer Seymour | Total OT Paid During Period: | 14.72 hrs. |
| | Range of OT Reported and Paid: | 1 min. to 6 hrs. 4 min. |
| Monico-Jo Marchand | Total OT Paid During Period: | 29.22 hrs. |
| | Range of OT Reported and Paid: | 29 min. to 3 hrs. 13 min. |
| Sheena Clark | Total OT Paid During Period: | 20.07 hrs. |
| | Range of OT Reported and Paid: | 22 min. to 6 hrs. 29 min. |
| Susan McCreery | Total OT Paid During Period: | 62.46 hrs. |
| | Range of OT Reported and Paid: | 7 min. to 14 hrs. 8 min. |

*See Compare* Exh. B at ¶¶ 7, 12; Exh. C at ¶¶ 7, 11-12, 14–15; Exh. D at ¶¶ 7, 9, 14; Exh. E at ¶¶

11, 13-14; Exh. F at ¶¶ 6, 10–11, 14; Exh. G at ¶¶ 10, 13; Exh. H at ¶¶ 5-6, 12–13; Exh. I at ¶¶ 4,

9-10, 12; Exh. J at ¶¶ 6, 12-14 *with* Ex. A at ¶ 16 (setting forth totals) and Attachment 4 (providing

underlying range data).  In other words, the objective evidence shows that: (1) the declarants were

all paid overtime in material amounts; and (2) the declarants reported overtime in a range from

one minute up to 14+ hours.  As a result, the suggestion that Plaintiff or the opt-ins were prohibited

from ever—or even regularly—making such reports of overtime is belied by their own pay records.

Even more troubling, the declarants falsely identify Store Managers who allegedly reported working off-the-clock.  The declarants identified 15 Store Managers who have not joined the lawsuit who they claim are similarly situated.  The statements about those individuals are patently false and should be disregarded.  More specifically:

- Five of the named Store Managers—Lori Foster, Elizabeth Wagner, Candy Fall, Amy Sampert, and Anita Gargano—have submitted sworn declarations directly refuting the suggestion that they worked off-the-clock or represented that they did and that a no-overtime policy exists.  They each confirm that they have always been paid for every bit of work they perform – including overtime.  *See* Ex. G at ¶ 10 (Foster); Ex. M at ¶ 8-9 (Wagner); Ex. N at ¶ 3-5(Gargano); Ex. Q at ¶ 12-16 (Fall); Ex. P at ¶ 9-12 (Sampert).

- One of the Store Managers who, according to Plaintiff's declarations, reporting working over 40 hours per week without being paid – Lori Foster – has been working a reduced 32-34 hour schedule as a medical accommodation for over five years.  *See* Ex. G at ¶ 3.

- Four of the other named Store Managers – Anne Vaughn, Nicole Holmes, Kelly Chimera and Jill Thomas – left Lane Bryant prior to the limitations period, with Chimera and Thomas having left before the Store Manager position even became hourly.  None of them could have possibly worked off-the-clock during the relevant period. *See* Ex. A at ¶ 23-24.

- Lane Bryant cannot identify two of the Store Managers referenced solely by first name – Sherise and Angela – as it has no record of people with those names at the listed locations. *See id.* at ¶ 25.

The payroll data on the remaining named individuals provides even more clear evidence that—at least for those individuals—they were permitted to, and regularly did, report overtime:

| Heather Burke | Terri Webster |
|---|---|
| Total OT Paid During Period: 101.85 hrs.<br>Percent OT Periods: 94.12%<br>OT Range: 2 min. to 12 hrs. 43 min. | Total OT Paid During Period: 36.43 hrs.<br>Percent OT Periods: 34.67%<br>OT Range: 5 min. to 4 hrs. 7 min. |
| **Mario Laboy** | **Ayana Isaac** |
| Total OT Paid During Period: 257.04 hrs.<br>Percent OT Periods: 79.17%<br>OT Range: 1 min. to 21 hrs. 27 min. | Total OT Paid During Period: 41.38 hrs.<br>Percent OT Periods: 53.33%<br>OT Range: 22 min. to 12 hrs. 30 min. |
| **Christina Acuna** | **Elizabeth Flores** |
| Total OT Paid During Period: 147.91 hrs.<br>Percent OT Periods: 76.25%<br>OT Range: 1 min. to 13 hrs. 30 min. | Total OT Paid During Period: 2.52 hrs.<br>Percent OT Periods: 13.64%<br>OT Range: 3 min. to 54 min. |

