**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
AMANDA MEO, on behalf of herself and all
others similarly situated,

Plaintiff,

- against -

<b>MEMORANDUM</b><br><b><u>AND ORDER</u></b>

CV 18-6360 (JMA) (AKT)

LANE BRYANT, INC.,

Defendant.

-------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.   <u>PRELIMINARY STATEMENT</u>

Plaintiff Amanda Meo ("Plaintiff") commenced this action on behalf of herself and all others similarly situated against her employer, Lane Bryant, Inc. ("Defendant"), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and the New York Labor Law ("NYLL").  *See* Complaint ("Compl.") [DE 1] ¶ 1.  Specifically, Plaintiff alleges that Defendant willfully violated the FLSA and NYLL by:  (1) failing to pay non-exempt hourly Store Managers ("SMs") for overtime hours worked; (2) failing to credit and compensate SMs for hours worked "off-the-clock"; and (3) otherwise failing to pay SMs for non-overtime hours worked.  *Id*. at ¶¶ 2-5.  Plaintiff also alleges that Defendant failed to accurately log hours worked or to provide SMs with accurate wage statements in violation of the NYLL.  *Id*. at ¶ 5.

Plaintiff has now moved to certify this litigation as a collective action under the FLSA. *See* Plaintiff's Motion to Certify FLSA Collective Action ("Pl.'s Mot.") [DE 12].   Plaintiff seeks an order:  (1) conditionally certifying the collective action; (2) requiring Defendant to furnish the

names and contact information for all hourly SMs employed by Defendant since November 8, 2015; and (3) requiring Defendant to post and Plaintiff to circulate a Notice of Pendency ("Notice") and Consent to Join form ("Consent") to all SMs.  *See id.* at 1.

Based on the Court's review of the parties' submissions, the applicable law, and the reasons set forth in this Memorandum and Order, Plaintiff's Motion is GRANTED, subject to the limitations and directives set by the Court.

II.   **B**ACKGROUND

A.   **Procedural History**

Plaintiff commenced this putative collective/class action by filing her Complaint on November 8, 2018, asserting four causes of action under the FLSA and the NYLL.  *See generally* Compl.  Defendant filed its Answer on December 18, 2018, denying any unlawful employment practices.  *See* Defendant's Answer ("Ans.") [DE 9].

Plaintiff filed the instant motion on January 25, 2019.  *See generally* Pl.'s Mot.  On January 20, 2019, Defendant filed a joint letter asking the Court to approve an agreed-upon schedule for Defendant's opposition and Plaintiff's reply.  *See* DE 13.  On January 31, 2019, Judge Azrack referred Plaintiff's Motion to this Court for decision.  *See* January 31, 2019 Electronic Order.  Although Plaintiff submitted the instant motion as a letter motion, the Court "so ordered" the parties' proposed briefing schedule on February 1, 2019.  *See* Scheduling Order [DE 14].   The motion was fully briefed on February 28, 2019.  *See* Defendant's Memorandum of Law in Opposition to Pl.s' Mot. ("Def.'s Opp'n") [DE 19]; Plaintiff's Reply in Support of Pl.'s Mot. ("Pl.'s Reply") [DE 21].[1]

---

[1]   The Court notes that on February 27, 2019, Plaintiff filed an application, with Defendant's consent, seeking leave to file a reply brief of up to 12 pages.  *See* Plaintiff's Motion

Defendant filed a letter motion on March 11, 2019 seeking an evidentiary hearing on Plaintiff's motion, arguing that a hearing should be held since Plaintiff's submissions contain "glaring falsehoods that go directly to the primary conditional certification issue of whether Plaintiff has proven that she is similarly situated to the class of store managers that she seeks to represent."  DE 25 at 1.  On April 15, 2019, the Court denied Defendant's application as "unwarranted and premature," noting that:  (1) Plaintiff is not required to "prove" an actual FLSA violation at this juncture; (2) courts in this Circuit regularly rely on evidence such as declarations submitted by a plaintiff to determine whether the standard for certification of the collective is satisfied; and (3) "[t]he Court does not weigh the merits of the plaintiff['s] underlying claims, resolve factual disputes, or evaluate credibility at this stage."  DE 34.  Plaintiff filed supplemental authority in support of the instant motion on August 20, 2019.  *See* DE 45.

### B.    Plaintiff's Allegations in the Complaint

Lane Bryant is a "widely recognized brand name in plus-size fashion" which operates "specialty retail and outlet stores and ecommerce operations."  Compl. ¶ 12.  Plaintiff worked as a non-exempt, hourly SM for Lane Bryant from approximately 2015 to October 2016 at two store locations in Bayshore, New York.  *Id.* ¶ 8.  According to Plaintiff, she and other similarly situated SMs were normally scheduled to work up to 40 hours per week, but were required to clock out and continue working "off-the-clock" when they were about to exceed 40 hours in a workweek.  *Id.* ¶ 24.  Plaintiff also alleges that she and other similarly situated SMs were required to work additional "off-the-clock" hours performing customer service, stocking, and cleaning the store, among other things.  *Id.*  Based on Lane Bryant' policies and procedures,

---

[DE 17].  The Court granted Plaintiff's application the next day.  *See* February 28, 2019

Plaintiff states that she was required to participate in conference calls while at home as well as receive calls outside of store hours. *Id.* ¶ 25. Further, Plaintiff and other SMs were required to "clock out" for their meal break, but were not completely relieved of duty during that uncompensated period, resulting in more "off-the-clock" work. *Id.* ¶ 26. Lane Bryant did not record all the hours worked by Plaintiff and the other SMs and, as a result, failed to pay overtime in violation of the FLSA and NYLL. *Id.* ¶ 27. Plaintiff maintains that while Defendant may have occasionally paid her and other SMs for "some" overtime hours worked, Defendant failed to pay for "all" overtime hours worked, including hours worked "off-the-clock." *Id.* ¶ 41.

Plaintiff alleges that during workweeks in which she worked at least five shifts, she worked at least five "off-the-clock" overtime hours without pay." *Id.* ¶ 29. During workweeks in which Plaintiff worked less than five shifts, she asserts that she worked at least three to five "off-the-clock," non-overtime hours without pay. *Id.* ¶ 30. Plaintiff also claims that Defendant failed to provide accurate wage statements – instead issuing paystubs that regularly lacked accurate numbers of overtime and non-overtime hours worked. *See id.* ¶¶ 34-36.

