

May 11, 2020

**Via ECF**
Hon. A. Kathleen Tomlinson, U.S.M.J.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re:   *Meo v. Lane Bryant, Inc.*
             Case No. 18 Civ. 6360 (AKT)

Dear Judge Tomlinson:

Kessler Matura P.C. and Shavitz Law Group, P.A., ("Plaintiffs' Counsel") represent Plaintiff, Amanda Meo, and the 15 Opt-In Plaintiffs (collectively, "Plaintiffs"). Plaintiffs and Defendant Lane Bryant, Inc., have reached a settlement of this case. Plaintiffs write to request that the Court approve the Parties' settlement (Exhibit 1) and so order the Stipulation and Proposed Order of Dismissal (Exhibit 6), as this is an arms-length settlement of contested issues.

**I.**    **Factual and Procedural Background**

This is a collective action lawsuit brought under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") to recover unpaid overtime on behalf of non-exempt, hourly-paid Store Managers ("SMs") who worked at Defendant's Lane Bryant retail stores nationwide. Plaintiffs allege that, due to a company-wide policy or practice discouraging the recording of overtime hours, SMs worked off the clock in the store – assisting customers and stocking – and outside of the store – scheduling, on calls, marketing, and responding to associates. Kessler Decl. ¶¶ 4-5. Plaintiffs worked as SMs at over 35 different stores in 11 states. *Id.* ¶ 5.

Plaintiff Meo filed this action on November 8, 2018. *Id.* ¶ 8. On December 18, 2018, Lane Bryant answered the Complaint. *Id.* ¶ 9. On January 25, 2019, Plaintiff moved for conditional certification. *Id.* ¶ 10. By February 28, 2019, Plaintiff's motion for conditional certification was fully briefed. *Id.* After the initial conference on April 2, 2019, the Parties engaged in paper discovery while Plaintiff's motion was pending. *Id.* ¶ 14.

On September 30, 2019, the Court conditionally certified a collective of SMs from the 12 states in which Plaintiffs and known witnesses had worked. *Meo v. Lane Bryant, Inc.*, No. 18 Civ. 6360, 2019 WL 5157024, at *10 (E.D.N.Y. Sept. 30, 2019). After agreeing upon the final notice, the Parties agreed to mediate before disseminating it. *Id.* §§ 16-18. As such, the Parties engaged in an informal data exchange and executed a tolling agreement. *Id.* §§ 18, 21-24.

On February 25, 2020, the Parties settled after a full day of negotiations facilitated by experienced mediator Stephen Sonnenberg. *Id.* ¶ 26. On May 11, 2020, following over two months of further negotiations, the Parties executed a formal settlement agreement. *Id.* ¶ 28.



Hon. A. Kathleen Tomlinson, U.S.M.J.
May 11, 2020
Page 2 of 5

## II.     The Settlement.

The Parties agreed to settle the claims of Plaintiffs and the members of the nationwide FLSA Collective ("Collective Members") for $1,395,000.00.  *Id*. ¶ 30.  The settlement does not include SMs from California because a California class-action suit, *Clark v. AnnTaylor Retail Inc.*, No. 37-2019-131185 (Ca. Sup. Ct. San Diego), has already resolved the claims of the SMs who do not opt-out of that case.  The proposed settlement creates a common fund from which the Collective Members will receive a payment based on their pro-rata share, based on the amount of eligible weeks worked, and in exchange the Collective Members who negotiate their checks will release their FLSA and applicable state law claims.  *Id.* ¶¶ 37-39.

After approval, the Settlement Administrator[1] will mail the proposed Notice and Claim Forms to the estimated 900 Collective Members, who will have 60 days to return the Claim Form.  *Id*. ¶¶ 34-36.  Thereafter, the Settlement Administrator will mail settlement checks to all Collective Members, regardless of whether they return a Claim Form.  *Id*. ¶ 39.  The settlement checks will total 100% of their pro-rata share for Collective Members who return Claim Forms and 50% of their pro-rata share for those who do not.  *Id*.

## III.    The Settlement is Fair and Reasonable

Dismissals with prejudice resulting from a FLSA settlement require judicial review.  *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).  Courts consider the totality of the circumstances to make this determination.  *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14 Civ. 2824, 2015 WL 6550560, at *2 (E.D.N.Y. Oct. 28, 2015).  The factors considered include: (1) the possible recovery; (2) the burdens in establishing the claim; (3) the litigation risks; (4) whether the settlement resulted from arm's-length bargaining; and (5) the possibility of collusion.  *Id*.  Courts are also mindful of the admonitions set forth in *Cheeks*.  *Norris v. Babylon Townhouse Diner Corp*., No. 18 Civ. 3051, 2019 WL 5540326, at *1 (E.D.N.Y. Oct. 25, 2019) (Tomlinson, Mag.) ("The Settlement Agreement complies with [*Cheeks*] . . . because: (a) there are no restrictive confidentiality provisions . . .; (b) the release is narrowly tailored . . . ; and (c) the attorney's fees, which equate to approximately one-third (i.e., 33.3%) of the total settlement amount are fair and consistent with the provisions of the retainer agreement . . . ."); *Nunes v. Rob-Glen Enterprises, Inc*., No. 16 Civ. 6207, 2018 WL 3351798, at *1 (E.D.N.Y. July 5, 2018) (Tomlinson, Mag.) (same).  With these factors in mind, the settlement should be approved as fair and reasonable.

