IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

AMANDA MEO, on behalf of herself and all others
similarly situated,

                           Plaintiff,

      v.

LANE BRYANT, INC.,

                         Defendant.

:
:
:  Case No. 18 Civ. 6360 (AKT)
:
:
:
:
:
:
:

----------------------------------------------------------------- X

## DECLARATION OF TROY L. KESSLER IN SUPPORT OF
## PLAINTIFFS' MOTION FOR FLSA SETTLEMENT APPROVAL

I, Troy L. Kessler, declare as follows:

      1.    I am a shareholder and founding member of the law firm of Kessler Matura P.C. ("KM"). Along with Shavitz Law Group, P.A. ("SLG") (collectively, "Plaintiffs' Counsel"), KM is co-counsel for Plaintiff Amanda Meo, on behalf of himself and all others similarly situated, Opt-In Plaintiffs Portia Witten, Annette Solano, Jennifer Seymour, Joyce Hamilton, Sheena Clark, Ivory Davis, MonicaJo Marchand, Allison Smith, Kelsi Gonzalez, Diana Koehler, Debra Devlin, Susan McCreery, Michelle Riley, Tammy Desue-Parker, and Raeschelle Coleman, and the putative collective action in the above-captioned action.

      2.    I am one of the attorneys responsible for the prosecution of this matter against Defendant.

      3.    I make these statements based on personal knowledge and would so testify if called as a witness.

**The Instant Action**

*Background and Investigation*

4.      This is a collective action lawsuit brought under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") to recover unpaid overtime on behalf of non-exempt hourly-paid Store Managers ("SMs"), who worked at one Defendant's Lane Bryant retail stores.

5.      Plaintiffs worked as SMs at over 35 different stores across 11 states during their employment.  Over the course of their employment, Plaintiffs allege that they and other SMs worked unpaid off-the-clock hours in the store – assisting customers, and stocking – and out–scheduling, on calls, marketing, and responding to associates.  Plaintiffs allege that they worked these unpaid hours pursuant to a company policy and practice related to limited labor budgets

6.      Before filing the litigation, Plaintiffs' Counsel engaged in a robust investigation of Plaintiffs' claims, Defendant's business, Defendant's prior litigation, Defendant's anticipated defenses, the propriety of maintaining a class or collective certification through trial, and the risks associated with this litigation.

7.      Plaintiffs' Counsel conducted in-depth interviews with Plaintiffs and other SMs, who worked for Defendant at various stores across the United States.

*Filing the Complaint, Motion Practice, and Discovery*

8.      On November 8, 2018, Plaintiffs' Counsel filed this action.  ECF No. 1 (Compl.).

9.      On December 18, 2018, Defendant answered the Complaint.  ECF No. 9 (Ans.).

10.      On January 25, 2019, Plaintiffs moved for conditional certification, which Defendant opposed and the parties fully briefed on February 28, 2019.  ECF Nos. 12, 19-20, 21-22 (FLSA Mot. Papers).  Because the impact of *Bristol-Myers Squibb Co. v. Superior Ct. of Ca.*, 137 S. Ct. 1773 (2017) on conditional certification motions had not been decided in the Second Circuit, the

Parties continually monitored district court orders on the topic to supplement their papers, which they did on three occasions.  ECF No. 42, 45, 46 (Notices of Suppl. Authority).

11.     On March 11, 2019, Defendant moved for an evidentiary hearing related to Plaintiffs' conditional certification motion.  ECF No. 25 (Letter Mot.).  The Court denied the request without prejudice on March 12, 2019, advising the parties that the Court would consider the application at the initial conference.  *See* ECF Ord. (Mar. 12, 2019).

12.     The Court held an initial conference on April 2, 2019, at which the Court heard the Parties' positions on the Defendant's motion for an evidentiary hearing, which Plaintiffs opposed.

13.     On April 15, 2019, the Court denied Defendant's motion for an evidentiary hearing. *See* ECF Ord. (April 15, 2019).

14.     After the initial conference, the Parties engaged in court-approved first-phase discovery.  The Parties exchanged interrogatories and documents, inclusive of ESI, and prepared for depositions.  The Parties also worked through alleged deficiencies in Defendant's document production.  Ultimately, Plaintiffs produced over 2,250 pages of documents and Defendants produced over 4,300 pages of documents, along with lengthy Excel spreadsheets.

15.     On September 30, 2019, the Court granted Plaintiffs' motion for conditional certification.  *Meo v. Lane Bryant, Inc.*, No. 18 Civ. 6360, 2019 WL 5157024 (E.D.N.Y. Sept. 30, 2019) (ECF No. 47).

16.     The Parties then negotiated over the proposed final form of the FLSA notice, which was submitted to the Court on October 28, 2019, and approved on November 1, 2019.  ECF No. 48 (Mot. re Notice); ECF Ord. (Nov. 1, 2019).

17.     On December 11, 2019, the Parties asked the Court to stay the issuance of FLSA notice and permit the parties to attend a mediation, which the Court granted.  ECF No. 49 (Mot. to Stay).

18.     To facilitate settlement negotiations, the Parties agreed to a confidential data exchange related to the putative collective action and tolled the statute of limitations for those individuals employed in the 12 states covered by the Court's conditional certification order.

***Settlement Negotiations***

19.     Throughout the summer of 2019 and through February 2020, the parties engaged in an open, arms-length settlement dialogue.

20.     After some initial email exchanges and a phone discussion, with an eye towards settlement, Plaintiffs wrote Defendant on August 7, 2019, a detailed letter explaining how Plaintiffs intended to prove SMs worked off the clock and the evidence obtained in discovery that supported their allegations.  The Parties discussed the matter over the phone and Defendant responded in writing to counter Plaintiffs' evidence.

21.     In December 2020, the Parties agreed to mediate with JAMS, selecting Stephen Sonnenberg, an experienced wage-and-hour and class action mediator.

22.     Thereafter, and in advance of the mediation, Defendant agreed to produce collective-wide data prior to the Parties' mediation.  This production consisted of a spreadsheet containing the following: (1) the start and end dates for each putative collective member; (2) salary histories; (3) time records; and (4) leave information.