*See* Ex. A at ¶ 19, Attachment 4.  In other words, the 6 remaining Store Managers who the

declarants claim were bound by the same alleged "no overtime" policy reported and were paid for **587.58** hours of overtime and reported overtime hours during 58.53% of pay periods during the relevant period.  In light of that record, the Court should disregard – or give zero weight to – Plaintiff's declarations.

**III.  Even considering Plaintiff's evidence, certification is improper because the evidence confirms that liability must be determined on an individual basis for each store.**

Plaintiff's evidence, even if accepted, fails to establish that she and the other putative class members were subjected to a common policy or plan that violated the law.  Through her submissions, Plaintiff has—at best—shown that overtime practices vary widely from store to store.  Specifically, none of declarants have presented personal knowledge of the practices in other stores or unrebutted accounts of similarly situated individuals.  Meanwhile, Lane Bryant has submitted 15 declarations of its own describing the operations of stores in which Plaintiff and the opt-ins did not perform work.  These submissions by the parties show that, if Plaintiff's evidence is taken as true, some Store Managers encountered something that led them to personally refrain from reporting overtime while other Store Managers consistently adhered to Lane Bryant's express written policy regarding overtime and prohibiting off-the-clock work.  This discrepancy precludes any finding that a common unlawful policy or plan may encompass the entire putative collective.

Where an FLSA plaintiff fails to carry the burden of showing that she and the other putative collective action members were victims of a common policy or plan that violated the law or where a defendant employer shows either that the potential recipients of the notice of FLSA collective action are not similarly situated to the plaintiff or that it will likely succeed at trial in proving that the employees are not entitled under the FLSA to overtime compensation, a court may refuse to authorize notice or postpone deciding the issue pending further discovery and motion practice. *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 n.9 (S.D.N.Y. 2008).

Here, if Plaintiff's declarations are credited, the evidence before the Court paints the picture of—at most—an organization with practices that vary dramatically from store to store.  In fact, it shows that different Store Managers reporting to the same District Manager had markedly different experiences with respect to overtime and off-the-clock work.  For example:

| PLAINTIFF'S AND DECLARANTS' ALLEGED EXPERIENCE | |
|---|---|
| __Allegation__ | __Cites__ |
| District Manager prohibited overtime and I feared punishment if I reported overtime. | Exh. B, ¶¶ 8–9; Exh. C, ¶¶ 11, 13-14; Exh. D, ¶¶ 9-11; Exh. E, ¶¶ 11-13; Exh. F, ¶¶ 10, 12-13; Exh. G, ¶¶ 9-12; Exh. H, ¶¶ 5-6, 10-11; Exh. I, ¶¶ 9, 11; Exh. J, ¶¶ 6, 10-12. |
| District Manager encouraged off-the-clock work. | Exh. B, ¶ 8; Exh. C, ¶ 11; Exh. D, ¶ 9; Exh. E, ¶ 11; Exh. F, ¶ 10; Exh. G, ¶ 9; Exh. H, ¶¶ 5, 12; Exh. I, ¶ 9; Exh. J, ¶¶ 6, 12. |
| Store Manager role usually required + 40 hours. | Exh. B, ¶¶ 6, 11; Exh. C, ¶¶ 7–8; Exh. D, ¶¶ 7-8; Exh. E, ¶¶ 7-8; Exh. F, ¶¶ 5, 7; Exh. G, ¶¶ 5-6; Exh. H, ¶¶ 5, 9; Exh. I, ¶¶ 4-5; Exh. J, ¶¶ 6-7. |
| I did not report all of my time. | Exh. B, ¶¶ 6-7, 11; Exh. C, ¶¶ 7-8, 12, 14; Exh. D, ¶¶ 7-8, 11; Exh. E, ¶¶ 7–8, 13; Exh. F, ¶¶ 5, 7, 11; Exh. G, ¶¶ 5–6, 9-10; Exh. H, ¶¶ 5-6, 9, 12; Exh. I, ¶¶ 4-5, 10, 12; Exh. J, ¶¶ 6-7, 10-11. |
| I was not permitted to report overtime. | Exh. B, ¶¶ 8, 12; Exh. C, ¶¶ 11-12, 14–15; Exh. D, ¶¶ 7, 9, 14; Exh. E, ¶¶ 11, 13-14; Exh. F, ¶¶ 10-11, 14; Exh. G, ¶¶ 5, 9, 13; Exh. H, ¶¶ 5-6, 13; Exh. I, ¶¶ 4, 9-10, 12; Exh. J, ¶¶ 6, 12, 14. |
| I performed uncompensated work outside the store. | Exh. B, ¶ 11; Exh. C, ¶ 8; Exh. D, ¶ 8; Exh. E, ¶ 8; Exh. F, ¶ 7; Exh. G, ¶ 6; Exh. H, ¶ 9; Exh. I, ¶ 5; Exh. J, ¶ 7. |
| I could not report time for work performed outside the store because of the timekeeping system. | Exh. B, ¶ 11; Exh. C, ¶ 10; Exh. D, ¶ 13; Exh. E, ¶ 10; Exh. F, ¶ 9; Exh. G, ¶ 8; Exh. H, ¶ 9; Exh. I, ¶ 6; Exh. J, ¶ 8. |
| LANE BRYANT DECLARANTS' ALLEGED EXPERIENCE | |
| __Allegation__ | __Citations__ |
| District Manager never prohibited overtime and I had no issue with reporting overtime. | Ex. B, ¶¶ 8, 10; Ex. C, ¶¶ 3-4; Ex. D, ¶¶ 5, 12-13; Ex. E, ¶¶ 5, 10; Ex. F, ¶ 6; Ex. J, ¶ 4; Ex. L, ¶ 6 |
| District Manager explicitly prohibited off-the-clock work and reinforced that rule. | Ex. B, ¶ 9-10; Ex. D, ¶ 12; Ex. C, ¶ 4; Ex. F, ¶ 4; Ex. I, ¶ 5; Ex. J, ¶ 4; Ex. Q, ¶ 6 |
| Store Manager role did not require more than 40 hours per week on a regular basis. | Ex. B, ¶ 11; Ex. C, ¶ 4; Ex. D, ¶¶ 3-4; Ex. E, ¶ 4; Ex. F, ¶ 7; Ex. P, ¶ 6-7 |
| I reported all of my time. | Ex. C, ¶ 3; Ex. D, ¶¶ 12-13; Ex. E, ¶ 14; Ex. F, ¶ 14; Ex. I, ¶ 5; Ex. J, ¶ 12; Ex. K, ¶ 9; Ex. N, ¶ 4; Ex. P, ¶ 4 *see also* Ex. B., ¶ 5. |
| I was permitted to report overtime. | Ex. C, ¶ 4; Ex. D, ¶ 5; Ex. E, ¶ 10; Ex. F, ¶¶ 6-7; Ex. K ¶ 5; Ex. J, ¶ 6 |

| I performed no work outside the store; or I was paid for all work outside the store. | Ex. C, ¶¶ 5-7; Ex. D, ¶¶ 6-7; Ex. E, ¶¶ 11-14; Ex. F, ¶¶ 9-11; Ex. I ¶ 6; Ex. Q, ¶ 7-9 |
|---|---|
| I knew how to and was able to report my time if I performed work outside the store. | Ex. B, ¶ 5; Ex. D, ¶ 7; Ex. E, ¶ 11-12; Ex. F, ¶ 8; Ex. Q, ¶ 7 |

Putting aside any issues of credibility, these declarations (which include declarations from people specifically identified by Plaintiff as having the same experience as she alleges) show that Store Managers across Lane Bryant had very different experiences, such that it is unreasonable to infer for certification purposes that they were subject to a common policy or practice of prohibiting overtime while assigning more work than can performed in 40 hours. Thus, these differing Store Manager experiences defeat any finding or inference that all Lane Bryant Store Managers were subject to a common policy or plan that violated the FLSA.