For purposes of the FLSA, Plaintiff proposes the following Collective:

> All non-exempt hourly Store Managers employed by Lane Bryant at any retail store location throughout the United States, however variously titled, on or after November 8, 2015, who have not been paid for all overtime hours worked.

*Id.* ¶ 22. The proposed Class is defined as follows:

> All non-exempt hourly Store Managers employed by Lane Bryant at any retail store location throughout New York, however variously titled, on or after the date Defendant reclassified Store Managers to non-exempt hourly status in about 2015, who have not been paid for all overtime hours worked

*Id.* ¶ 23.

---

Electronic Order.

Plaintiff alleges that she and the proposed FLSA collective (1) all perform or performed "similar duties of Store Manager at [Defendant's] stores throughout the country, *id.* ¶ 48; (2) were all compensated on an hourly basis, *id.* ¶ 49; and (3) were subject to the "same employment policies, procedures, and practices, as centrally disseminated by Defendant," including willfully failing to pay SMs overtime wages and to record all hours worked, *id.* ¶ 50.

### C.    Motion for Conditional Certification

#### *1.    Plaintiff's Motion*

In support of her motion for conditional certification, Plaintiff submits her own declaration as well as declarations from eight potential opt-in plaintiffs who worked in 38 of Defendant's stores across eight different states.  The SMs are Allison Smith, Debra Devlin, Diana Kodhler, Ivory Davis, Jennifer Seymour, Monicajo Marchand, Sheena Clark, and Susan McCreery (the "Potential Opt-ins").  *See* Pl.'s Mot., Ex. B, Declaration of Amanda Meo ("Meo Decl."); Ex. C, Declaration of Allison Smith ("Smith Decl."); Ex. D, Declaration of Debra Devlin ("Devlin Decl."); Ex. E, Declaration of Diana Koehler ("Koehler Decl."); Ex. F, Declaration of Ivory Davis ("Davis Decl."); Ex. G, Declaration of Jennifer Seymour ("Seymour Decl."); Ex. H, Declaration of Monicajo Marchand ("Marchand Decl."); Ex. I, Declaration of Sheena Clark ("Clark Decl."); Ex. J, Declaration of Susan McCreery ("McCreery Decl.").  The declarations submitted by Plaintiff and the Potential Opt-Ins state the following:

1. SMs "consistently work off-the-clock hours without overtime pay."  *See* Pl.'s Mot. at 1 (citing Meo Decl. ¶¶ 6-11; Smith Decl. ¶¶ 7-14; Devlin Decl. ¶¶ 7-13; Koehler Decl. ¶¶ 7-13; Davis Decl. ¶¶5-13; Seymour Decl. ¶¶ 5-12; Marchand Decl. ¶¶ 5-12; Clark Decl. ¶¶ 4-11; McCreery Decl. ¶¶ 6-13).

2.  SMs' "off-the-clock overtime work include[s] in-store duties – assisting customers, stocking, and cleaning – and post-shift work – scheduling, conference calls, responding to store associates, and passing out pamphlets to businesses." *Id.* (citing Compl. ¶¶ 24-26; Meo Decl. ¶¶ 10-11; Smith Decl. ¶ 8; Devlin Decl. ¶¶ 7-8; Koehler Decl. ¶¶ 7-8; Davis Decl. ¶¶ 5-7; Seymour Decl. ¶¶ 5-6; Marshand Decl. ¶ 9; Clark Decl. ¶ 6; McCreery Decl. ¶¶ 6-7.

3.  SMs work unpaid hours because of workplace pressures and limits on labor costs, consistent with Defendant's policies.  *See* Compl. ¶ 43; Meo Decl. ¶¶ 7-9; Smith Decl. ¶¶ 11-14; Devlin Decl. ¶¶ 9-12; Koehler Decl. ¶¶ 11-13; Davis Decl. ¶¶ 10-13; Seymour Decl. ¶¶ 5, 9-12; Marchand Decl. ¶¶ 5-6, 10-12; Clark Decl. ¶¶ 4, 9-11; McCreery Decl. ¶¶ 6, 10-13.

4.  Plaintiff and the Potential Opt-ins worked in Defendant's stores in New York, Illinois, Iowa, Tennessee, Nevada, Connecticut, California, and Ohio and personally know and name over 23 co-workers whom they witnessed working over 40 hours per week and with whom they discussed not receiving overtime pay at Defendant's stores in New York, Iowa, Tennessee, Nevada, Idaho, Kansas, Rhode Island, California, Ohio, and Pennsylvania.  *See* Meo Decl. ¶¶ 1,13 [sic]; Smith Decl. ¶¶1,15; Devlin Decl. ¶ 1,14; Koehler Decl. ¶¶ 1, 14; Davis Decl. ¶¶ 1,14; Seymour Decl. ¶¶ 1,13; Marchand Decl. ¶¶ 2,13; Clark Decl. ¶¶ 1,12; McCreery Decl. ¶¶1,14.

With respect to the role of SMs at Defendant's various store locations, Plaintiff submits job postings for SM positions across the country, all of which Plaintiff asserts demonstrate that

the duties and responsibilities of SMs do not vary to any significant degree from store to store. *See* Pl.'s Mot., Ex. M ("Assorted Lane Bryant SM Job Postings").

Generally, Plaintiff argues that SMs are so similarly situated as to warrant conditional certification because all SMs: (1) have common job requirements, job duties, and work-place pressures and (2) were subjected to a common plan through a widespread *de facto* company policy that required SMs to work unpaid overtime hours. Pl.'s Mot. at 3.

### 2. *Defendant's Opposition*

Defendant opposes Plaintiff's motion, arguing that the declarations submitted by Plaintiff "are objectively unreliable and demonstrably false." *See generally* Def.'s Opp'n. Defendant maintains that the declarations are so "facially inaccurate" that the Court should "disregard them outright or, in the alternative, afford them *de minimus* probative weight." *Id.* at 5 (emphasis in original). According to the Defendant, SMs are permitted to work overtime when necessary but are encouraged to distribute work so that they only work an average of 37.5 hours per week. *Id.* at 2. Defendant asserts that it employs an "explicit and aggressively-enforced timekeeping policy, which emphasizes that employees *must* report and Lane Bryant *will pay* all time worked." *Id.* at 3 (emphasis in original).