First, Plaintiffs' recovery is fair and reasonable given the range of possible recovery and the assumptions used in calculating Plaintiffs' damages.  Plaintiffs' counsel reviewed the hours reported in Defendant's time and payroll records, reviewed Plaintiffs' emails and Defendant's computer logs, interviewed Plaintiffs, reviewed Defendant's counter evidence and declarations, and had lengthy merits-based communications with Defendant in advance of the mediation.  *See*

---

[1]     The Parties selected A.B. Data to administer the settlement.  Kessler Decl. ¶ 40.



Hon. A. Kathleen Tomlinson, U.S.M.J.
May 11, 2020
Page 3 of 5

*id.* ¶¶ 6-7, 14, 20-25.  By Plaintiffs' counsel's estimation, the FLSA Settlement represents approximately 13.6% of the Class Members' best-case scenario and about 33% of a more modest recovery.  *See id*. ¶¶ 44-48.

Second, Plaintiffs have agreed to resolve these claims now because they will receive a guaranteed payment and avoid the uncertainty of dispositive motion practice or trial, after which, Plaintiffs may receive nothing.  *See id.* ¶¶ 41-43.  Defendant presented both a "take nothing" defense to Plaintiffs' claims, and additional defenses which would have substantially limited the recovery, even if Plaintiffs prevailed.  *Id*. ¶ 42.

Third, this settlement resolves contested issues and is an excellent recovery for Plaintiffs and the Collective Members given the risks of continued litigation.  *See id*.  Significant disputes exists including whether: (1) Plaintiffs worked off-the-clock overtime hours; (2) Defendant knew or had reason to know that SMs worked off-the-clock hours; (3) any failure to pay overtime was willful; (4) Defendant's had a reasonable good-faith belief that all hours worked had been paid properly; (5) Plaintiffs could establish Defendant willfully failed to pay Plaintiffs for all hours worked; and (6) Plaintiffs' could maintain a collective action through trial.  *See id*. ¶¶ 42-44.

Approval of this settlement is supported under the fourth and fifth factors.  Plaintiffs were represented by competent and experienced counsel throughout the pre-suit, litigation, and settlement process.  *See id.* ¶¶ 54-81; Ex. 2 (Shavitz Decl.) ¶¶ 4-14, 16.  And, the Parties used the services of experienced mediator Stephen Sonnenberg, further establishing that the settlement was reached as a result of an arms-length negotiation.  *Id.* ¶ 21, 25-27, 29.

Lastly, the settlement is *Cheeks* compliant insofar as: (a) the agreement does not contain a confidentiality provision; (b) the release is tailored to this case; and (c), as described in § IV, *infra*, the requested attorneys' fees and costs are reasonable.  *See generally* Ex. 1 (Agr.) § 4.

For these reasons, the settlement should be approved.

**IV.**     **Plaintiffs' Request for Attorneys' Fees and Costs Is Reasonable.**

The Parties have agreed that Plaintiffs' Counsel's attorneys' fees will be one-third of the gross settlement amount.  One-third of the gross settlement amount is reasonable considering the time Plaintiffs' Counsel spent on this case and will spend administering the settlement.  *Id.* ¶¶ 4-28, 82, 92.  Plaintiffs' Counsel also seeks to be reimbursed for $21,365.82 of incidental, necessary out-of-pocket expenses incurred litigating this case.  *Id.* ¶ 86; Ex. 3 (Summary); Ex 5 (Costs); *see also Cohan*, 2018 WL 4861391, at *6 (approving comparable expenses including postage, copies, court fees, service fees, copies, "travel expenses, discovery costs and legal research").

The "trend" in this Circuit is to award fees using the percentage of the fund method in common-fund wage settlements like this.  *See Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015) (citations omitted); *Berrios v. Nicholas Zito Racing Stable, Inc*., No. 04 Civ.



Hon. A. Kathleen Tomlinson, U.S.M.J.
May 11, 2020
Page 4 of 5

22, 2014 WL 12838562, at *7 (E.D.N.Y. Jan. 28, 2014) (Tomlinson, Mag.). Plaintiffs' counsel's request for a contingency fee of one-third of the settlement is consistent with the norms in this district. *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 Civ. 3203, 2018 WL 4861391, at *2 (E.D.N.Y. Sept. 28, 2018) (Tomlinson, Mag.) (collecting cases) ("In common fund cases, the Second Circuit favors awarding fees according to the 'percentage of the fund' method.").