23.     This allowed Plaintiffs' Counsel to prepare damages calculations in Excel format. Additionally, this data shed light on how often SMs could have worked unpaid overtime hours if they had worked the off-the-clock hours alleged.

24.     Plaintiffs also considered the evidence submitted to the Court in relation to Plaintiffs' motion for conditional certification and the discovery produced in this case, including: (1) work-related emails from Plaintiffs' personal email accounts; (2) Plaintiffs' paystubs and time

records; (3) sample point-of-sale log-in and log-out data; (4) Defendant's time-recording and overtime policies and memorandum; and (5) Plaintiffs' and Defendant's sworn statements.

25.     In advance of the mediation, Plaintiffs' Counsel prepared a detailed mediation statement for Mr. Sonnenberg's review, setting forth Plaintiffs' factual arguments, legal analysis, damages model, and settlement position.

26.     The Parties participated in a full-day mediation on February 25, 2020.

27.     At the mediation, the Parties reached an agreement in principle, memorialized in an executed term sheet.

28.     Thereafter, the Parties had extensive negotiations concerning the terms of the Agreement (Exhibit 1), including the following exhibits attached to the Agreement:

- A – Stipulation and Proposed Order of Dismissal;

- B – (1) Proposed Court-Authorized Notice of Settlement and (2) Consent to Join Settlement, Release, and Claim Form;

- C – Template envelope for the notice and claim forms; and

- D – Template reminder notices.

29.     At all times, the Parties negotiated at an arm's-length basis.

<u>**The Settlement**</u>

***The Settlement Agreement***

30.     Defendant agrees to pay $1,395,000.00 ("Gross Settlement Amount") to cover: (1) all individual Settlement Amounts to be paid to Eligible Collective Members; (2) Court-approved attorneys' fees  and costs; (3) Court-approved Service Payments; and (4) any fees and expenses related to the Settlement Administrator.  Ex. 1 (Settlement Agr.) §§ 1.14, 1.18.[1]

---

[1]     Capitalized terms in this declaration are defined in the Settlement agreement, unless noted otherwise.

31.     Defendant will pay the full Gross Settlement Amount by the later of 45 days after the 30-day Effective Date or by August 15, 2020, which is keyed to the Court's issuance of the Approval Order.  *Id.* § 1.10, 3.1(ii).

32.     Within 30 days of the Effective Date, Defendant will provide the Settlement Administrator with the Class List, which is an electronic list of the names, Social Security Numbers, last known addresses, and weeks employed during the Relevant Period. *Id.* §§ 1.5, 1.29, 3.1(i).

33.     The Settlement Administrator will mail the approved Notice to Eligible Collective Members no later than 45 days after the Effective Date.  *Id*. § 2.6.  The Settlement Administrator will take reasonable steps to obtain the correct address of any Eligible Collective Members for whom the Notice is returned as undeliverable.  *Id.* § 2.8.  The Settlement Administrator will also send two reminder postcards to those individuals who have not yet returned a Claim Form.  *Id.* § 2.9.

34.     Eligible Collective Members will have 60 days to return a Claim Form.  *Id.* § 1.4. They may return Claim Forms via mail, email, fax, or online submission via a website to be established and maintained by the Settlement Administrator.  *Id.* §§ 2.2, 2.9.

35.     Within 10 days after the Funding Date, the Settlement Administrator will distribute the Settlement Checks.  *Id.* §§ 1.4, 3.1(iii).  Collective Members will have 120 days to cash their checks and will be sent a reminder notice after 60 days.  *Id.* § 3.4(iv).

36.     Based on Plaintiffs' Counsel's review of Defendant's pre-mediation discovery production, there are approximately 900 Collective Members eligible to participate in the Settlement.

37.     The Agreement provides that Eligible Collective Members who submit a Claim Form or cash their checks release Defendant, and related Releasees, from all claims alleged in the Complaint and any state or local counterpart to those claims, through the Court's Approval Order.  *Id.* §§ 4.1-4.2. The Service Award recipients will also provide Defendant with a general release.  *Id.* § 4.3.

38.     Each Eligible Collective Member's estimated proportionate share of the Settlement will be determined before issuing the Notice.  *Id.* at Ex. B(1) (Notice) 1-2.  Each Eligible Collective Member's proportionate share of the Net Settlement Fund will be based on the number of Eligible Workweeks employed by Defendant.  *Id.* §§ 1.12, 1.32, 3.4(i).

39.     All Eligible Collective Members who complete and timely submit a Claim Form, shall be sent Settlement Checks for 100% the Settlement Amounts.  All other Eligible Collective Members shall be sent Settlement Checks for 50% the Settlement Amounts.  *Id*. § 3.4(ii).  The Notice explains this in plain English to the Eligible Collective Members.  *Id.* at Ex. B(1) (Notice) 1-2.

40.     The Parties selected A.B. Data to be the Settlement Administrator.  The Settlement Administrator's fees and costs are capped at $23,000, which is significantly less than the estimates provided by other trusted settlement administrators.  The Settlement Administrator will be responsible for handling the logistics of the notice, claims, and payment-distribution processes, and all banking and tax-reporting matters.  *Id*. § 2.2.

***Fairness of the Settlement***

41.     The Gross Settlement Amount of $1,395,000.00 is a compromise figure.  In reaching the Settlement, Plaintiffs' Counsel carefully evaluated the merits of the case and proposed settlement, taking into account the risks of establishing liability and maintaining collective

certification through the decertification stage, trial, and any appeal and the time, delay, and financial repercussions of such trial or appeal.

42.     Although Plaintiffs believes that the claims are meritorious, Plaintiffs recognize the legal, factual and procedural obstacles to recovery, as Defendant has and will continue to contest Plaintiffs' claims if the action does not settle.  Specifically the Parties dispute whether:  (1) SMs worked off-the-clock overtime hours; (2) Defendant knew or had reason to know that SMs worked off-the-clock hours; (3) Defendant's had a reasonable good-faith belief that all hours worked had been paid properly; (4) Plaintiffs could establish Defendant willfully failed to pay Plaintiffs for all hours worked; and (5) Plaintiffs could establish that all SMs are similarly situated, despite working in stores in different states, being under the direction of different district managers, and potentially performing differing amounts of off-the-clock work.