If a collective is certified, individualized inquiries will predominate, such as: Why did each Store Manager individually choose to either adhere to or deviate from Lane Bryant's express, written, lawful time reporting policies? The assessment of that question will require evidence of each person's personal interactions with Lane Bryant management, their personal interpretation of Lane Bryant's written policies, and the distinct issues that caused some Store Managers to work longer hours and report more overtime than others. In other words, liability will turn upon Plaintiff's ability to prove that Lane Bryant imposed a *de facto* time reporting and payment policy that each member of the class subjectively understood to trump Lane Bryant's explicitly contrary time reporting and payment policy through highly individualized evidence of subjective experiences. Hence, evidence from any given Store Manager will not be susceptible to generalization to the rest of the putative collective to establish the legally required "common policy or plan that violated the law." *See Amendola*, 558 F. Supp. 2d at 467 n.9.

To be clear, Plaintiff and the opt-ins (many of whom were prompted to join this suit via a Facebook ad campaign by Plaintiff's counsel – *See* Ex. S) may individually pursue their claims

against Lane Bryant and attempt to prove that they were personally prohibited from reporting time and receiving all required compensation.  The problem is that Plaintiff has not offered any evidence that the catalyst driving their alleged underreporting can be generalized to other Store Managers. The absent individuals Plaintiff has identified as having been subject to the same policy either expressly refute her claims, are not similarly situated, or reported (and were paid for) such a high number of overtime hours that it renders the alleged existence of *de facto* "no overtime" policy facially absurd as to them.  As a result, even if the Court affords material weight to Plaintiff's submissions, the Court should still deny conditional certification.

**IV.    Though certification is not proper, any collective conditionally certified by the Court must be limited to New York locations.**

Setting aside the individualized differences and evidentiary deficiencies among the putative class members militating against conditional certification, the Court lacks personal jurisdiction over Lane Bryant to adjudicate a collective action that encompasses out-of-state Store Managers.  Accordingly, if the Court does decide to conditionally certify a collective, any such certification must be limited to claims arising out of work performed in New York.

"In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process."  *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).  "If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution," which requires that the defendant have sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction and, if so, that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164. (2d Cir. 2010) (internal quotes and cites omitted).

"[A] court may exercise two types of personal jurisdiction over a corporate defendant

-14-

properly served with process.   These are specific (also called 'case-linked') jurisdiction and general (or 'all-purpose') jurisdiction.  Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state.   General jurisdiction, in contrast, permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff."  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). A court may only exercise general jurisdiction over a foreign corporation " when the corporation's affiliations with the forum State are so continuous and systematic as to render it essentially at home there."  *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 277 (E.D.N.Y. 2016).   A corporation is "essentially at home" only where it is incorporated or where it is its principle place of business.  *Brown*, 814 F.3d at 627 (*citing Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014)) (corporation's continuous activity in a state is not enough "to support the demand that the corporation be amenable to suits unrelated to that activity").

Here, the Court does not have general jurisdiction over Lane Bryant because Lane Bryant is incorporated in Delaware and had its principal place of business in Ohio.  *See id.*; *see also Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224-24 n.2 (2d Cir. 2014) (declining to address "scope of general jurisdiction under New York law" where exercising general jurisdiction "clearly inconsistent with *Daimler*"); *Weiss*, 176 F. Supp. 3d at 277 (collecting cases where courts failed to find general jurisdiction over corporate defendant).