Although Defendant recognizes that the Court does not resolve factual disputes or make credibility determinations at this stage, Defendant nevertheless maintains that if the Court permits issuance of notice, it would do so "based upon objectively inaccurate evidence [which] would be manifestly unjust and render conditional certification a *per se* right, even where it is premised on conclusively false assertions." *Id.* (emphasis in original). Turning a phrase from some well-known FLSA decisions on conditional certification, Defendant argues that while the standard for conditional certification is lenient, it is not non-existent. *Id.* at 6 (citing *Garriga v.*

*Blonder Builders Inc.*, 17-cv-497, 2018 WL 4861394, at *3 (E.D.N.Y. Sept. 28, 2018)).  The

Court must, Defendant asserts, exercise its "gatekeeping role" to ensure that the motion for

conditional certification is "based upon fact rather than fiction."  Def.'s Opp'n at 6.

Defendant claims that the inaccurate statements contained in Plaintiff's declarations "fall

into three categories: (1) incorrect claims that [SMs] were not permitted to report all time

worked; (2) false claims that overtime was rarely if ever approved or paid; and (3) incorrect

claims that others had – and reported – similar experiences."  *Id*. at 8.  In support of its position,

Defendant submits timekeeping and payroll records for the period running from October 2015 to

October 2018 which purport to show that Plaintiff, the Potential Opt-ins, and other named SMs

were paid for recorded overtime hours worked.  *See* Declaration of Sean P. Lynch, Esq. in

Opposition to Pl.'s Mot. ("Lynch Decl."), Ex. A (Declaration of Heather Hilton) ("Hilton Decl.")

[DE 20]  ¶ 17.  Defendant also addresses fifteen SMs named in Plaintiff's submissions whom

Plaintiff characterized as similarly situated.  Def.'s Opp'n 10.  First, Defendant submits sworn

declarations for five of those SMs – Lori Foster, Elizabeth Wagner, Candy Fall, Amy Sampert,

and Anita Gargano. [2]  Each declarant refutes that she worked "off-the-clock" hours or made any

representation that a no-overtime policy existed at Defendant's stores.  *Id.* (citing Lynch Decl.,

Ex. G ("Foster Decl") ¶ 10; Lynch Decl., Ex. M ("Wagner Decl.") ¶¶ 8-9; Lynch Decl., Ex. N

("Gargano Decl.") ¶¶ 3-5; Lynch Decl., Ex. Q ("Fall Decl.") ¶¶ 12-16; Lynch Decl., Ex. P.

("Sampert Decl.") ¶¶ 9-12).  Next, Defendant points out that four of the purportedly similarly

situated SMs named in Plaintiff's submissions – Anne Vaugh, Nicole Homes, Kelly Chimera,

and Jill Thomas – left their employment with Defendant prior to the proposed period of coverage

and at least one, Lori Foster, has worked on a reduced schedule as a medical accommodation for

---

[2]   These declarations are all annexed to the Lynch Declaration.

over five years.  Def.'s Opp'n at 10.  Finally, Defendant offers payroll data for the remaining

SMs, which shows reporting and payment of overtime during the relevant period.  *Id.*  As a

result, Defendant argues that the Court should either disregard or give no weight to the

declarations and deny conditional certification.  *Id.* at 8.

Alternatively, Defendant argues that even if Plaintiff's and the Potential Opt-ins'

declarations are accepted, Plaintiff still fails to establish that the SMs are similarly situated

because the evidence confirms that liability must be determined on an individual basis for each

store since – at best – Plaintiff has shown that overtime practices vary widely from store to store.

*Id.* at 11-14.  Defendant submits counter-declarations in which other SMs attest to Defendant's

"express written policy regarding overtime and prohibiting off-the-clock-work," to which they

claim they consistently adhered.  *Id.*  Defendant asserts that Plaintiff and the Potential Opt-ins

must have "encountered something that led them to personally refrain from reporting overtime

while other [SMs] consistently adhered to [Defendant's] express written policy . . . [and] [t]his

discrepancy precludes any finding that a common unlawful policy or plan may encompass the

entire putative collective."  *Id.* at 11.

Lastly, Defendant argues that although certification is improper, should the Court decide

to conditionally certify a collective, it must limit the certification to claims arising from SMs in

New York because this Court lacks personal jurisdiction over claims by any non-resident opt-in

plaintiff.  *See Id.* at 14-17.  Because the FLSA does not "specifically provide for national service

of process," Defendant contends that the Court must apply the forum state's personal jurisdiction

rules.  *Id.* at 14.  According to Defendant, the Court has specific jurisdiction only over the claims

arising from work performed by SMs in New York stores since Defendant is a Delaware

corporation with a principal place of business in Ohio. *Id.* at 15.

### 3.    *Plaintiff's Reply*

Plaintiff vigorously argues that Defendant's merit-based arguments are premature at the pre-discovery stage and that Plaintiff has met her low burden for conditional certification. *See generally* Pl.'s Reply.   Plaintiff maintains that her submissions exceed the "modest factual showing" necessary for conditional certification, *id.* at 1 (citing *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 317 (E.D.N.Y. 2016)) and asserts that her declaration and the declarations of the Potential Opt-ins contain detailed, credible statements that SMs work "off-the-clock" due to workplace and labor-cost pressures, *id.* at 7.   Plaintiff emphasizes that she and the Potential Opt-ins' declarations identify at least 18 other putative class members subjected to Defendant's no-overtime policy.   *Id.* at 8.   Plaintiff advances the position that Defendant's counter-declarations should not be credited because, "[c]ourts refuse to weigh evidence in a defendant's employee-declarations at the conditional certification stage."   *Id.* at 2.

Plaintiff also argues that the payroll data and counter-declarations submitted by Defendant showing that *some* overtime was paid to SMs do not preclude certification.   *Id.* at 5. According to Plaintiff, she only needs to show a "wide-spread de facto company policy" which resulted in *some* unpaid overtime at this pre-certification stage.   *Id.* at 4 (citing *Bijoux v. Amerigroup N.Y., LLC ("Bijoux I"),* No. Civ. 3891, 2015 WL 4505835, at *6, *9 (E.D.N.Y. July 23, 2015), *adopted by ("Bijoux II")* 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015)).

With respect to the Defendant's position concerning the Court's lack of jurisdiction over non-resident SMs' claims, Plaintiff argues that the Court does have jurisdiction over Defendant for the pertinent claims because "Congress intended for nationwide FLSA collective actions." *See Id.* at 8-10.