The practice in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "cross check." *See, e.g.*, *Cohan*, 2018 WL 4861391, at *2 (the court need not "exhaustively scrutinize[]" counsel's hours when performing a cross check (internal quotations and citations omitted)); *Wu v. Maxphoto NY Corp.*, 15 Civ. 3050, 2016 WL 7131937, at *3-4 (E.D.N.Y. Nov. 15, 2016) (same). That is, the lodestar is first determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Id*. Then, the proposed fee is compared to the lodestar. *Id*. Courts will approve fees that are "two to six times the lodestar." *Cohan*, 2018 WL 4861391, at *5 (collecting cases); *Weston v. TechSol, LLC*, No. 17 Civ. 0141, 2018 WL 4693527, at *9 (E.D.N.Y. Sept. 26, 2018) (same).

In analyzing the reasonableness of the fee request, including any multiplier, courts consider (1) time and labor expended; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Cohan*, 2018 WL 4861391, at *2.

Here, Plaintiffs' Counsel requests fees amounting to $465,000, which is 1.53 times their lodestar amount of $304,630.00. Kessler Decl. ¶¶ 82, 85; Ex. 4 (Summary). This lodestar estimate is reasonable because Plaintiffs' Counsel (a) calculated it using contemporaneous time records, (b) used billing judgment to account for overstaffing and duplicative work, and (c) used reasonable hourly rates regularly submitted to courts in this district and paid by their clients. *See* Kessler Decl. ¶¶ 82-85, 89-90; Shavitz Decl. ¶¶ 17-20; *see also Norris*, 2019 WL 5540326, at *1 (finding KM's attorneys' rates are "within the range of reasonable rates" for this district); *Nunes*, 2018 WL 3351798, at *2 (same). Thus, given the risks involved in litigating this matter, the quality of Plaintiffs' counsel's representation, and the public policy considerations, Plaintiffs respectfully request that the Court approve Plaintiffs' counsel's requested attorneys' fees. *See supra* § I(A); *see also Chavarria v. New York Airport Serv.*, LLC, 875 F. Supp. 2d 164, 178 (E.D.N.Y. 2012) ("Adequately compensating attorneys who protect wage and hour rights will serve the remedial purposes of the FLSA and [NYLL].").

      **V.**      **Plaintiffs' Requests for Service Payments are Reasonable.**

Plaintiffs request $50,000 in aggregate service payments for Plaintiff Meo, eight declarant-Opt-In Plaintiffs, and seven Opt-In Plaintiffs, in the amounts of $9,000, $2,850, and $2,600 respectively. Ex. 1 (Agr.) § 3.3. These payments are reasonable and should be approved.



Hon. A. Kathleen Tomlinson, U.S.M.J.
May 11, 2020
Page 5 of 5

Courts routinely award service payments in unpaid wage settlements. *See, e.g., Sierra v. Spring Scaffolding LLC*, No. 12 Civ. 5160, 2015 WL 10912856, at *7 (E.D.N.Y. Sept. 30, 2015) (collecting cases). Service awards in FLSA settlements are "important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Diaz v. Scores Holding Co., Inc.*, No. 07 Civ. 8718, 2011 WL 6399468, at *3 (S.D.N.Y. July 11, 2011). In examining service awards, courts consider the: (1) risks incurred; (2) effort expended prosecuting the case, and value added to it; and (3) ultimate recovery. *Frank,* 228 F.R.D. at 187 (awards totaled 8.4% of the settlement).

Plaintiffs' request warrants approval given these factors. Here, recipients faced significant risk by publicly filing claims against their employer and expended significant amounts of time prosecuting the case to the benefit of the other Collective Members. *See* Kessler Decl. ¶¶ 49-53. At less than $10,000 each and a total of less than 3.6% of the fund, the awards fall within the range regularly approved in this Circuit. *See, e.g.*, *Cohan*, 2018 WL 4861391, at *6 (collecting awards ranging from $5,000 to $30,000 per person); *Hyun v. Ippudo USA Holdings*, No. 14 Civ. 8706, 2016 WL 1222347, at *2 (S.D.N.Y. Mar. 24, 2016) (awards totaled 5% of the FLSA settlement).

\* \* \* \*

During these uncertain times, this settlement represents a significant financial recovery for working people and a difficult payment to make for a "non-essential" business. As the COVID-19 crisis has devastated the retail industry, the value of this settlement has increased significantly while highlighting how collection risks can arise at any time, involving any employer. For these reasons and those set out above, Plaintiffs request that Your Honor approve the settlement, and so order the Stipulation and Proposed Order of Dismissal (attached as Exhibit 6).

Thank you for your consideration of this matter.

Respectfully submitted,

*Troy L. Kessler*
Troy L. Kessler

Enc.

cc: All Counsel (via ECF)