43.     Moreover, even if this case were to proceed to trial, Plaintiffs' Counsel recognizes that the apparent strengths of Plaintiffs' claims are no guarantee against a complete or partial defense verdict.  Even if a judgment were obtained against Defendant at trial, the relief might be no greater, and indeed might be less, than that provided by the proposed settlement.

44.     Considering the strengths and weaknesses of the case, Plaintiffs' Counsel believes the Settlement easily falls within the range of reasonableness because it achieves a significant benefit for Plaintiffs and the Eligible Collective Members in the face of significant obstacles.

45.     As discussed in detail above, the settlement negotiations were always hard fought at arm's-length, and they have produced a result that Plaintiffs' Counsel believes to be in the best interests of the collective in light of the costs and risks of continued litigation.

46.     Moreover, in our estimation, the Settlement represents a significant percentage of the recovery that Class Members would have achieved had they prevailed on all their claims and

survived an appeal.  We estimate that based on the data, evidence, and testimony obtained in this case, Plaintiffs' best-case scenario would result in an unpaid overtime recovery of $10,242,748. This optimistically assumes that SMs, on average, worked four unpaid overtime hours a week, which represents the difference between the average number of hours recorded in Defendant's data per week and the number of total hours Plaintiffs recalled working in their declarations.  As a result, this settlement represents 13.6% of the best-case scenario.  Further, it represents 33% of a more modest recovery wherein Plaintiffs would be able to prove SMs worked five unrecorded hours a week resulting in 1.7 hours of unpaid overtime.

47.     Given the number of Class Members KM estimates are in the Class, approximately 900, the average gross recovery per person is also be substantial: $1,550.

48.     As a result, the Settlement achieves all the objectives of the litigation, namely a substantial monetary settlement to SMs who were subjected to Defendant's allegedly unlawful wage and hour policies.

## Services Awards

49.     Plaintiffs made important contributions to the prosecution and fair resolution of this action on behalf of the collective.

50.     Plaintiffs expended considerable time and effort assisting Plaintiffs' Counsel with the case, including: informing counsel of the facts initially and as the case progressed; providing counsel with relevant documents in their possession, including ESI; and assisting counsel in preparing for collective certification and mediation.

51.     Plaintiffs Amanda Meo, Sheena Clark, Ivory Davis, Debra Devlin, Diana Koehler, Monicajo Marchand, Susan McCreery, Jennifer Seymour, and Allison Smith also submitted sworn statements in support of Plaintiffs' motion for conditional certification.

52.     Plaintiff Meo, as the named plaintiff, through her active participation in this lawsuit and her actions before bringing this suit, has demonstrated that she has sought to protect the interests of all SMs.  Specifically, she spoke with other SMs to locate witnesses, provided Plaintiffs' Counsel with essential information and evidence to bring the claims, submitted a declaration in support of Plaintiffs' motion for conditional certification, and prepared with Plaintiffs' Counsel for her deposition.

53.     Plaintiffs are also providing Defendant with additional consideration – a general release – in exchange for the proposed Service Payments.

### My Background and KM's Experience

54.     I received a Juris Doctor degree from Loyola University of Chicago – School of Law, in 1996.  I was admitted to the bar of the State of New York in 1997 and subsequently to the United States District Courts for the Southern and Eastern Districts of New York, as well as the United States Court of Appeals for the Second Circuit.  I am a member of good standing of each of these bars.

55.     From September 1996 until December 2002, I was associated with Capetola & Doddato, Esqs., LLP, in Williston Park, New York, where I handled general civil litigation matters and represented individuals in a variety of employment-related disputes including discrimination and harassment cases.  In January 2003, I was a founding partner in the firm of Misiano Shulman Capetola & Kessler, LLP, where I represented employees in a variety of employment-related disputes including discrimination and harassment cases as well as collective and class actions involving wage-and-hour disputes.  In March 2010, Misiano Shulman Capetola & Kessler LLP, disbanded and I founded Shulman Kessler LLP ("SK").

56.     On January 1, 2020, SK became known as KM.  I am a founding member and shareholder of KM.  Like SK, KM concentrates in the representation of employees in collective and class actions involving wage-and-hour disputes, as well as in discrimination and harassment cases and contract and severance negotiations.

57.     Since 2007, I have participated in and supervised the prosecution of more than 300 wage-and-hour cases, including individual cases as well as collective and class action cases. Notable examples of cases in which my firm and I were or are currently involved, include:

- *Pierre v. Kaufman Enters., LLC*., No. 604065/2019, NYSCEF No. 15 (Sup. Ct. May 8, 2020) (preliminary approval of class action settlement involving assistant restaurant managers);

- *Davis v. Buy Buy Baby, Inc.*, No. UNN-L-3630-19 (Sup. Ct. N.J. Feb. 18, 2020) (nationwide collective action settlement approved);

- *Vecchione v. Consumers Warehouse Center, Inc*., No. 606019/2017, NYSCEF No. 60 (Sup. Ct. Jan. 15, 2020) (class action settlement involving over 100 salespersons approved);

- *Flanagan v. Bank of Am. Corp.*, No. 613647/2018, NYSCEF No. 149 (Sup. Ct. Nov. 19, 2019) (nationwide class and collective action settlement approved);

- *Alfano v. Zocdoc, Inc.*, No. 18 Civ. 2558, 2019 WL 4803312 (S.D.N.Y. Oct. 1, 2019) (approving collective action settlement on behalf of more than 150 inside sales representatives);

- *Freeman v. General Dynamics Info. Tech., Inc.*, 18 Civ. 855, 2019 WL 4803277 (Md. Fla. Sept. 19, 2019), *adopted by*, 2019 WL 5168632 (M.D. Fla. Oct. 15, 2019) (approval of 182-plaintiff settlement on behalf of customer service representatives);

- *Przytula v. Bed Bath & Beyond Inc.*, No. 17 Civ. 5124 (N.D. Ill. Jan. 29, 2019) (approving nationwide collective action settlement on behalf of assistant store managers);