Furthermore, based on the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773 (2017), that lack of specific jurisdiction is fatal to any attempt to adjudicate claims brought by non-New York opt-ins in this case.  In *Bristol-Myers*, the Supreme Court held that the Fourteenth Amendment's guarantee of due process protects defendants from having to defend against claims with no connection to the forum state filed by plaintiffs living in other states, even when other claims in the lawsuit—by plaintiffs who

-15-

do have a connection to the forum state—are appropriately before the court.  *See id.* at 1781.  In

that case, over 600 plaintiffs asserted product liability claims in California court against Bristol-

Myers Squibb ("BMS"), which manufactured the allegedly defective prescription drug called

Plavix.  *Id.* at 1777.  BMS was incorporated in Delaware and headquarter in New York, while most

of the plaintiffs resided outside of California.  *Id.* at 1777–78.

Reversing the California Supreme Court, the U.S. Supreme Court held that the California

courts lacked specific jurisdiction over the nonresidents' claims despite their legal and factual

similarities to the residents' claims because there was "no connection between the forum and the

specific claims at issue."  *Id.*at 1781.  The Supreme Court reasoned that "the nonresidents were

not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in

California, and were not injured by Plavix in California."  *Id.*  It further stated that "[t]he mere fact

that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly

sustained the same injuries as did the nonresidents—does not allow the State to assert specific

jurisdiction over the nonresidents' claims."  *Id.*

*Bristol-Myers* has been applied to FLSA collective actions to prevent precisely the sort of

nationwide collective action requested here.  In *Maclin v. Reliable Reports of Tex., Inc.*, 314 F.

Supp. 3d 845, 848 (N.D. Ohio 2018), the plaintiff brought a putative FLSA collective action

against an out-of-state defendant in Ohio.  The defendant argued that the court lacked personal

jurisdiction over the claims of non-Ohio claimants, such as one opt-in from Texas.  *Id.*  The Court

first held that it lacked general jurisdiction over the defendant because the defendant was "at home

in Texas, where it is headquartered and incorporated[,]" and, even though it has some employees

in Ohio, "[m]aintaining extensive operations within a state alone does not satisfy the general-

jurisdiction exception."  *Id.* at 849.  The court then held that it lacked "specific jurisdiction over

the FLSA claims of non-Ohio plaintiffs" against the defendant.  *Id.* at 850.  The court found "that

*Bristol-Myers* applies to FLSA claims, in that it divests a court of specific jurisdiction over the FLSA claims of [nonresident] plaintiffs against [a nonresident]." *Id.*; *see also Roy v. FedEx Ground Package Sys., Inc.*, --- F. Supp. 3d. ---, 3:17-cv-30116, 2018 WL 6179504, at *1, 8 (D. Mass. 2018) (claims of potential opt-in out-of-state employees did "not provide the court with a basis to exercise personal jurisdiction over FedEx Ground as to such claims," dooming plaintiffs' request to issue notice to FedEx Ground drivers who did not work in Massachusetts).

For these same reasons, this Court lacks specific jurisdiction over any claims by non-New York class members against the non-resident Lane Bryant. In addition, the majority of putative class members are nonresidents of New York. Were they to receive notice and opt in, the Court, per *Bristol-Myers*, would have to dismiss their claims for lack of personal jurisdiction anyway, rendering issuance of notice to them and any resulting participation in this case wasteful because non-New York class members cannot properly opt in to this case. Accordingly, if the Court certifies a collective action, it should be limited to Store Managers who worked in New York.