III.    **LEGAL STANDARD**

The FLSA provides in pertinent part:

> Any employer who violates the provisions of section 206 or
> section 207 of this title shall be liable to the employee or
> employees affected in the amount of their unpaid minimum wages,
> or their unpaid overtime compensation, as the case may be, and in
> an additional equal amount as liquidated damages. . . . An action to
> recover . . .  may be maintained against any employer (including a
> public agency) in any Federal or State court of competent
> jurisdiction by any one or more employees for and in behalf of
> himself or themselves and other employees similarly situated.  No
> employee shall be a party plaintiff to any such action unless he
> gives his consent in writing to become such a party and such
> consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Section 216(b) provides an employee with a private right of action to

recover overtime compensation and/or minimum wages.  *Id*.; *Brown v. AvalonBay Communities,

Inc.*, No. CV 17-6897, 2019 WL 1507901, at *8 (E.D.N.Y. Mar. 29, 2019); *Moore v. Eagle

Sanitation, Inc.*, 276 F.R.D. 54, 57 (E.D.N.Y. 2011); *Bifulco v. Mort. Zone, Inc.*, 262 F.R.D. 209,

212 (E.D.N.Y. 2009); *Gjurovich v. Emmanuel's Marketplace, Inc*., 282 F. Supp. 2d 101, 103

(S.D.N.Y. 2003). "Although the FLSA does not contain a class certification requirement, such

orders are often referred to in terms of 'certifying a class.'"  *Bifulco*, 262 F.R.D. at 212 (citations

omitted).

Courts within the Second Circuit generally apply a two-step analysis to determine

whether an action should be certified as an FLSA collective action.  *See Myers v. Hertz Corp.*,

624 F.3d 537, 544-45 (2d Cir. 2010) (noting that district courts within this Circuit have

"coalesced around a two-step method" for analyzing collective action certification); *Alvarez v.

IBM*, 839 F. Supp. 2d 580, 583 (E.D.N.Y. 2012) (recognizing that "[c]ertification of a collective

action class is analyzed through a two step approach"); *Bijoux I*, 2015 WL 4505835, at *2;

*Amador v. Morgan Stanley & Co., LLC*, No. 11 Civ. 4326, 2013 WL 494020, at *2 (S.D.N.Y. Feb. 7, 2013).

"First, the court makes 'an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred.'" *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (citing *Myers*, 624 F.3d at 555); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001). If the court determines that they are, then it "conditionally certifies the class and orders notice to potential class members, who are given the opportunity to opt in." *McGlone*, 867 F. Supp. 2d at 442 (citation omitted); *see also* 29 U.S.C. § 216(b). The second step, which typically occurs after the completion of discovery, requires the court to make factual findings regarding whether the plaintiffs and putative class members are actually similarly situated. *McGlone*, 867 F. Supp. 2d at 442; *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011); *Bifulco*, 262 F.R.D. at 212. "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." *Bifulco*, 262 F.R.D. at 212 (citation omitted).

The instant motion concerns only the first step: whether the Plaintiff and proposed opt-in members are "similarly situated" such that conditional certification should be granted. At this stage, "the evidentiary standard is lenient," *Rubery*, 569 F. Supp. 2d at 336, and Plaintiffs need only make "a modest factual showing" that she and potential plaintiffs "together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (noting that at the initial certification stage, courts do not require proof of an actual FLSA violation, "but rather that a 'factual nexus' exists between the plaintiff's

situation and the situation of other potential plaintiffs."); *see, e.g.*, *Perez v. Allstate Ins. Co.*, No. 11-CV-1812, 2014 WL 4635745, at *5 (E.D.N.Y. Sept. 16, 2014); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 552 (S.D.N.Y. 2013); *Cano v. Four M Food Corp.*, No. 08-CV-3005, 2009 WL 5710143, at *3 (E.D.N.Y. Feb 3, 2009); *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008). "[C]ourts typically decide the question of preliminary certification—not having the benefit of full discovery—'based on the pleadings, affidavits and declarations submitted by the plaintiff.'" *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016) (quoting *Ji v. Jling Inc.*, No. 15-CV-4194, 2016 WL 2939154, at *3 (E.D.N.Y. May 19, 2016)).

"[A]lthough the burden on the plaintiff at this preliminary stage is modest, 'it is not non-existent.'" *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 694 (N.D.N.Y. 2015) (quoting *Khan v. Airport Mgmt. Servs., LLC*, No. 10-CV-7735, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011)). As the Second Circuit has explained, "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'" *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see Morales v. Plantworks, Inc.*, No. 05 CIV. 2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (stating that "conclusory allegations are not enough" to meet the "modest factual showing" at the first stage of collective action certification).

However, at the first stage, the standard of proof should remain "low . . . because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citing *Hoffman*, 982 F. Supp. at 261) (emphasis in original); *see Trinidad*, 962 F. Supp. 2d at 553. With this in mind, courts have routinely found that the allegations in the pleadings and the "personal observations of one plaintiff's affidavit" are

13

"sufficient to make the modest factual showing necessary to conditionally certify [a] class."

*Hernandez v. NGM Mgmt. Grp. LLC*, No. 12 CIV. 7795, 2013 WL 5303766, at *3 (S.D.N.Y.

Sept. 20, 2013) (collecting cases); *see Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625,

2015 WL 4240985, at *3 (S.D.N.Y. July 13, 2015) (finding that the allegations in the complaint

and the affidavit of one named plaintiff "met the minimal burden at this preliminary stage of

demonstrating that [the plaintiffs] were subject to a common policy or practice and were

'similarly situated' to one another and to potential opt-in plaintiffs"); *Kemper v. Westbury*

*Operating Corp.*, No. CV 12-0895, 2012 WL 4976122, at *2 (E.D.N.Y. Oct. 17, 2012) (granting

conditional certification for overtime claims based on affidavit of the named plaintiff); *Khamsiri*

*v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12 CIV. 265, 2012 WL 1981507, at *1

(S.D.N.Y. June 1, 2012) (granting motion for conditional certification based on declaration by

the plaintiff "confirming that she and other non-exempt employees employed by defendants in

tipped positions, who performed work similar to hers, were, *inter alia*, paid less than the

statutory minimum wage and not paid overtime pay") (citing *Bowens v. Atlantic Maintenance*

*Corp.*, 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008)); *Wraga v. Marble Lite, Inc.*, No. 05-CV-5038,

2006 WL 2443554, at *2 (E.D.N.Y. Aug. 22, 2006) (granting motion to certify collective action

based on single plaintiff's affidavit alleging failure to pay overtime where he stated that he was

aware, based upon personal conversations, of approximately 18 other employees who were

subject to the same policies); *see also Doucoure*, 554 F. Supp. 2d at 373 (permitting preliminary

certification where plaintiff alleged that he routinely worked in excess of forty hours per week,

the defendant failed to pay him overtime, and there were similarly situated hourly employees

also denied overtime).