- *Williams v. TSU Glob. Servs. Inc.*, No. 18 Civ. 72, 2018 WL 6075668 (E.D.N.Y. Nov. 20, 2018) (recommending the conditional certification of a collective of drivers), *adopted by*, 2019 WL 1056273 (E.D.N.Y. Mar. 1, 2019);

- *Weston v. TechSol, LLC*, No. 17 Civ. 0141, 2018 WL 4693527 (E.D.N.Y. Sept. 26, 2018) (approving collective action settlement on behalf of cable installers);

- *Capilupi v. People's United Financial, Inc.*, No. 15 Civ. 5247, 2018 WL 4693588 (E.D.N.Y. Sept. 27, 2018) (class action settlement approved on behalf of over 200 assistant bank managers);

- *Oakley v. Servisair*, No. 13 Civ. 4191 (E.D.N.Y. May 25, 2017) (conditionally certifying nationwide collective of fuelers employed at airports throughout the United States), *settlement approved by* (E.D.N.Y. Aug. 5, 2018) (approving collective action settlement);

- *Klein v. Weatherproofing Tech., Inc.*, No. 15 Civ. 4443 (E.D.N.Y. Jan. 29, 2016) (conditionally certifying collective of over 200 roofing technicians employed throughout New York State), *settlement approved by*, (E.D.N.Y. Feb. 27, 2018) (approving settlement for the opt-in plaintiffs);

- *Robinson v. Big City Yonkers, Inc.*, No. 600159/2016, 2017 WL 449572, 2017 N.Y. Slip Op. 30177(U) (Sup. Ct. Jan. 17, 2017) (Sher, A.J.S.C.) (class action certified on behalf of approximately 1,700 delivery drivers), *settlement approved*, NYSCEF No. 292 (Sup. Ct. Feb. 13, 2018);

- *Crosby v. Lasership, Inc.*, No. 15 Civ. 8694 (S.D.N.Y. June 30, 2017) (class action settlement approved on behalf of over 900 package deliverers);

- *Brackley v. Red Robin Gourmet Burgers, Inc.*, No. 16 Civ. 288, 2017 WL 838227, (E.D.N.Y. Mar. 2, 2017) (granting preliminary approval of settlement and class certification for settlement purposes), *settlement approved by* (E.D.N.Y. June 6, 2017) (class action settlement approved on behalf of over 2,000 servers employed at the defendants' New York restaurants);

- *Cruz v. Burger Brothers Rest. Group, Inc.*, No. 14 Civ. 3186 (E.D.N.Y. Mar. 28, 2017) (class action settlement approved on behalf over 275 assistant store managers employed at over 45 fast food restaurants in New York);

- *Rodriguez v. Joseph Eletto Transfer, Inc.*, No. 5431/2016, 2016 WL 7365683, 2016 NY Slip Op 32592(U) (Sup. Ct. Dec. 15, 2016) (class action settlement approved on behalf of approximately 80 delivery drivers);

- *Davis v. IMG Worldwide, LLC*, No. 15 Civ. 2157 (S.D.N.Y. July 27, 2016) (class action settlement preliminarily approved on behalf of approximately 85 Fashion Week workers);

- *Bijoux v. Amerigroup N.Y., LLC*, No. 14 Civ. 3891, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015) (conditionally certifying collective), *settlement approved by*, 2016 WL 2839797 (E.D.N.Y. May 12, 2016) (class action settlement approved on behalf of approximately 250 marketing representatives);

- *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95 (E.D.N.Y. 2014) (conditional certification granted), *settlement approved by*, 2015 WL 4608655 (E.D.N.Y. July

30, 2015) (class action settlement approved on behalf of approximately 2,500 assistant branch managers);

- *Sukhnandan v. Royal Health Care of Long Island*, No. 12 Civ. 4216, 2014 WL 3778173 (S.D.N.Y. July 31, 2014) (matter on behalf of more than 400 marketing representatives approved as a class and collective action settlement);

- *Morris v. Affinity Health Plan*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) (matter on behalf of approximately 1,500 marketing representatives certified as a class action and settlement approved);

- *Salomon v. Adderley Industries*, 847 F. Supp. 2d 561 (S.D.N.Y. 2012) (matter on behalf of approximately 400 cable technicians conditionally certified as a collective action);

- *Garcia v. Pancho Villa's of Huntington Village*, 678 F. Supp. 2d 89 (E.D.N.Y. 2010), *class certified b*y, 281 F.R.D. 100 (E.D.N.Y. 2011), *settlement approved b*y, 2012 WL 5305694 (E.D.N.Y. Oct. 4, 2012) (matter on behalf of kitchen and wait-staff employees of Mexican restaurants conditionally certified as a collective action, then certified as a collective and class action and settlement approved);

- *Avila v. Northport Car Wash*, 774 F. Supp. 2d 450 (E.D.N.Y. 2011) (Tomlinson, Mag.) (matter on behalf of car wash laborers conditionally certified as a collective action);

- *Moore v. Eagle Sanitation*, 276 F.R.D. 54 (E.D.N.Y. 2011) (Tomlinson, Mag.) (matter on behalf of sanitation truck drivers conditionally certified as a collective action);

- *Cruz v. Lyn-Rog*, 754 F. Supp. 2d 521 (E.D.N.Y. 2010) (Tomlinson, Mag.) (matter on behalf of car wash laborers conditionally certified as a collective action);

- *Pineda v. Jim-Mar Consultants*, 741 F. Supp. 2d 398 (E.D.N.Y. 2010) (Tomlinson, Mag.) (matter on behalf of laborers in a granite and marble yard conditionally certified as a collective action), *modified*, 741 F. Supp. 2d 403;

- *Reyes v. Ted McCarthy Construction Design & Maintenance*, No. 10 Civ. 2378, 2010 WL 5508685 (E.D.N.Y. Dec. 8, 2010) (matter on behalf of landscaping and masonry laborers conditionally certified as a collective action); and

- *Cano v. Four M. Food*, No. 08 Civ. 3005, 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009) (matter on behalf of grocery store workers conditionally certified as a collective action).