## V.    Plaintiff's Proposed Form And Methods of Notice Are Improper.

### A.    The Proposed Form of Notice Is Deficient.

Putting aside that Plaintiff's motion should be denied in its entirety, her proposed Notice is deficient in several respects. Attached as Exhibit T to the Declaration of Sean P. Lynch is a revised form of notice setting forth Defendant's proposed revisions and the legal bases for each. As noted therein, the deficiencies include the following:

- The notice fails to accurately state Defendant's position and the status of the action, thereby giving the impression to putative class members that the court has concluded that Defendant failed to properly pay its employees. To avoid confusion, the Notice should clearly state that Defendant denies the allegations and has raised various defenses and that the Court has no opinion as to who is right or wrong. *See Garriga,* 2018 WL 4861394, at *9, citing *Velazquez v. Digital Page, Inc., No. CV 11-3892(LSW)(AKT),* 2014 WL 2048425, *13 (E.D.N.Y. May 19, 2014) (requiring addition of that language).

- Contact information for Defendant's counsel should be included in the notice. *See*, *e.g.*, *Castillo v. Perfume Worldwide Inc.*, CV 17-2972(JS)(AKT), 2018 WL 1581975, *14

(E.D.N.Y. March 30, 2018); *Slamna v. API Rest. Corp.*, 12-cv-757(RWS), 2013 WL 3340290, \*5 (S.D.N.Y. July 2, 2013) (courts in this Circuit generally conclude that defendant's' counsel's contact information should be included in the notice).

- The notice fails to advise recipients of their potential discovery obligations, contrary to this Court's decision in *Castillo*, 2018 WL 1581975, \*13. Defendants propose that Notice including the following statement in Section 6:

> If you join this lawsuit, you may be required to provide testimony under oath and information about your claim and your work at Lane Bryant.  If the lawsuit proceeds to trial, you may also be required to physically appear in court in the Eastern District of New York.  Plaintiff's counsel will assist you with this process. For this reason, if you join this lawsuit, you should preserve all documents relating to your Lane Bryant employment which are currently in your possession.

- The notice fails to advise recipients of their right to retain separate counsel.  Per this Court's ruling in *Garriga*, Defendant proposes adding to the Notice a separate heading titled "Right to Retain Other Counsel."  *Garriga*, 2018 WL 4861394 at \*7 (requiring separate right to retain counsel heading); *Iriarte v. Redwood Deli and Catering, Inc.*, No. 07-cv-5062, 2008 WL 2622929, \*4 (E.D.N.Y. June 30, 2008) (noting that additional heading, Right to Retain Other Counsel, "adds clarity and should be included").

## B.     Plaintiff's proposed method of dissemination of the notice is improper

Plaintiff's request to send notice via email and text message (in addition to direct mail) should be denied for precisely the reasons that this Court rejected an identical request in *Tanski v. Avalonbay Communities, Inc.*, 15-cv-6260 (AKT), 2017 U.S. Dist. LEXIS 112506 (E.D.N.Y. March 31, 2017).  As Your Honor observed in *Tanski*, email notice creates risks of distortion or misleading notification through modification of the notice itself or the addition of commentary. *Id.* at \*58.  Further, emails:

> inherently ha[ve] the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court. Electronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process. In addition, email messages could be forwarded to nonclass members and posted to internet sites with great ease.

*Id.* at \*58, quoting *Karvaly v. eBay, Inc.,* 245 F.R.D. 71, 91 (E.D.N.Y. 2007).  Given those risks and the absence of any evidence that direct mailing would be insufficient, Plaintiff's request for email notice should be denied.  So, too, should the request for text message notice.  Notice via text message, which has been described as "an unnecessary intrusion upon the privacy" of class members that is likely to be disregarded as spam, is only justified when the case involves an