Moreover, courts have repeatedly stated that Section 216(b)'s "similarly situated" requirement is "considerably less stringent" than the requirements for class certification under Federal Rule of Civil Procedure 23, and that "a party seeking to maintain a collective action need not meet the requirements of Rule 23 for class certification." *Rodolico*, 199 F.R.D. at 481 (collecting cases); *see Dilonez v. Fox Linen Serv., Inc.*, 35 F. Supp. 3d 247, 252 (E.D.N.Y. 2014) (stating that a collective action under the FLSA "is different than a typical class action under the Federal Rules of Civil Procedure, the strict requirements of which—numerosity, commonality, typicality, and adequate representation—do not apply to a collective action").

## IV.    DISCUSSION

### A.    Decision on Motion to Certify

As noted, Plaintiff seeks conditional certification for:

> All non-exempt hourly Store Managers employed by Lane Bryant at any retail store location throughout the United States, however variously titled, on or after November 8, 2015, who have not been paid for all overtime hours worked.

Compl. ¶ 22. Generally, Plaintiff asserts that she and other SMs are "similarly situated" because all SMs: (1) have common job requirements, job duties, and work place pressures and (2) were subjected to a common plan through a widespread de facto company policy that required SMs to work unpaid overtime hours.  Pl.'s Mot. at 2-3.  Based on Plaintiff's submissions, including the declarations of Plaintiff and the Potential Opt-ins – as well as Defendant's uniform job postings for SM positions across Defendant's store locations –  the Court finds that Plaintiff has made "a 'modest factual showing' that [she] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  *Myers*, 624 F.3d at 555 (quoting *Hoffman*, 982 F. Supp. at 261).

First, the Court notes that Plaintiff has sufficiently alleged an unlawful policy, according to which Plaintiff was required to work "off-the-clock" overtime hours for which she alleges she was not compensated in violation of the FLSA and NYLL.  Plaintiff states that she typically worked five to six days weekly, or approximately 45 to 50 hours per week, but generally only recorded 40 hours of work pursuant to Defendant's policies and to avoid any consequences affecting her employment.  Meo Decl. ¶¶ 6-8.  In addition to "off-the-clock" hours worked in the store, Plaintiff attests to "off-the-clock" hours worked outside of the store, which Plaintiff could not record since Defendant's time-keeping system did not allow SMs to record hours worked outside of the store.  *Id.*  These allegations sufficiently assert an unlawful policy which required Plaintiff to work uncompensated "off-the-clock" hours in violation of the FLSA and NYLL.

Second, with respect to alleged similarly situated SMs, Plaintiff has established a "sufficient factual nexus."  *See Sobczak*, 540 F.Supp.2d at 362.  Plaintiff and the Potential Opt-ins submit they were employed by Defendant for the SM position during the relevant period with similar responsibilities.  They also attest to working off-the-clock overtime hours pursuant to Defendant's alleged no-overtime policy.  *See generally*, Meo Decl.; Smith Decl.; Devlin Decl.; Koehler Decl.; Davis Decl.; Seymour Decl.; Marchand Decl.; Clark Decl.; McCreery Decl. Further, Plaintiff and the Potential Opt-ins state that other SMs were subjected to the same unlawful policy, requiring SMs to work "off-the-clock" overtime hours without compensation, naming over twenty other SMs whom they personally know to have worked unpaid hours due to the Defendant's same unlawful policy.  *See* Meo Decl. ¶ 13 [sic]; Smith Decl. ¶ 15; Devlin Decl. ¶ 14; Koehler Decl. ¶ 14; Davis Decl. ¶ 14; Seymour Decl. ¶ 13; Marchand Decl. ¶ 13; Clark Decl. ¶ 12; McCreery Decl. ¶ 14.

As noted, a plaintiff in an FLSA case must meet only a minimal evidentiary burden at the collective action certification stage.  *See Mason v. Lumber Liquidators, Inc.*, No. 17CV4780, 2019 WL 3940846, at *4 (E.D.N.Y. Aug. 19, 2019) (characterizing a plaintiff's burden at this stage as "minimal"); *Damassia v. Duane Reade Inc.,* No. 04 Civ. 8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) (same).  Here, the Court finds that the allegations set forth in the declarations of Plaintiff and the Potential Opt-ins, together with the facts alleged in the Complaint, establish a sufficient factual nexus between Plaintiff's situation and that of other SMs, forming a viable basis for conditional certification of a collective action.  *See Valerio v. RNC Industries*, 314 F.R.D. 61, 68 (E.D.N.Y. 2016) (finding that allegations in the complaint, plaintiff's declaration and opt-in plaintiff's declaration attesting to unpaid overtime hours and interacting with other employees with similar duties with similar grievances established a sufficient factual nexus to warrant certification); *Garcia v. Four Bros. Pizza*, No. 13-cv-1505, 2014 WL 2211958, at *5 (S.D.N.Y. May 23, 2014) (recognizing that plaintiffs' complaint, deposition testimony and affidavits in which they asserted that they worked between 60 and 72 hours per week, were not paid overtime compensation for hours worked in excess of 40 hours per week, and were not paid the required minimum wage, were sufficient to permit collective action certification); *Cano*, 2009 WL 5710143, at *5-6 (holding that statements in the affidavits of plaintiffs "setting forth defendants' common denial of overtime pay, the named plaintiffs' personal knowledge of and the names of other co-workers who were allegedly subject to the same denial of overtime pay, and the opt-in plaintiffs' affidavits attesting to the same, constitute a sufficient factual nexus for alleging that the purported class members were 'victims of a common policy or plan' and that a 'factual nexus' exists between the situation of the named employees and that of other current and former employees." (citations omitted)).

In opposing certification, Defendant challenges the validity and accuracy of the declarations, asserting that the Court should not consider them and arguing that Plaintiff fails to meet her burden.  Def.'s Opp'n at 7-8.  However, the Defendant's merit-based arguments at this pre-certification stage are premature.