58.     I am a member of the Executive Board for the Federal Bar Association, Eastern District of New York Chapter.

13

59.     I also serve on the National Employment Lawyer's Association, New York affiliate's ("NELA/NY") Conference Committee, and in that role, I am one of the members responsible for organizing the semi-annual continuing legal education seminars.  In my most recent speaking engagement at NELA/NY, I moderated a panel which discussed strategies for pursuing off-the-clock cases.

60.     I a member of the Advisory Board of the Center for Labor and Employment Law at New York University School of Law.

61.     I am former co-chair of the Suffolk County Bar Association's Labor & Employment Committee.  I have spoken frequently on wage and hour issues before bar associations in both Nassau and Suffolk Counties.  The topics have included: the workplace rights of undocumented workers; recent developments in wage and hour litigation; and the white-collar exemptions to the FLSA.  My most recent speaking engagement at the Suffolk County Bar Association consisted of a presentation on the topic of independent contractor misclassification.

62.     Other recent speaking engagements have included the following:

- June 15, 2016, I was a trainer at "FLSA Mediation Training" which was conducted in conjunction with the Eastern District of New York, the Federal Bar Association and Cornell University's ILR Labor and Employment Program.  As part of the all-day training session, I presented on the topic of representing workers covered by the Hospitality Wage Order, and on the topic of Top 10 FLSA Takeaways.

- June 23, 2016, I presented at the NELA conference in Los Angeles, California, on the topic of issue spotting wage-and-hour violations.  As part of the presentation, I discussed wage-and-hour issues affecting the hospitality industry.

- September 28, 2016, I was a trainer at "FLSA Mediation Training" which was conducted in conjunction with the Eastern District of New York, the Federal Bar Association.  As part of the all-day training session, I presented on the topic of representing workers covered by the Hospitality Wage Order, and Calculating Damages in Wage and Hour Litigation.

- November 10, 2016, I presented at the American Bar Association's Labor and Employment Conference in Chicago, Illinois, on the topic of pursuing and negotiating class action settlements.

- March 8, 2017, I spoke at the Twentieth Annual NYU Employment Law Workshop for Federal Judges, held at New York University School of Law. The Workshop is organized in conjunction with the Federal Judicial Center. My panel addressed employment arbitrations.

- September 28, 2017, I was a panelist at the United States Department of Labor's in-house training.  I presented on the "Strategies for Asserting Individual Liability for FLSA Violations."

- October 11, 2017, I was a trainer at "Mediation Advocacy Training" which was conducted in conjunction with the Eastern District of New York, the Federal Bar Association and Cornell University's ILR Labor and Employment Program.  As part of the training program, I provided the case law update.

- March 21, 2018, I presented at the Twenty-First Annual NYU Employment Law Workshop for Federal Judges, held at New York University School of Law. The Workshop is organized in conjunction with the Federal Judicial Center. My panel addressed remedies in employment litigation, including an in-depth discussion of the Restatement of the Law, Employment Law (3d).

- April 18, 2018, for the third consecutive year, I presented at the Federal Bar Association, Eastern District of New York Chapter's "Fair Labor Standards Act Update," on the topic of settlement issues in wage-and-hour litigation in the wake of the Second Circuit's decision in *Cheeks v. Freeport Pancake House*.

- June 8, 2018, I presented at the Seventy-First Annual NYU Conference on Labor, on the topic of best practices for ethical witness interactions.

- November 8, 2018, I presented at the American Bar Association's Labor and Employment Conference in San Francisco, California, on the topic of best practices for issuing class notices.

- February 16, 2019, I presented on a panel entitled "Current state of wage and hour arbitrations in the wake of the U.S. Supreme Court's decision in Epic Systems Corp. v. Lewis," at the American Bar Association's Labor and Employment Law Committee midwinter meeting.

- March 22, 2019, I presented on remedies in employment litigation, at the Twenty-Second Annual NYU Employment Law Workshop for Federal Judges at New York University School of Law.

- September 16, 2019, I served as a trial practice instructor at an all-day CLE event for counsel in the U.S. Department of Labor's New York Regional Solicitor's Office.

- November 8, 2019, I presented at the American Bar Association's Labor and Employment Conference in New Orleans, Louisiana, on the topic of best practices for class discovery in wage and hour litigation.

- March 11, 2020, I presented on remedies in employment litigation, at the Twenty-Third Annual NYU Employment Law Workshop for Federal Judges at New York University School of Law.

63. For the past four years, I have been a contributing author for the American Bar Association's FLSA Midwinter Report. The Midwinter Report serves as the annual supplement to the Ellen C. Kearns *et al*. eds., FAIR LABOR STANDARDS ACT (2d. ed. 2010).

***Garrett Kaske***

64. Mr. Kaske received a Juris Doctor degree from the City University of New York School of Law in 2013. He was admitted to the bar of the State of New York in May 2014 and subsequently to the United States District Courts for the Southern and Eastern Districts of New York. He is a member of good standing in each of these bars.

65. Starting in April 1, 2014, Mr. Kaske has been an associate at SK and now KM. Since he was admitted to the New York State bar in May 2014, he has represented employees in and participated in the prosecution of a variety of employment-related disputes involving individual claims of discrimination and harassment, and individual, collective, and class claims of wage-and-hour violations.

66.      *Pierre, Vecchione, Brackley*, *Cruz*, *Davis*, and *Robinson*, are examples of recent class and collective action cases in which Mr. Kaske has been the associate primarily responsible for the prosecution of the Plaintiff's claims.