-18-

itinerant employee population. *See e.g. Tanski*, 2017 U.S. Dist. LEXIS 112506 at *58-59 (rejecting text notice where there was no evidence of an itinerant employee population, noting that the court would not "sidestep the privacy and data manipulation concerns presented by" text notice); *Anderson v. Minacs Group (USA) Inc.*, No. 16-13942, 2017 WL 1856276, *9 (E.D. Mich. May 9, 2017) (rejecting text notice as "an unnecessary intrusion upon the privacy" of the class members that was likely to be viewed as "harassing in nature" and disregarded as "spam"); *Hotaranu v. Star Nissan Inc.*, 16-cv-5320(KAM), 2017 WL 1390808, *6 (E.D.N.Y. Apr. 12, 2017) (rejecting text notice where plaintiffs failed to show high turnover rate among employees); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, 14-cv-2625(RJS), 2015 WL 4240985, *5 (S.D.N.Y. July 13, 2015) (permitting text notice in light of the "the high turnover characteristic of the restaurant industry"); *Martin v. Sprint/United Mgmt. Co.*, 15-cv-5237(PAE)2016 WL 30334, *19 (S.D.N.Y. Jan. 4, 2016) (permitting text notice in light of high turnover rate).   Just as this Court observed in *Tanski*, there is nothing in this case suggesting a high turnover rate or itinerant population. Accordingly, there is no basis for notice via text message and Plaintiff's request for notice via text should be denied.  Should the Court authorize the sending of a text notice, Defendant proposes that the reminder be in the form attached as Exhibit U to the Lynch Declaration.

### C. The proposed reminder notice is inappropriate.

Plaintiff proposes to send a postcard reminder notice to any class members who do not immediately opt into the lawsuit.  That said, Plaintiff does not – and cannot –  identify a reason why such a notice is necessary in this particular case.  The request, therefore, should be denied. *Tanski*, 2017 U.S. Dist. LEXIS 112506, at *61 (AKT) (rejecting reminder absent evidence as to why it was needed in that case); *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 358 (E.D.N.Y. 2012) (denying reminder request because plaintiffs did not identify why such notice was "necessary in this particular case," noting that most plaintiffs do not request reminder notices).

What's more, the form proposed by Plaintiff is a clear end-run around what this Court has held to be reasonable requirements and limitations of conditional certification notice.  More specifically, the notice omits any statement concerning Defendant or the Court's position, directs recipients to contact Plaintiff's counsel rather than directing them to the notice itself and presents as an impermissible solicitation or encouragement by the Court to join the lawsuit.  *See Agerbrink v. Model Service*, LLC, 14-cv-7841, 2016 WL 406385, at *8 (S.D.N.Y. 2016); *Tanski*, 2017 U.S. Dist. LEXIS 112506.  Should the Court authorize the sending of a postcard reminder, Defendant proposes that the reminder be in the form attached as Exhibit V to the Lynch Declaration.

## CONCLUSION

For the foregoing reasons, Lane Bryant requests that Plaintiff's Motion be denied. Alternatively, if the Court deems conditional certification appropriate, Lane Bryant respectfully requests that certification be limited to the scope of the Court's personal jurisdiction over Lane Bryant—its New York locations—and that the proposed form and methods of notice be modified as set forth herein and the accompanying exhibits.

Dated: February 21, 2019                    Respectfully submitted,

*/s/ Sean P. Lynch*
Sean P. Lynch
Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, New Jersey 08540
Tel: 609.919.6611
Fax: 609.919.6701
sean.lynch@morganlewis.com

Anne Marie Estevez
Morgan, Lewis & Bockius LLP
200 South Biscayne Boulevard – Suite 5300
Miami, FL 33131-2339
Tel: 305.415.3330
Fax: 877.432.9652
annemarie.estevez@morganlewis.com

*Attorneys for Defendant*

-20-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served via electronic mail

this 21st day of February, 2019, on the following counsel of record:

Michael J. Palitz
SHAVITZ LAW GROUP, P.A.
830 3rd Avenue, 5th Floor
New York, New York 10022
mpalitz@shavitzlaw.com

Gregg I. Shavitz
Logan Pardell
SHAVITZ LAW GROUP, P.A.
981 Yamato Road, Suite 285
Boca Raton, Florida 33431
gshavitz@shavitzlaw.com

Troy L. Kessler
Garret Kaske
Shulman Kessler LLP
534 Broadhollow Road, Suite 275
Melville, NY 11747
tkessler@shulmankessler.com
gkaske@shulmankessler.com

*Attorneys for Plaintiff*

*/s/ Sean P. Lynch*
Sean P. Lynch