Under the traditional first-step analysis, it would be improper for the Court to consider any evidentiary offering made by Defendant to rebut Plaintiff's showing.  *Gurrieri v. Cty. of Nassau*, No. 16CV698, 2019 WL 2233830, at *5 (E.D.N.Y. May 23, 2019) (At this stage, "the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations." (citation omitted)); *Garcia*, 2014 WL 2211958, at *6 (refusing to consider deposition testimony that would undermine plaintiff's FLSA claims at the conditional certification stage since "the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist here") (internal quotations and citation omitted); *see also Bates v. Valente Landscaping, Inc.*, No. 14 Civ. 1434, 2014 WL 2111080, at *1 (E.D.N.Y. May 21, 2014) (noting that court is not to "resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations" during the first step in the certification process) (internal quotations and citation omitted); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 665 (S.D.N.Y. 2013) ("[T]he Court at this point does not weigh the evidence or speculate concerning plaintiffs' ultimate ability to succeed on the merits.") (internal quotations omitted); *Stevens v. HMSHost Corp.*, No. 10 Civ. 3571, 2012 WL 4801784, at *3 (E.D.N.Y. Oct. 10, 2012) (recognizing that defendant's submission of declarations of current employees "cannot be used to undermine a plaintiff's initial showing because doing so would require a court to weigh evidence and determine credibility, which is not appropriate until the second stage after discovery") (citing *Ferreira v. Modell's Sporting Goods,*

*Inc.*, No. 11 Civ. 2395, 2012 WL 2952922, at *3 (S.D.N.Y. July 16, 2012)); *Indergit v. Rite Aid Corp.*, Nos. 08 CIV 9361, 08 CIV 11364, 2010 WL 2465488, at *4 (S.D.N.Y. June 16, 2010) ("[T]he court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations.") (internal citation omitted); *Perkins v. S. New England Tel. Co.*, 669 F. Supp. 2d 212, 219 (D. Conn. 2009) ("The court notes that, in highlighting specific sections of deposition testimony . . . [Defendant] appears to be couching arguments about the merits of the [ ] case[.] [However], [a]t the certification stage, a court need not judge the merits of the plaintiffs' claims because they are irrelevant to the collective action inquiry, as long as plaintiffs assert a plausible basis for their claim.); *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 633 (S.D.N.Y. 2007).

Defendant relies on *Spagnuoli v. Louie's Seafood Rest., LLC*, No. 13 Civ. 4907, 2014 WL 2534836, at *4 (E.D.N.Y. June 5, 2014), where the court denied certification because "plaintiffs' papers in support of their motion for conditional certification [were] so riddled with errors and inconsistencies that the court [was] concerned that they [were] not reliable." The court stated that it is "required even at this stage of the conditional certification process to verify that the named plaintiffs and other potential plaintiffs were victims of a common plan and policy that violated the law and [was] unable to do so based on the submissions." *Id*. Significantly, in *Spagnuoli*, five of the six declarations in support of the motion for conditional certification were undated, contained the wrong captions with incorrect case numbers, and referenced incorrect judges and magistrate judges. *Id*. Here, in stark contrast, the declarations submitted by Plaintiff do not contain any such errors or inconsistencies and otherwise concern the same unlawful policies. Therefore, *Spagnuoli* is readily distinguishable.

Defendant also relies on *Bai v. Zhuo*, No. 13-cv-5790, 2014 WL 7385119, at *1-3 (E.D.N.Y. Dec. 29, 2014), in which the court denied certification where the plaintiff's factual showing was limited to only two affidavits – both submitted by plaintiff.   Significantly, both affidavits were admittedly inaccurate and ultimately failed to identify "a single individual other than [the plaintiff] who was employed by [the] defendant . . . during the limitations period." *Id*. at 3.   The court in *Bai* found striking the plaintiff's failure to submit an affidavit from any employee other than himself, and highlighted discrepancies, revealed during oral argument, that called into question whether the pay practices at issue in in the lawsuit, took place during the limitations period. *Id*.   Here, in striking contrast, Plaintiff has submitted numerous declarations, including from the Potential Opt-ins, all of which (1) detail the no-overtime policy to which SMs were allegedly subjected during the limitations period and (2) reference other individual SMs known to have been subjected to the same policy during the same time period.   As such, *Bai* is also readily distinguishable from the instant case.

As stated in the Court's order denying Defendant's motion seeking an evidentiary hearing on this very issue, "[t]he Court does not weigh the merits of the plaintiffs' underlying claims, resolve factual disputes, or evaluate credibility at this stage."   Order regarding Evidentiary Hearing at 2.   The Court declined to "conclude at this juncture that the declarations of the Plaintiff and the other eight store managers are false while the declarations of the Lane Bryant representatives are true," and stands by its decision. *Id*.   For the same reasons, the Court rejects Defendant's argument that even if the declarations submitted by Plaintiff are accepted as true, Plaintiff has – at best – only established that overtime practices vary widely from store to store. *See* Def.'s Opp'n at 11-13.   Although Defendant argues that its counter-declarations reveal SMs who state that they consistently adhered to Defendant's express written policy regarding

overtime, which prohibited "off-the-clock work," *id.*, again this argument would require the Court to evaluate the parties' competing declarations.  It is inappropriate for the Court to do so at this first stage of conditional certification.  *Anjum v. J.C. Penney Co., Inc.,* No. 13 cv 460, 2015 WL 3603973, at *5 (E.D.N.Y. Jun. 5, 2015).

Accordingly, Plaintiff's motion for conditional certification is GRANTED, subject to the limitations with respect to the scope of the collective discussed below.

**B.     Scope of the Collective**

Plaintiff seeks certification of a nationwide collective.  However, the Court is not persuaded that there is sufficient evidence to conditionally certify a nationwide collective.  The Court finds that Plaintiff has only satisfied her burden with respect to a collective covering New York, Illinois, Iowa, Tennessee, Nevada, Connecticut, California, Ohio, Idaho, Kansas, Rhode Island, and Pennsylvania.