67.      By way of example, Mr. Kaske has also been primarily responsible for the following individual and collective action wage-and-hour cases:

- *Rivera v. Titan Fire Sprinkler Inc.* No. 18 Civ. 4084 (E.D.N.Y. July 29, 2019) (settlement involving overtime claims of steamfitters approved);

- *Miuzzo v. Residential Fences Corp.*, No. 18 Civ. 2901 (E.D.N.Y. June 11, 2019) (settlement involving overtime claims of laborers approved);

- *Morales v. Danbury Pharma, LLC*, No. 16 Civ. 634 (E.D.N.Y. Feb. 22, 2018) (settlement involving overtime claims of warehouse worker approved);

- *Estime v. Collazo Assocs., Inc.*, No. 16 Civ. 6205 (E.D.N.Y. June 29, 2017) (settlement in minimum wage and overtime lawsuit on behalf of street sweeper approved);

- *Useda v. Pinta Inc.*, No. 16 Civ. 4305 (E.D.N.Y. Mar. 28, 2017) (settlement of overtime lawsuit on behalf of a kitchen worker approved);

- *Castagna v. Hampton Creek, Inc.*, No. 16 Civ. 760 (E.D.N.Y Jan. 23, 2017) (FLSA settlement of 10 purported independent contractors approved);

- *Batres v. Valente Landscaping, Inc.*, No. 14 Civ. 1434 (E.D.N.Y. Sept. 19, 2016) (collective action settlement of seven landscapers approved); and

- *Garcia v. Sidco Food Distrib. Corp.*, No. 14 Civ. 9449 (S.D.N.Y. Dec. 16, 2015) (wage-and-hour settlement involving two collectors at food distributor approved).

68.      Before joining KM, Mr. Kaske held several positions involving workers' rights and wage-and-hour law.  From November 2014 through March 2015, he clerked for the employee-side labor and employment firm Gladstein, Reif & Meginniss LLP, where he primarily worked on a wage-and-hour class and collective action known as *Perez v. City of New York*, No. 12 Civ. 4914 (S.D.N.Y.).  While attending the City University of New York School of Law, Mr. Kaske represented employees through the school's Community Economic Development Clinic, including

in a wage-and-hour case styled as *Sanchez v. La Fogata Restaurant & Cafe Corp.*, No. 12 Civ. 5690 (E.D.N.Y.). He also competed in the American Bar Association Labor and Employment Law Section's ("ABA LES") annual trial advocacy competition. During his law school summers, Mr. Kaske worked on wage-and-hour policy at the Progressive States Network and on the barriers to employment facing individuals with criminal convictions at the Community Service Society. He was also a law clerk for the employee-rights law firm Outten & Golden, LLP ("O&G") from December 2012 through April 2013.

69. Prior to law school, from November 2007 through August 2010, Mr. Kaske was employed at O&G as a litigation paralegal, first on a part-time basis, from November 2007 through approximately June 2008, and then as a full-time paralegal. At O&G, he worked primarily on class and collective actions involving wage-and-hour violations. For instance, throughout the spring and early summer of 2009, Mr, Kaske supervised teams of paralegals reviewing deposition testimony, interviewing class members, compiling discovery responses, and reviewing time and payroll data in preparation of summary judgement motions and trial. *See Torres v. Gristede's Oper. Corp.*, No. 04 Civ. 3316, 2012 WL 3878144, at \*4 (S.D.N.Y. Aug. 6, 2012) (awarding O&G $164,175 for 1,313.4 billable hours of Mr. Kaske's time, at $125 an hour, as a paralegal), *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (summary order). *See also Rozell v. Ross–Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y.2008) (awarding O&G $125 an hour for Mr. Kaske's time as a part-time paralegal in a sexual harassment and retaliation case).

70. Mr. Kaske engages in the employment-law bar as a member of the Labor and Employment Committee of the National Lawyers Guild – New York City Chapter ("L&EC"), National Employment Lawyers Association ("NELA"), and NELA/NY, and as a presenter at CLEs.

71.     Mr. Kaske has been a co-chair of the L&EC since the spring of 2014 and a member since approximately December 2011.  As part of his contributions to the L&EC, Mr. Kaske has organized continuing legal education seminars on labor and employment law, including:

- On Offense: Tactics for Worker Justice (Nov. 13, 2012) – A seminar on identifying wage-and-hour violations and litigating wage-and-hour cases during worker-organizing drives.

- Food Fight:  Lawyering and Organizing in the Fast Food Showdown (Oct. 31, 2013) – A seminar regarding the fast-food workers movement, including the common wage-and-hour violations in the fast-food industry and whether franchisors are jointly and severally liable for wage-and-hour violations of their franchisees.

- Bankrupting Democracy:  Constitutional Rights, Civil Rights, and Labor Rights under Siege in Detroit (Jan. 23, 2014) – A seminar looking at Detroit's municipal bankruptcy, the emergency manager, and pending litigation impacting Detroit workers' pensions and voting rights.

- Schooling the University:  Winning Workplace Justice for Campus Workers (Apr. 10, 2015) – A seminar on the worker-organizing campaigns on college campuses and the wage-and-hour litigation surrounding interns.

- First Experiences with the New NLRB Election Rules (Dec. 2015) – A seminar including an overview of the changed to the union election rules, a statistical analysis of the impact of the changes, and reflections on personal experiences navigating the new rules.

- Leading the Way: New York Enacts Legal Protections for Farmworkers and Families (Dec. 2019) – A panel discussion on New York's increased legal protections for farmworkers and workers needing family leave.

72.     As a member of NELA, Mr. Kaske led the New York contingent at NELA's Lobby Day in the spring of 2015, in advance of NELA's 2015 convention in Washington, D.C.

73.     His speaking engagements include the following:

- On September 18, 2015, Mr, Kaske spoke on labor and employment issues at the Labor Employment Committee of the Suffolk County Bar Association's Law in the Workplace Conference.  Mr. Kaske presented on employee handbooks that run afoul of the National Labor Relations Act, including arbitration clauses used to quell wage-and-hour class and collective actions.

- On March 11, 2016, Mr. Kaske spoke on a panel entitled "Strategies & Consideration for Arbitration of Employment Disputes" at the New Your City Bar Association's Employment Law Institute. His presentation and the materials he prepared for the CLE focused on strategies for Plaintiff's attorneys facing compelled arbitration of employment matters, including class and collective actions. The materials are available on Westlaw using the following identifier: 20160311A NYCBAR 618.

- On June 9, 2017, Mr. Kaske presented on an ethics panel at the NYU 70th Annual Conference on Labor. Mr. Kaske's discussion focused on ethically communicating with low-wage workers in employment class actions.

- On March 22, 2018, Mr. Kaske presented on a panel put on by the Low Wage Worker Task Force discussing representing undocumented and immigrant workers since the inauguration of President Donald J. Trump. Mr. Kaske's presentation and materials focused on the discoverability of immigration status in wage-and-hour and discrimination lawsuits.