In *Brown v. AvalonBay Communities Inc.*, plaintiffs sought conditional certification of a nationwide collective before this Court, "arguing that the evidence they submitted indicated application of the same unlawful policy at AvalonBay properties in New York, New Jersey, Connecticut, Massachusetts, Virginia, and Maryland.  No. CV 17-6897, 2019 WL 1507901, at *11 (E.D.N.Y. Mar. 29, 2019).  However, this Court held there was insufficient evidence to expand the scope of the collective to cover employees at AvalonBay properties in states beyond New York, New Jersey, Connecticut, Massachusetts, Virginia, and Maryland, stating, "[t]he lack of reference to any individually identifiable employees beyond these six states, even indirectly, is indicative of Plaintiffs' deficient showing in terms of certifying a nationwide collective." *Id.*

Here, as set forth in Plaintiff's submissions, Plaintiff and the Potential Opt-ins have worked out of Defendant's stores in New York, Illinois, Iowa, Tennessee, Nevada, Connecticut,

California, and Ohio, at which each was allegedly subject to Defendant's unlawful policies concerning overtime.  *See* Meo Decl. ¶ 1; Smith Decl. ¶ 1;  Devlin Decl. ¶ 1; Koehler Decl. ¶ 1; Davis Decl. ¶ 1; Seymour Decl. ¶ 1; Marchand Decl. ¶ 2; Clark Decl. ¶ 1; McCreery Decl. ¶ 1. Further, Plaintiff and the Potential Opt-ins name other SMs whom they state they know were subject to the same illicit overtime policies in Defendant's stores in additional states, including Idaho, Kansas, Rhode Island, and Pennsylvania.  *See* Meo Decl. ¶ 13 [sic]; Smith Decl. ¶ 15; Devlin Decl. ¶ 14; Koehler Decl. ¶ 14; Davis Decl. ¶ 14; Seymour Decl. ¶ 13; Marchand Decl. ¶ 13; Clark Decl. ¶ 1; McCreery Decl. ¶ 14

Significantly, Lane Bryant operates 727 stores across 47 states nationwide. WOMEN'S PLUS SIZE CLOTHING STORE LOCATIONS | LANE BRYANT STORES, https://stores.lanebryant.com/index.html (last visited Jul. 10, 2019).  As in *Brown*, Plaintiff's submissions, which implicated application of an illicit overtime policy in 12 states — New York, Illinois, Iowa, Tennessee, Nevada, Connecticut, California, Ohio, Idaho, Kansas, Rhode Island, and Pennsylvania — are not sufficient to support certification of a nationwide collective.  *See also Anjum*, 2015 WL 3603973, at *8 (limiting the scope of a collective to employees of two stores where the court "ha[d] before it no firsthand evidence of violations at any of the J.C. Penney retail stores in the State of New York" other than two locations); *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 459 (E.D.N.Y. 2014) ("Plaintiffs' submissions do not include sufficient evidence of a nationwide common policy or plan to deny SAs pay for overtime.  As the Second Circuit has made clear, the requisite modest factual showing 'cannot be satisfied simply by unsupported assertions.'") (quoting *Myers*, 624 F.3d at 555). C*f. Thornburn v. Door Pro America Inc.*, No. CV 16-3839, 2018 WL 1413455, at *8 (E.D.N.Y. Mar. 20, 2018) (granting nationwide certification where Plaintiff plausibly showed that Defendant maintained the same purportedly

unlawful compensation system for technicians nationwide with no deviation in the practice between locations).

Accordingly, Plaintiff's motion for conditional certification with respect to nationwide certification is denied. The collective at this time is limited to SMs employed by Defendant during the relevant period who worked in New York, Illinois, Iowa, Tennessee, Nevada, Connecticut, California, Ohio, Idaho, Kansas, Rhode Island, and Pennsylvania.

### C.    Personal Jurisdiction Over Non-New York SMs

Although Defendant argues that conditional certification is improper, Defendant maintains that to the extent the Court conditionally certifies this action, any collective must be limited to New York.  *See* Def.'s Opp'n at 14.  Defendant argues that:  (1) the Court does not have general jurisdiction over Defendant because Defendant is incorporated in Delaware and had its principal place of business in Ohio, *see id.* at 15, and (2) the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Ct. of Cal., San Francisco Cnty*., 37 S. Ct. 1773 (2017), compels the conclusion that the Court lacks specific jurisdiction over non-resident collective action members, Def.'s Opp'n at 15.

As a preliminary matter, the Court points out that Defendant did not raise personal jurisdiction as a defense in its answer or in any pre-answer motion.  *See Mason v. Lumber Liquidators, Inc.*, No. 17-CV-4780, 2019 WL 2088609, at *4 (E.D.N.Y. May 13, 2019), *aff'd,* No. 17CV4780, 2019 WL 3940846 (E.D.N.Y. Aug. 19, 2019) (citing *Brown v. Lockheed Martin Corp*., 814 F.3d 619, 625 (2d Cir. 2016); Fed. R. Civ. P. 12(h)(1)); *see also* Def.'s Ans.  Indeed, Defendant did not raise lack of personal jurisdiction as an affirmative defense, nor has Defendant moved to dismiss on that basis.  *See* Def.'s Ans.  As such, Defendant has forfeited its defense to the Court's exercise of personal jurisdiction.  Nonetheless, the Court will address Defendant's

arguments concerning personal jurisdiction, including Defendant's reliance on *Bristol-Myers* in connection with specific jurisdiction.

"Under New York law, [f]or a plaintiff to demonstrate personal jurisdiction over a defendant . . . the plaintiff must show either that the defendant was present and doing business in New York within the meaning of C.P.L.R. § 301, known as general jurisdiction, 'or that the defendant committed acts within the scope of New York's long-arm statute, C.P.L.R. § 302, known as specific jurisdiction." *Mason* 2019 WL 2088609, at *5 (citing *Stroud v. Tyson Foods, Inc.*, 91 F.Supp.3d 381, 385 (E.D.N.Y. 2015) (alteration omitted) (internal quotation marks omitted)).

First, with respect to general jurisdiction, the Court concurs that it lacks general jurisdiction over the claims of non-resident opt-in plaintiffs because New York is neither Defendant's principal place of business nor its state of incorporation. *See* Def.'s Opp'n at 15. As such, the Defendant is not a"t home" in New York. With respect to Defendant's argument concerning personal jurisdiction, including Defendant's reliance on *Bristol-Myers*, the Court looks to *Mason*, in which Chief Magistrate Judge Mann recently considered a nearly identical argument raised by a defendant in the context of a collective certification decision in an FLSA action. 2019 WL 2088609, at *1 (E.D.N.Y. May 13, 2019).