- On May, 11, 2018, Mr. Kaske moderated a panel at NELA/NY's semi-annual conference, which discussed New York Labor Law alternatives to the FLSA.

- On April 24, 2020, Mr. Kaske presented on a webinar for out-of-work musicians. Mr. Kaske discussed typical employment issues facing musicians and new laws protecting these workers, including employee misclassification, the Freelance Isn't Free Act, the expansion of the New York City Human Rights Law, and common wage-theft schemes.

74.     In November 2016, 2017, and 2019, Mr. Kaske volunteered as a "juror" for the ABA LES's annual trial advocacy competition held at the Southern District of New York courthouse. As a juror, Mr. Kaske observed mock employment discrimination trials and evaluated and critiqued the law-student competitors.

75.     Mr. Kaske also volunteers his time to support workers' rights organizations in and out of the office. For example, he raises money for Brandworkers – a non-profit organization that supports food-production workers organizing towards dignified jobs – serving on the host committee of Brandworkers' annual awards dinner. He also co-counseled an unpaid wages case with Make the Road New York – a non-profit organization that supports Latino and working-class communities to achieve dignity and justice – on behalf of a delivery worker, which our firm elected

to handle *pro bono*.  *See Rojas v. Exquisito Rest. Inc.*, No. 18 Civ. 4840 (E.D.N.Y. Sept. 6, 2019) (finding settlement fair and reasonable).

**Kessler Matura P.C.**

76.     In *Rodriguez v. Joseph Eletto Transfer, Inc.*, the Honorable Jefferey S. Brown, J.S.C., approved a class action settlement finding that Plaintiff's Counsel has "significant experience prosecuting employment class actions and their work performed in representing the interests of the class members."  2016 NY Slip Op 32592(U), at *3 (Sup. Ct. Dec. 15, 2016).

77.     In *Garcia v. Pancho Villa's of Huntington Village*, the Hon. E. Thomas Boyle, U.S.M.J., certified the matter as a class action stating that KM's attorneys "are experienced labor and employment litigators, who have successfully represented employees in numerous collective and class action lawsuits."  281 F.R.D. 100, 107 (E.D.N.Y. 2011).

78.     As outlined in, for example, *Robinson*, *Rodriguez*, *Bijoux*, *Puglisi*, *Garcia*, *Morris* and *Sukhnandan*, courts have repeatedly found that my firm and I have served as adequate counsel in collective and class actions.  *See Rodriguez*, 2016 NY Slip Op 32592(U), at *3; *Bijoux*, 2016 WL 2839797, at *1; *Puglisi*, 2015 WL 4608655, at *1; *Garcia*, 2012 WL 5305694, at *7; *Morris*, 859 F. Supp. 2d at 616, 622; *Sukhnandan*, 2014 WL 3778173, at *8 ("The work [SK] has performed in litigating and settling the [class action] demonstrates their commitment to the class.").

79.     In *Morris v. Affinity Health Plan*, the Hon. Andrew L. Carter, Jr., U.S.D.J., certified a class action and approved a class action settlement stating that Plaintiff's Counsel has "substantial experience prosecuting and settling wage and hour actions, are well-versed in wage and hour and class action law, have been class or lead counsel in numerous wage and hour class and collective actions."  859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012).  Moreover, Judge Carter

determined that our firm is "experienced employment lawyers with good reputations among the employment law bar . . . [and] substantial experience prosecuting large-scale wage and hour class and collective actions." *Id*. at 622.

**KM's Paralegals and Legal Assistants**

80.     Madelyn Howarth has been employed as a bilingual (English and Spanish) paralegal at KM since November 2015.  Ms. Howarth has been employed by numerous law firms as a paralegal since approximately 1994.  Most recently, she was employed by Douglas M. Reda, Esq., from approximately 2005 through 2015.  Kristine Jimenez is also a bilingual (English and Spanish) paralegal.  Ms. Jimenez started with KM in May 2018.  In this role she regularly interviews potential and existing clients, translates for our English-speaking attorneys, and handles administrative matters at the firm.   Previously, Ms. Jimenez was employed by law firms as a paralegal since approximately March 2014.  Most recently, she was employed by Donald Leo & Associates from approximately September 2017 through April 2018.  Grismaldy Rosario is as a bilingual (English and Spanish) legal assistant at KM.  Ms. Rosario began in September 2015.  In this role she regularly interviews potential and existing clients, translates for our English-speaking attorneys, and handles administrative matters at the firm.  Evelyn Hernandez was employed by KM for over one year, also as a bilingual (English and Spanish) legal assistant and had the same duties as Ms. Rosario.

## Attorneys' Fees and Costs

81.     Plaintiffs' Counsel has significant experience prosecuting wage-and-hour matters on behalf of individuals and classes, and that experience was directly responsible for bringing about the positive settlement and weighs in favor of approval of that portion of the Settlement that represents attorney's fees.  *See supra* ¶¶ 54-80; Ex. 2 (Shavitz Decl.) ¶¶ 4-14, 16.

82.     As of May 10, 2020, Plaintiffs' Counsel has spent over 749.7 hours litigating and settling this case, including 335.7 by KM and 414 by SLG.  These hours were compiled from contemporaneous time records maintained by each attorney participating in the case.  Plaintiffs' Counsel's contemporaneous time records are attached as Exhibit 4, for KM, and part of Exhibit 2 (Shavitz Ex. A), for SLG.

83.     KM is a relatively small firm consisting of five attorneys, and three support staff members, including part-time staff.  As such, we have made every effort to use our resources wisely, including in allocating work to be performed by an attorney with the lowest hourly rate who was able to effectively perform it.  Accordingly, we have used billing judgment in compiling our contemporaneous time records and calculating our total lodestar.

84.     For instance, KM has excluded much of the time Mr. Kaske and I spent performing administrative tasks, such as e-filing, copying, scanning, or preparing hard-copy materials, which could have been performed by support staff at a lesser hourly rate.

85.     As of May 10, 2020, Plaintiffs' Counsel's total lodestar, exclusive of costs, was $304,630.00.  *See* Ex. 3 (Summary); Ex. 2 (Shavitz Decl.) ¶ 17.