By way of background, *Mason* was an action brought as a putative collective where the plaintiffs asserted claims under the FLSA and the NYLL for unpaid overtime resulting from the misclassification of the plaintiffs as exempt employees. *Id.* In opposition to the plaintiffs' motion for nationwide collective certification, defendant argued that the "Court lacked personal jurisdiction over putative collective action members who did not work in New York." *Id*. at *4. After rejecting defendant's arguments in the first instance, noting that defendant forfeited its

personal jurisdiction defense by failing to raise it in its answer or in any motion to dismiss, Judge

Mann turned to *Bristol-Myers* and defendant's argument that *Bristol-Myers* required the

conclusion that the court lacked specific jurisdiction over non-resident putative collective action

members. *Id.* at *5. In doing so, Judge Mann observed the following:

> In *Bristol-Myers*, 600 individual plaintiffs, only some of whom were
> California residents, brought a mass-tort action in California state
> court. The Supreme Court concluded that the state courts lacked
> personal jurisdiction over claims brought by out-of-state plaintiffs
> against an out-of-state defendant, since neither the conduct nor injuries
> alleged had occurred in California. The Court specifically noted that
> its decision "concerns the due process limits of the exercise of specific
> jurisdiction by a State," leaving "open the question whether the Fifth
> Amendment imposes the same restrictions on the exercise of personal
> jurisdiction by a federal court." In her dissent, Justice Sotomayor noted
> that the majority failed to address whether its opinion applied to
> federal class actions "in which a plaintiff injured in the forum State
> seeks to represent a nationwide class of plaintiffs, not all of whom
> were injured there."

*Mason*, 2019 WL 2088609, at *5 (internal citations omitted).

As Judge Mann rightly points out, following *Bristol-Myers*, lower federal courts have

split on whether the decision "applies to federal nationwide class actions under Rule 23 of the

Federal Rules of Civil Procedure," with fewer courts addressing – but still reaching varying

conclusions about – whether the decision applies to FLSA claims of non-resident opt-in

plaintiffs. *Id.* (collecting cases).

Ultimately, Judge Mann sided with those courts which have declined to apply *Bristol-Myers* to FLSA collective actions, noting that "[u]nlike the mass-tort state law claims at issue in *Bristol-Myers*, the collective action allegations here arise under a federal statute intended to address wage-and-hour practices nationwide." *Id.* at 6. The Court went on, "[a]pplying *Bristol-Myers* to FLSA collective actions 'would splinter most nationwide collective actions, trespass on

25

the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights.'" *Id.* (citation omitted).

This Court concurs with Judge Mann's analysis in *Mason*.  As a remedial statute, Congress intended for nationwide FLSA collective actions.  Applying *Bristol-Myers* to FLSA collective actions would countermand that purpose.  *Mason*, 2019 WL 2088609, at *6.  The Court therefore declines to deny certification with respect to out-of-state members of the collective.

### D.      Production of Class Information

Plaintiff requests that the Court direct Defendant to "furnish the names and contact information for all hourly SMs employed since November 8, 2015."  Pl.'s Mot. 1.  Defendant has not asserted an objection to this request.

"In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members."  *Velasquez v. Digital Page, Inc.*, No. 11-CV-3892, 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014) (citing *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 998 F. Supp. 2d 95, 2014 WL 702185, at *6 (E.D.N.Y. Feb. 25, 2014) ("In regard to requests for names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment, courts often grant this kind of request in connection with a conditional certification of an FLSA collective action.") (internal quotation marks and citations omitted); *In re Penthouse Executive Club Comp. Litig.*, No. 10 Civ. 1145, 2010 WL 4340255, at *5-6, (S.D.N.Y. Oct. 26, 2010) (finding the disclosure of names, addresses, telephone numbers, and dates of employment to be "essential to identifying potential opt-in plaintiffs"); *see, e.g.*, *Fa Ting Wang v. Empire*

*State Auto Corp.*, No. 14-CV-1491, 2015 WL 4603117, at *14 (E.D.N.Y. 2015) (collecting cases from the Eastern and Southern Districts of New York).

Accordingly, the Court is directing Defendant to provide Plaintiff's counsel, in a standard electronic format, a list of the names, last known mailing addresses, and last known telephone numbers for all potential collective members employed by Defendant during the relevant time period. The list is to be furnished within 21 days of the entry of this Order and is to be treated by the parties as confidential.

### E.      Dissemination of Notice

Plaintiff initially sought dissemination of the notice through mail, email, text message, and posting. *See* Pl.'s Mot. 1. It now appears that Plaintiff is only seeking authorization to distribute the notice by mail. *See* Pl.'s Reply at 12. Accordingly, the notices shall be disseminated through first-class mail.

### F.      Other Disagreements as to the Language of the Notice

With respect to the remaining disagreements as to the content and language of the proposed notice, the Court directs counsel for the parties to meet and confer in good faith, and within 21 days of entry of this Order, submit either a revised joint proposed notice, or contact Chambers to set up a telephone conference to address any remaining disputes.

### G.      Reminder Notice

In connection with Plaintiff's proposed notice plan, Plaintiff asks that the Court permit a reminder notice to issue half way through the notice period to help ensure that SMs receive timely notice of their rights. *See* Pl.'s Mot. at 3. and Ex. P, Reminder Notice. Defendant opposes Plaintiff's request to distribute postcard reminder notice. *See* Def.'s Opp'n at 19-20. Significantly, the weight of caselaw in the Second Circuit has in recent years moved towards

approval of reminder notices in light of the remedial purpose of the FLSA.  *See Diaz v. New York Paving Inc.*, 340 F. Supp. 3d 372, 387 (S.D.N.Y. 2019); *see also Chhab v. Darden Restaurants, Inc.*, No. 11 Civ. 8345, 2013 WL 5308004, at \*16 (S.D.N.Y. Sept. 20, 2013) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate.") (collecting cases); *Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012) (same).

It appears the parties have agreed on the language of a reminder notice in the event this Court authorizes the distribution of such notice.  The Court hereby authorizes circulation of a postcard reminder notice.

**IV.**  **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for conditional certification as an FLSA collective action pursuant to Section 216(b) is GRANTED, subject to the limitations and directives in this Memorandum and Order.

In sum, the Court conditionally certifies the following collective:

> All non-exempt hourly Store Managers employed by Lane Bryant at any retail store location in New York, Illinois, Iowa, Tennessee, Nevada, Connecticut, California, Ohio, Idaho, Kansas, Rhode Island, or Pennsylvania, however variously titled, on or after November 8, 2015, who have not been paid for all overtime hours worked.

The Court further orders that: (1) within 21 days of this Order, Defendant is to provide Plaintiff's counsel, in a standard electronic format, a list of the names, last known mailing addresses, and last known telephone numbers for all potential collective members employed by Defendant during the relevant time period; and (2) within 21 days of this Order, the parties are to

meet and confer in good faith, and submit a revised joint proposed Notice or contact Chambers

to set up a telephone conference.

**SO ORDERED:**

Dated:  Central Islip, New York
            September 30, 2019

            /s/ A. Kathleen Tomlinson
            A. KATHLEEN TOMLINSON
            United States Magistrate Judge