86.     Through this motion, Plaintiffs' Counsel seeks the reimbursement of $21,365.82 in litigation costs, which is less than the $23,509.36 in actual litigation costs and expenses accrued through May 10, 2020.  *See* Ex. 3 (Summary); Ex. 5 (Costs); Ex. 2 (Shavitz Decl.) ¶ 22.

87.     In our experience, law firms in New York City and Long Island representing plaintiffs in wage-and-hour litigation typically charge their clients at least one-third of their gross recoveries when representing them on a contingent basis.  *See Savino v. Visiting Nurse Serv. of New York*, No. 15 Civ. 9451, 2017 WL 2473214, at *3 (S.D.N.Y. June 7, 2017) ("Contingency fees of one-third in [unpaid wages] cases are routinely approved in this circuit."  (collecting

cases)); *Varela v Bldg. Serv. Indus., LLC*, No. 600037/2016, 2018 N.Y. Slip Op. 35514(U), at *3 (Sup. Ct. June 25, 2018) (collecting cases) ("An award of one third of the common fund created by the class litigation is within the range of reasonableness previously approved in similar cases when considered in light of the risks undertaken with contingency fee cases and the work performed on behalf of the class." (collecting cases)); *Wu v. Maxphoto NY Corp.*, No. 15 Civ. 3050, 2016 WL 7131937, at *3 (E.D.N.Y. Nov. 15, 2016)  (approving attorney's fees equal to 40% of the settlement; noting that attorney's fees equal to one-third of the gross settlement are "reasonable and consistent" with local norms).

88.     KM undertook to prosecute this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of significant risk.  Wage-and-hour cases of this type are, by their very nature, complicated and time-consuming.  KM frequently undertakes representation of large numbers of affected employees in wage-and-hour actions. Although this typically requires a tremendous investment of time, energy and resources, these cases help push the law in a direction favorable to employees.  This case was no exception.  Due also to the contingent nature our fee arrangement in this case, KM was prepared to and did make a substantial investment of time and resources with the very real possibility of an unsuccessful outcome – whether as a result of class and collective decertification or adjudication on the merits – and no fee of any kind – resulting in an expensive loss.

89.     Although much of KM's work is on a contingent or hybrid fee arrangement, SK has hourly clients.  For ordinarily and regularly bills clients at rates ranging from $400 to $475 per partner's hour, $300 to $375 per associate's hour, and $75 to $100 per hour for support staff.

90.     With regards to contingency fee cases, for purposes of the crosscheck, courts in the Southern and Eastern District have approved wage-and-hour settlements in which KM's attorneys

submitted lodestar calculations using rates similar to those included here. For instance, in approving a FLSA settlement this Court held that KM's attorneys' "hourly rates . . . fall within the range of reasonable rates within the Eastern District of New York." *Nunes v. Rob-Glen Enters., Inc.*, No. 16 Civ. 6207, 2018 WL 3351798, at *2 (E.D.N.Y. July 5, 2018).[2] Other examples include the following:

    a. *Capilupi*, 2018 WL 4693588 (approving class action settlement and approving fees of KM's attorneys and SLG);

    b. *Oakley*, No. 13 Civ. 4191 (E.D.N.Y. Aug. 5, 2018) (docket entry order) (approving collective action settlement and approving fees of KM's attorneys and SLG);

    c. *Klein*, ECF No. 75, at *6 (Bianco, J.) (same for KM's attorneys).[3]

91.    Pursuant to the one-third contingency retainer agreements between Plaintiffs' Counsel and Plaintiffs, Plaintiffs' Counsel has worked without compensation of any kind to date because the fee has been wholly contingent upon the result achieved.

92.    Plaintiffs' Counsel will continue to invest significant time on this case, including seeking approval of this settlement and overseeing its administration

**Documents**

93.    Annexed as **Exhibit 1** is a true and correct copy of the Joint Stipulation of Settlement and Release, dated May 11, 2020.

---

[2]    *See* Summary of Attorneys' Fees, *Nunes v. Rob-Glen Enters., Inc.*, No. 16 Civ. 6207, ECF No. 41-3 (E.D.N.Y. June 5, 2018) (calculating lodestar using the following rates for KM's attorneys: $450 for partner, Troy Kessler, $375 for partner, Marijana Matura, $250 for associate, Tana Forrester, and rates of $100 and $75 for paralegals).

[3]    *See* Attorneys' Fees & Costs Summary, *Capilupi v. People's United Fin., Inc.*, No. 15 Civ. 5247, ECF No. 67 (E.D.N.Y. Jan. 22, 2018) (calculating lodestar using the following rates for SK attorneys: $450 for partner, Troy Kessler, and $300 for associate, Garrett Kaske); Attorneys' Fees & Costs Summary, *Oakley v. Servisair, LLC*, No. 13 Civ. 4191, ECF No. 330-8 (E.D.N.Y. May 18, 2018) (same); Attorneys' Fees & Costs Summary, *Klein v. Weatherproofing Techs. Inc.*, No. 15 Civ. 4443, ECF No. 69-1 (E.D.N.Y. Feb. 2, 2018) (same).

94.     Annexed as **Exhibit 2** is a true and correct copy of the Declaration of Gregg I. Shavitz in Support of Plaintiffs' Motion for FLSA Settlement Approval.

95.     Annexed as **Exhibit 3** is a true and correct copy of the Attorneys' Fees and Costs Summary of Plaintiffs' Counsel.

96.     Annexed as **Exhibit 4** is a true and correct copy of KM's Time Records.

97.     Annexed as **Exhibit** 5 is a true and correct copy of Plaintiffs' Counsel's Costs and Expenses.

98.     Annexed as **Exhibit 6** is a true and correct copy of the Stipulation and [Proposed] Order of Dismissal.

Dated:  Melville, New York
        May 11, 2020

Respectfully submitted,

/s/ Troy L. Kessler
Troy L. Kessler

**KESSLER MATURA P.C.**
Troy L. Kessler
Garrett Kaske
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100
tkessler@kesslermatura.com
gkaske@kesslermatura.com

*Attorneys for Plaintiff and the FLSA Collective*