# **Exhibit 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMANDA MEO, on behalf of herself and all others similarly situated,<br><br>                                    Plaintiff,<br><br>        v.<br><br>LANE BRYANT, INC.,<br><br>                                    Defendant. | Case No. 2:18-cv-6360 (AKT) |

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Amanda Meo (the "Named Plaintiff"), individually and on behalf of all others similarly situated (collectively with Named Plaintiff, "Plaintiffs"), in the matter *Meo v. Lane Bryant, Inc.*, 2:18-cv-06360-JMA-AKT (E.D.N.Y.), and Defendant Lane Bryant, Inc. ("Defendant") (together with Plaintiffs, the "Parties").

## RECITALS

**WHEREAS**, the Named Plaintiff has filed a Collective and Class Action Complaint asserting claims against Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 and the New York Labor Law, Article 6, §§ 190 *et seq*., for the alleged failure to pay overtime compensation to Plaintiffs for all hours worked over 40 per workweek (the "Litigation");

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all claims asserted in the Litigation and those claims that could have been asserted, relating to the non-payment or underpayment of overtime compensation to individuals employed in the position of hourly Store Manager for Defendant during the Relevant Period, as defined herein.

**WHEREAS**, Defendant denies all of the allegations made by Named Plaintiff in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

**WHEREAS**, the Parties agreed to explore settlement, through an informal data exchange, negotiations, and mediation;

**WHEREAS**, on February 25, 2020, the Parties participated in a mediation session in New York, New York, conducted by experienced mediator Stephen Sonnenberg, at which the Parties reached an accord resulting in this Agreement; and

**WHEREAS**, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendant in the Litigation, conducted interviews with Named Plaintiff, California Opt-In Plaintiffs, Non-California Opt-In Plaintiffs, and others, served and responded to discovery requests, obtained and reviewed documents relating to Defendant's compensation, operations, merchandising, and workplace policies and practices, and analyzed payroll data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiffs,

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions.

## 1.   DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1**   "Agreement" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

**1.2**   "Approval Order" means an order signed and entered by the Court, which approves to this Agreement and dismisses the Litigation, in a form substantially similar to the Stipulation and Proposed Order of Dismissal, attached as Exhibit A.

**1.3**   "California Opt-In Plaintiffs" means Opt-In Plaintiffs Annette Solano, Sheena Clark and Michelle Riley.

**1.4**   "California Opt-In Period" means the following periods for the California Opt-In Plaintiffs:

| California Opt-in | Period |
|---|---|
| Sheena Clark | November 14, 2015 to March 31, 2020 |
| Michelle Riley | February 20, 2016 to March 31, 2020 |
| Annette Solano | April 26, 2016 to March 31, 2020 |

**1.1**   "Certified Collective Period" means the period between November 8, 2015 and February 25, 2020.

1.2     "Check Cashing Period" means the time that Eligible Collective Members have to negotiate their Settlement Checks. This period starts on the day the Settlement Administrator issues the Settlement Checks and runs for 120 days, except that the period shall be extended for Eligible Collective Members who report to the Settlement Administrator during that 120 period that their checks were lost, destroyed, or never received, in which case such individuals will have until the later of 120 days from the date of initial issuance of the Settlement Checks or 30 days from the date of reissuance to negotiate their Settlement Checks. [1]

1.3     "Claim Forms" shall mean the claim form included in the Settlement Notice, as defined below, for Eligible Collective Members to opt-in to the litigation. A copy of the Settlement Notice is attached as part of Exhibit B.

1.4     "Claim Period" shall mean: (i) the 60-day period beginning when the Settlement Administrator first mails a Settlement Notice and Claim Form to Eligible Collective Members; or (ii) for individuals receiving a re-mailing, the longer of the 60-day period or 30 days from the Settlement Administrator's last re-mailing, but not to exceed 75 days from the initial mailing.

1.5     "Class List" means a manipulable-electronic list (e.g., in Excel format) of all Eligible Collective Members' names, Last Known Addresses, social security numbers, and the dates of employment as Store Managers during the Relevant Period.

1.6     "Complaint" means the Collective and Class Action Complaint, dated, November 8, 2018.

1.7     "Court" means the United States District Court for the Eastern District of New York.

1.8     "Defendant" means Lane Bryant, Inc.

1.9     "Defendant's Counsel" means Morgan, Lewis & Bockius LLP.

1.10     "Effective Date" means the date on which this Agreement becomes effective, which shall mean the later of (i) 35 days following the Court's issuance of the Approval Order, if no appeal is taken of such Order, or (ii) the Court's entry of a final order and judgment after any appeals are resolved.

1.11     "Eligible Collective Member" means Named Plaintiff, California Opt-In Plaintiffs, Non-California Opt-In Plaintiffs, and any and all current and former employees employed by Defendant in the position of Store Manager, as defined below. Excluded from the definition of "Eligible Collective Members" are Store Managers who worked exclusively in California stores during the Relevant Period, except for the California Opt-In Plaintiffs.

---

[1]     All time periods are stated in calendar days, not business days unless specified otherwise.

**1.12** "Eligible Workweeks" are workweeks in which a Collective Member worked as an hourly Store Manager and recorded more than 38 hours worked during the Relevant Period.

**1.13** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation, including FICA, FUTA, and SUTA obligations. The Employer Payroll Taxes shall be paid by Defendant in addition to the Gross Settlement Fund.

**1.14** "Gross Settlement Amount" means One Million Three Hundred Ninety-Five Thousand Dollars and Zero Cents ($1,395,000.00), which is the amount that Defendant has agreed to pay to fully resolve and settle this Litigation.

**1.15** "Last Known Address" means the most recently recorded personal mailing address for an Eligible Collective Member as shown in Defendant's records.

**1.16** "Litigation" means the lawsuit entitled *Meo v. Lane Bryant, Inc.*, United States District Court for the Eastern District of New York, 2:18-cv-06360-JMA-AKT.

**1.17** "Named Plaintiff" means Amanda Meo.

**1.18** "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions/payments for Court-approved: (i) Settlement Administration fees and costs; (ii) Plaintiffs' Counsel's attorneys' fees and costs; and (iii) Service Awards to Named Plaintiff and the Opt-In Plaintiffs.

**1.19** "Non-California Opt-In Plaintiffs" means the following individuals who worked outside of California and joined this Litigation by filing consent to join forms with the Court: Portia Witten, Jennifer Seymour, Joyce Hamilton, Ivory Davis, MonicaJo Marchand, Allison Smith, Kelsi Gonzalez, Diana Koehler, Debra Devlin, Susan McCreery, Tammy Desue-Parker, and Raeschelle Coleman.

**1.20** "Non-California Opt-In Period" means the following periods for the Non-California Opt-In Plaintiffs:

| Opt-In Plaintiff | Period |
|---|---|
| Ivory Davis | November 14, 2015 to March 31, 2020 |
| Tammy DeSue-Parker | November 1, 2014 to March 31, 2020 |
| Debra Devlin | November 14, 2015 to March 31, 2020 |
| MonicaJo Marchand | November 14, 2015 to March 31, 2020 |
| Susan McCreery | November 14, 2015 to March 31, 2020 |
| Jennifer Seymour | November 14, 2015 to March 31, 2020 |
| Allison Smith | November 1, 2014 to March 31, 2020 |
| Diana Koehler | November 1, 2014 to March 31, 2020 |
| Portia Witten | December 20, 2015 to March 31, 2020 |
| Raeschelle Coleman | December 20, 2015 to March 31, 2020 |
| Kelsi Gonzalez | February 19, 2016 to March 31, 2020 |

**1.21** "Non-Opt-In Eligible Collective Members" means Eligible Collective Members other than Named Plaintiff, the Non-California Opt-In Plaintiffs, and California Opt-In Plaintiffs.

**1.22** "Non-Opt-In Eligible Collective Member Period" means the period between February 25, 2017 and February 25, 2020.

**1.23** "Participating Collective Member" means each Eligible Collective Member who timely executes and returns a Claim Form or negotiates a Settlement Check.  Named Plaintiff and all Opt-In Plaintiffs who submitted consent to join forms in the Litigation shall be considered Participating Collective Members regardless of whether they return a timely executed Claim Form.

**1.24** "Parties" collectively means the Named Plaintiff and Defendant.

**1.25** "Plaintiffs" means Named Plaintiff, California Opt-In Plaintiffs, Non-California Opt-In Plaintiffs and the collective of individuals that they seek to represent.

**1.26** "Plaintiffs' Counsel" means Shavitz Law Group, P.A. and Kessler Matura P.C.

**1.27** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Administrator from the Gross Settlement Amount paid by Defendant.  The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's order(s).  Interest, if any, earned on any monies in the QSF will become part of the Net Settlement Fund.

**1.28** "Releasees" means Defendant and its officers, directors, employees, agents, insurers, successors, predecessors, affiliates, parents, subsidiaries, attorneys, and other related entities.

**1.29** "Relevant Period" means the following periods for each of the following groups:

| Group | Period |
|---|---|
| Named Plaintiff and Eligible Collective Members who worked in New York, Illinois, Iowa, Tennessee, Nevada, Connecticut, Ohio, Idaho, Kansas, Rhode Island, or Pennsylvania | Certified Collective Period |
| California Opt-In Plaintiffs | California Opt-In Period |
| Non-California Opt-In Plaintiffs | Non-California Opt-In Plaintiff Period |
| Non-Opt-In Eligible Collective Members who worked in states other than Illinois, Iowa, Tennessee, Nevada, Connecticut, Ohio, Idaho, Kansas, Rhode Island, Pennsylvania, New York or California | Non-Opt-In Eligible Collective Member Period |

**1.30** "Settlement" means the settlement between the Parties embodied and contained in this Agreement.

**1.31** "Settlement Administrator" means the Settlement Administrator to be selected by Plaintiffs and approved by Defendant.

**1.32** "Settlement Amount" or "Settlement Amounts" means each Eligible Collective Member's proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

**1.33** "Settlement Check" means the check issued to each Eligible Collective Member for his or her proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

**1.34** "Settlement Notice" means the document entitled Notice of Settlement and Opportunity to Join Collective Action and Claim Form, to be approved by the Court in a form substantially similar to Exhibit B.

**1.35** "Store Manager" means any employee of Defendant who held the position of, and worked as, an hourly Store Manager at any time during the Relevant Period.

## 2. APPROVAL AND NOTICE TO ELIGIBLE COLLECTIVE MEMBERS

**2.1** This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**2.2** The Settlement Administrator will be responsible for establishing a QSF account; preparing and mailing the Settlement Notice and mailing the reminder postcards to Eligible Collective Members; preparing and mailing Settlement Checks; distributing approved Service Awards and Plaintiffs' Counsel's attorneys' fees and expenses; calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; preparing and maintaining an email address, fax number, and web-portal for claims submissions; retaining and providing a copy of Settlement Checks and redacted Claim Forms signed by the Participating Collective Members to Defendant's Counsel, and a copy of Claim Forms signed by Participating Collective Members to Plaintiffs' Counsel. Disputed claims will be resolved by the Settlement Administrator.

**2.3** The Parties will have equal access to the Settlement Administrator and all information related to the administration of the Settlement. The Settlement Administrator shall provide such information to either Party upon request. The Settlement Administrator will provide regular reports to counsel for the Parties regarding the status of the mailing of the Settlement Notice and Claim Form, the claims administration process, and distribution of the Settlement Checks.

**2.4** Defendant agrees to cooperate with the Settlement Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Amounts, and assist the Settlement Administrator in locating Eligible Collective Members. Defendant's records shall be presumed accurate.

DocuSign Envelope ID: B4A6539C-58C9-4975-9AE9-46FD3201CF22

2.5    The Plaintiffs shall use their best efforts to file a Motion for Order Approving Settlement of Collective and Class Action and Authorizing Notice of Settlement and Opportunity to Join Collective Action ("Approval Motion"), on or before May 11, 2020. Plaintiffs' Counsel will provide Defendant's Counsel with a draft of the Approval Motion for review and comment at least seven business days prior to filing it with the Court, and Defendant's Counsel will provide Plaintiffs' Counsel with their comments within five business days of receiving the draft Approval Motion. With the Approval Motion, Plaintiffs' Counsel also will file the Agreement, proposed Approval Order, Settlement Notice, Claim Form, template envelope to accompany the Settlement Notice (attached as Exhibit C), and the proposed reminder postcard (attached as Exhibit D). Among other things, the Approval Motion will ask the Court to: (i) issue and enter the Approval Order approving the Settlement as fair, adequate, and reasonable, (ii) approve the proposed Settlement Notice to be sent to Eligible Collective Members and the Settlement Notice distribution process, (iii) incorporate the terms of this Settlement, and (iv) enter Judgment dismissing the case without prejudice, which will become dismissal with prejudice 60 days thereafter provided the payments required under Section 3 of the Agreement have been made, with each party to bear his or its own attorneys' fees and costs except as otherwise agreed, and that during the period of time in which the dismissal is without prejudice, Plaintiffs may file a motion for leave to reinstate should Defendant fail to make payment as required under paragraph 3 of the Agreement or otherwise fail to comply, and that after the case is dismissed with prejudice, the parties agree to submit any unresolved dispute to the mediator, Stephen Sonnenberg, as an arbitrator under the JAMS Employment Arbitration Rules & Procedures, and to be bound by his decision as to such dispute, including a decision awarding attorneys' fees to the prevailing party, and (v) retain jurisdiction to enforce the Agreement.

2.6    Settlement Notices will be mailed via First Class United States Mail (with an enclosed postage paid return envelope) to Eligible Collective Members by the Settlement Administrator within 45 days of the Effective Date. The Settlement Notice will advise Eligible Collective Members of the claims asserted in the Litigation, their estimated Settlement Amounts, and of a website where they can submit their Claim Form and review additional information regarding the Settlement.

2.7    The Settlement Administrator shall take all reasonable steps to obtain the correct address for any Eligible Collective Member or Participating Collective Member for whom the Settlement Notice or Settlement Check, respectively, is returned by the post office as undeliverable, including using social security numbers to obtain better address information and emailing Eligible Collective Members or Participating Collective Members about their current addresses where email addresses have been provided, and shall attempt re-mailings. Any Settlement Notices or Settlement Checks returned as undeliverable shall be traced up to two times to obtain a new address and be re-mailed by First Class United States Mail.

2.8    The Settlement Administrator will send reminder postcards via First Class U.S. Mail halfway through the Claim Period to those Eligible Collective Members who have not returned an executed Claim Form. The Settlement Administrator will send an additional reminder postcard 45 days after the initial mailing as per this provision. In a form

substantially similar to Exhibit D, the reminder postcards will advise Eligible Collective Members of the last date on which they can timely return a Claim Form and of the website where they can submit their Claim Form and review additional information regarding the Settlement.

**2.9** The submission and processing of Claim Forms from Eligible Collective Members shall be in accordance with the following procedures.

    i.    To be timely, a Claim Form must be completed and provide the information as instructed on the Claim Form and be signed, dated and postmarked or otherwise returned (via, for example, fax, e-mail, or online submission) to the Settlement Administrator within the Claim Period. Claim Forms that are not timely returned are null and void, unless otherwise agreed to in writing by the Parties, if good cause is determined by the Settlement Administrator, or approved by the Court.

    ii.    If a Claim Form is returned to the Settlement Administrator and not properly completed as described above, within seven days of its receipt, the Settlement Administrator shall send a notice to the relevant Eligible Collective Member via First Class United States Mail and e-mail advising the Eligible Collective Member of the defects ("Cure Letter") and include a new Claim Form to be completed (with an enclosed, postage paid return envelope). The Settlement Administrator shall provide Plaintiffs' Counsel with a copy of the Cure Letter for approval prior to its issuance. The Eligible Collective Member shall then have the remainder of the Claim Period or 15 days from mailing of the Cure Letter ("Cure Period"), whichever is longer, to return the new Claim Form and provide the missing information. If a Claim Form is not received within that period, the Claim Form shall be null and void, unless otherwise agreed to in writing by the Parties, approved by the Court, or approved by the Settlement Administrator on a case-by-case basis for good cause shown.

**2.10** Plaintiffs' Counsel and Defendant's Counsel have the right to make inquiries and receive any information from the Settlement Administrator related to the claims administration process, except that Defendant's Counsel is not entitled to updated contact information located by Settlement Administrator for Eligible Collective Members or provided by Participating Collective Members, or communications sent to and from Eligible Collective Members as such communications are subject to the attorney-client privilege. Each week the Settlement Administrator will update Plaintiffs' Counsel and Defendant's Counsel regarding claim forms received, returned mailings for which it is unable to obtain corrected addresses, and other information related to the settlement.

**2.11** In the event that the Court fails to approve this Agreement, the Parties (a) must attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated settlement and agreement and/or (b) any or all Parties may seek reconsideration or appellate review of the decision denying approval of the Agreement.

In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the Litigation will proceed as if no settlement had been attempted.  In that event, nothing in the Settlement or Agreement may be used by or against any Party under Rule 408 of the Federal Rules of Evidence.

## 3.    SETTLEMENT TERMS

### 3.1    Settlement Payments

i.    Defendant agrees to provide to the Settlement Administrator the Class List and updated data concerning the workweeks of the Eligible Collective Members that will be used for determining settlement payments pursuant to Section 3.4(i) within 30 days of the Effective Date.

ii.    Defendant agrees to pay the Gross Settlement Amount, which it shall deposit into the QSF by the later of 45 days after the date of the Court's Approval Order or August 15, 2020 (the "Funding Date"). This payment shall include any and all amounts to be paid to Participating Collective Members, any Court-approved Service Awards, the Settlement Administrator's fees and costs and any claim for Plaintiffs' Counsel's fees and costs.

iii.    Within 10 days of the Funding Date, the Settlement Administrator will distribute funds from the QSF by making the following payments:

(a)    Paying Plaintiffs' Counsel's Court-approved attorneys' fees and costs as described in Section 3.2.

(b)    Paying the Court-approved Service Awards as described in Section 3.3.

(c)    Paying the costs of the Settlement Administrator as described in Section 3.1.

iv.    The Settlement Administrator will distribute the Settlement Checks to Eligible Collective Members, as described in Section 3.4, within 30 days after the close of the Claim Period or Cure Period, whichever is later.

v.    Any portion of the Net Settlement Fund that is not claimed by Eligible Collective Members or otherwise distributed or used (see Section 3.4(iii)) under this Agreement will be returned to Defendant ("Unclaimed Funds") 30 days after the close of the Check Cashing Period.

### 3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.

i.    In their Approval Motion, Plaintiffs' Counsel will ask the Court to approve payment of one-third of the Gross Settlement Amount as an

award of attorneys' fees.   In addition, Plaintiffs' Counsel shall seek reimbursement of reasonable actual case-related costs and expenses from the Gross Settlement Amount.   These amounts shall constitute full satisfaction of any claim for attorneys' fees or costs, and Plaintiffs agree that they shall not seek, nor be entitled to, any additional attorneys' fees or costs under any theory or from any source, incurred in relation to this case other than for any fees and costs incurred related to any efforts to enforce the terms of this Agreement.

ii.  The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement.   The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion.   In the event that the Court (or any appellate court) awards less than the requested amounts, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder.   Any money requested for attorneys' fees or costs that are not approved by the Court shall become part of the Net Settlement Fund.

**3.3   Service Awards to Plaintiffs.**

i.  In the Approval Motion, Plaintiffs' Counsel will apply for Service Awards, to be paid from the Gross Settlement Amount for their services rendered to the Eligible Collective Members, as follows:

(a)  $9,000:  Amanda Meo;

(b)  $2,850:  Sheena Clark, Ivory Davis, Debra Devlin, Diana Koehler, Monicajo Marchand, Susan McCreery, Jennifer Seymour, and Allison Smith; and

(c)  $2,600:  Portia Witten, Annette Solano, Joyce Hamilton, Kelsi Gonzalez, Michelle Riley, Tammy Desue-Parker, and Raeschelle Coleman.

ii.  These Service Awards and any requirements for obtaining any such payment are separate and apart from, and in addition to, Named Plaintiff's and Opt-Ins Plaintiffs' recovery from the Net Settlement Fund as an Eligible Collective Member.   The substance of the Named Plaintiff's, California Opt-In Plaintiffs' and Non-California Opt-In Plaintiffs' applications for a Service Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the Settlement and this Agreement.   The outcome of the Court's ruling on the application for a

Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. Any Service Award money not approved by the Court shall become part of the Net Settlement Fund.

**3.4    Distribution of Payments to Participating Collective Members.**

    i.    Payments to Eligible Collective Members will be made from the Net Settlement Fund. The estimated Settlement Amount for each Eligible Collective Member will be determined by the Settlement Administrator pursuant to the following formula:

    (a)    Each Eligible Collective Member shall be assigned one point for each Eligible Workweek.

    (b)    To calculate each Eligible Collective Member, Named Plaintiff, California Opt-In Plaintiff and Non-California Opt-In Plaintiff's proportionate Settlement Amount:

    1.    Add all points for all Eligible Collective Members, the Named Plaintiff, and Opt-In Plaintiff together to obtain the "Denominator";

    2.    Divide the number of points for each Eligible Collective Member, Named Plaintiff, California Opt-In Plaintiff and Non-California Opt-In Plaintiff by the Denominator to obtain the "Portion of the Net Settlement Fund" for each Eligible Collective Member and Plaintiff;

    3.    Multiply each Eligible Collective Member, Named Plaintiff, California Opt-In Plaintiff and Non-California Opt-In Plaintiff's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each the Settlement Amount for each Eligible Collective Member and Plaintiff.

    ii.    All Eligible Collective Members who complete and timely submit a Claim Form, as outlined in Section 2.10, shall be sent Settlement Checks for 100% the Settlement Amounts. All other Eligible Collective Members shall be sent Settlement Checks for 50% the Settlement Amounts.

    iii.    The Settlement Administrator's calculations regarding the Settlement Amounts from the Net Settlement Fund will be final and binding. Within five days from the close of the Claim Period or Cure Period, whichever is later, the Settlement Administrator shall calculate Defendant's share of payroll taxes for claimed settlement awards. Defendant shall make the necessary payment into the QSF within five days of receiving notice of the shortfall from the Settlement Administrator.

DocuSign Envelope ID: D4A6539C-58C9-4875-9AE9-46FD3201CE22

iv.     The Settlement Administrator shall use reasonable efforts to make an additional mailing to Eligible Collective Members, Name Plaintiff, California Opt-In Plaintiffs and Non-California Opt-In Plaintiffs whose checks are returned because of incorrect addresses.  Such efforts shall include: (a) obtaining correct addresses as described in Section 2.8; (b) using social security numbers to obtain better address information; and/or (c) attempting to reach these individuals by phone and/or e-mail.

v.      Eligible Collective Members will have the duration of the 120-day Check Cashing Period to negotiate their checks.  Any Settlement Checks not cashed within that period shall become void and the Settlement Administrator shall issue a "stop payment" thereon.  Any such voided checks shall become a part of the Unclaimed Funds.  The Settlement Administrator shall issue a reminder postcard via e-mail and First Class United States Mail 60 days after issuance of Settlement Checks to those Eligible Collective Members who, at the time of mailing the reminder postcard, have yet to negotiate their Settlement Checks, reminding them of the deadline to negotiate their Settlement Checks.

vi.     Defendant's Payroll Tax Responsibility and Tax Characterization of Payments.

   (a)     For tax purposes, 50% of the payment from the Net Settlement Fund to a Eligible Collective Member, pursuant to this Agreement, shall be treated as back wages and 50% of such payment shall be treated as interest, any applicable penalties, liquidated damages, and other non-wage relief.

   (b)     Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2.  Payments treated as Service Awards, interest and/or liquidated damages shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security number on an IRS Form 1099.  The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, issuing the Settlement Checks and Service Awards and issuing IRS Forms W-2 and Form 1099.  Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding, and be reported to the IRS and to each of Plaintiffs' Counsel payees under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

(c)     The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Participating Collective Member receiving a Settlement Check or Service Award.  The Parties make no representations, and it is understood and agreed that the Parties have made no representations, as to the taxability of any portions of the settlement payments to any Participating Collective Members, the payment of any costs or award of attorneys' fees, or any payments to the Named Plaintiff, California Opt-In Plaintiffs or Non-California Opt-In Plaintiffs. The Settlement Notice will advise Eligible Collective Members to seek their own tax advice prior to acting in response to that Settlement Notice.  Neither Plaintiffs' Counsel nor Defendant's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

(d)     None of the amounts paid to the Named Plaintiff, California Opt-In Plaintiffs, Non-California Opt-In Plaintiffs or Eligible Collective Members shall create any credit for, be included in, or otherwise affect the calculation or the accrual of any employee benefits in any plans, programs, agreements or policies sponsored, maintained or contributed to by Defendant, including for purposes of any bonus of any kind.

## 4.     RELEASE OF CLAIMS

4.1     Release by Participating Collective Members:  Conditioned upon the Court's entry of the Approval Order, and in exchange for the monetary consideration recited in this Agreement, all Participating Collective Members shall release Releasees from: (i) all FLSA claims alleged in the Complaint; (ii) all state, and local wage and hour claims related to the FLSA claims alleged in the Complaint, whether known or unknown, that were or could have been asserted in the Litigation and/or this matter, arising from that Participating Collective Member's employment as an Store Manager during the Relevant Period; and (iii) all related claims for penalties, liquidated damages, interest, attorneys' fees, costs or litigation expenses based on the claims listed above. The claims being released are referred to in this Agreement as "Released Claims."  The Released Claims include those that could have accrued through the date of the Court's Approval Order.

4.2     Any Eligible Collective Member who does not timely execute and return a Claim Form or negotiate their Settlement Check will not be bound by any release of claims.

4.3     The release by Named Plaintiff and Opt-In Plaintiffs: Named Plaintiff, California Opt-In Plaintiffs and Non-California Opt-In Plaintiffs who receive and accept a Service Award will additionally waive, release and discharge Releasees from all demands, claims and actions, whether known or unknown, relating to their employment or termination of employment with Defendant, including but not limited to claims under the Americans

DocuSign Envelope ID: D4A6539C-58C9-4875-9AE9-46FD3201CE22

With Disabilities Act, National Labor Relations Act, Fair Labor Standards Act (including but not limited to claims for overtime compensation) Equal Pay Act, Employee Retirement Income Security Act of 1974, Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, Civil Rights Acts of 1866, 1871 and 1991, Family and Medical Leave Act, and any other federal, state or local statute, regulation, and order, and in common law, through the date the respective Named Plaintiff or Opt-In Plaintiffs signs this Agreement; provided, however, that Named Plaintiff, the California Opt-In Plaintiffs and Non-California Opt-In Plaintiffs do not waive the right to file a charge or complaint with any administrative agency but they do waive any right to recover any damages or other personal relief based on any demand, claim or action waived in this Paragraph brought on their own behalf or by any third party, including as a member of any collective or class action. Named Plaintiff, California Opt-In Plaintiffs and Non-California Opt-In Plaintiffs do not release any claim that cannot be released as a matter of law or rights under this Agreement. Named Plaintiff, California Opt-In Plaintiffs and Non-California Opt-In are not waiving any rights that they may have to: (a) their own vested accrued employee benefits under Defendant's health, welfare, or retirement benefit plans as of her termination date; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; (d) enforce this Agreement; and/or (e) challenge the validity of this Agreement. Nothing in this Agreement prohibits or prevents the Named Plaintiff, California Opt-In Plaintiffs or Non-California Opt-In Plaintiffs from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.), nor does anything in this Agreement preclude, prohibit, or otherwise limit, in any way, the Named Plaintiff's, California Opt-In Plaintiffs' or Non-California Opt-In Plaintiffs' rights and abilities to contact, communicate with, report matters to, or otherwise participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, the Named Plaintiff, California Opt-In Plaintiffs and Non-California Opt-In Plaintiffs agree that if such an administrative claim is made, they shall not be entitled to recover any individual monetary relief or other individual remedies.

**4.4**    By signing the Agreement, Named Plaintiff become parties to the Agreement.

## 5.    PARTIES' AUTHORITY

**5.1**    The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

## 6.    MUTUAL COOPERATION

**6.1**    The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially

reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, and in accordance with its terms, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendant and its counsel, take all necessary steps to secure the Court's approval of this Agreement.

## 7. NOTICES

7.1     Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs and/or Settlement Class:

>   Gregg I. Shavitz
>   Shavitz Law Group, P.A.
>   951 Yamato Road, Suite 285
>   Boca Raton, FL 33431
>   (561) 447-8888
>   (561) 447-8831 (facsimile)
>   gshavitz@shavitzlaw.com

>   Troy Kessler
>   Kessler Matura P.C.
>   534 Broadhollow Road, Suite 275
>   Melville, New York 11747
>   (631) 499-9100
>   tkessler@kesslermatura.com

To Defendant:

>   Anne Marie Estevez
>   Morgan, Lewis & Bockius LLP
>   200 South Biscayne Boulevard, Suite 5300
>   Miami, FL 33131
>   (305) 415.3330
>   annemarie.estevez@morganlewis.com

## 8. NO ADMISSION OF LIABILITY

8.1     Defendant denies all of the allegations made by Named Plaintiff in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nothing herein will be deemed or used as an admission that a class should be certified for any purposes other than for settlement. Nonetheless, without admitting or conceding any liability or damages whatsoever,

Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation.

## 9. INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

**9.1** Further Acts.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**9.2** No Assignment.  Named Plaintiff, California Opt-In Plaintiffs and Non-California Opt-In Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.

**9.3** Entire Agreement.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**9.4** Binding Effect.  This Agreement shall be binding upon the Parties and, with respect to Defendant, their affiliates, parents, subsidiaries, predecessors, successors, employees and agents; and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**9.5** Arms' Length Transaction; Materiality of Terms.  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**9.6** Captions.  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**9.7** Construction.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**9.8** Governing Law.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**9.9** Continuing Jurisdiction.  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or

related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**9.10**   Waivers, etc. to Be in Writing.   No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment, with any required Court approval.   Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement

**9.11**   Counterparts.   The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**9.12**   Facsimile and E-mail Signatures.   This Agreement may be executed in counterparts, each of which shall be deemed as an original but all of which shall constitute one and the same instrument.   Signature pages may be executed by "wet" signature (i.e., using pen and paper) or electronic signature (e.g., using DocuSign).   The executed signature pages may be delivered using facsimile or electronic means, including pdf or similar file type transmitted via email, cloud-based server, or e-signature technology.

**9.13**   Signatories.   This Agreement is valid and binding if signed by Defendant's authorized representative and Named Plaintiff.

**WE AGREE TO THESE TERMS.**

DATED: _____          **LANE BRYANT, INC.**

By: _____

_____

DATED: May 11, 2020          **AMANDA MEO**

_____
88B2E96ADDB44BC...

related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

9.10    Waivers, etc. to Be in Writing. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment, with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement

9.11    Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

9.12    Facsimile and E-mail Signatures. This Agreement may be executed in counterparts, each of which shall be deemed as an original but all of which shall constitute one and the same instrument. Signature pages may be executed by "wet" signature (i.e., using pen and paper) or electronic signature (e.g., using DocuSign). The executed signature pages may be delivered using facsimile or electronic means, including pdf or similar file type transmitted via email, cloud-based server, or e-signature technology.

9.13    Signatories. This Agreement is valid and binding if signed by Defendant's authorized representative and Named Plaintiff.

**WE AGREE TO THESE TERMS.**

DATED: _5/11/2020_          **LANE BRYANT, INC.**

By: _____

_____
EVP- CFO

DATED: _____          **AMANDA MEO**

_____

Page 17 of 17

# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

AMANDA MEO, on behalf of herself and all others
similarly situated,

               Plaintiff,

    -against-

LANE BRYANT, INC.,

               Defendant.

---

Case No. 18 Civ. 6360 (AKT)

## STIPULATION AND [*PROPOSED*] ORDER OF DISMISSAL

The parties, through their undersigned counsel, stipulate and agree as follows:

1.      The Settlement Agreement, including the Plaintiffs' requests for Service Awards, payment of the Settlement Administrator's costs, and Plaintiffs' Counsel's  attorneys' fees and costs, is fair and reasonable, and adequate to redress Plaintiffs' claims under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. ("FLSA") in this action and to compensate Plaintiffs' Counsel on their request for attorneys' fees and costs.

2.      In accordance with Rule 41 of the Federal Rules of Civil Procedure, and *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the Parties respectfully request that this action be dismissed with prejudice, without costs or attorneys' fees (other than those costs and attorneys' fees specified in the Settlement Agreement).

*Attorneys for Plaintiff and the FLSA Collective*     *Attorneys for Defendant*

Date:_____       Date:_____

By:_____       By:_____

1

**KESSLER MATURA P.C.**
Troy L. Kessler
Garrett Kaske
534 Broadhollow Road, Suite 275
Melville, NY 11747
Phone:  (631) 499-9100
Fax:  (631) 499-9120
tkessler@kesslermatura.com
gkaske@kesslermatura.com

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz*
Logan Pardell*
981 Yamato Road, Suite 285
Boca Raton, Florida 33431
Phone:  (561) 447-8888
Fax:  (561) 447-8831
gshavitz@shavitzlaw.com
lpardell@shavitzlaw.com
* admitted *pro hac vice*

Michael J. Palitz
830 3rd Avenue, 5th Floor
New York, New York 10022
Phone:  (800) 616-4000
Fax:  (561) 447-8831
mpalitz@shavitzlaw.com

**MORGAN, LEWIS & BOKIUS LLP**
Sean P. Lynch
502 Carnegie Center
Princeton, New Jersey 08540
Phone:  (609) 919-6611
Fax:  (609) 919-6701
sean.lynch@morganlewis.com

Anne Marie Estevez
200 South Biscayne Blvd. – Suite 5300
Miami, Florida 3331-2339
Phone: (305) 415-3330
Fax: (877) 432-9652
annemarie.estevez@morganlewis.com

SO ORDERED on this _____ day of _____, 2020

_____
A. KATHLEEN TOMLINSON
United States Magistrate Judge

2

# **<u>Exhibit B.1</u>**

**United States District Court, Eastern District of New York**
*Meo. v. Lane Bryant, Inc.*, Case No. 2:18-cv-6360 (AKT)

[NAME]
[ADDRESS]
[CITY, STATE ZIP]

## COURT-AUTHORIZED NOTICE OF SETTLEMENT

- A former Lane Bryant Store Manager ("Plaintiff") sued Lane Bryant, Inc., claiming that she and other Lane Bryant Store Managers were owed overtime compensation under the Fair Labor Standards Act ("FLSA") for hours that they worked over 40 in a workweek for which they were not paid.

- Plaintiff claims that Lane Bryant failed to pay its hourly-paid Store Managers all of the overtime pay that they were owed.  Plaintiff alleges that Lane Bryant required her and other Store Managers to work "off the clock" – that is, before and after their shifts, or through their lunchbreaks, without being clocked in – and to otherwise under-report their time worked. Lane Bryant denies these allegations and raised various defenses.

- Ultimately, though Lane Bryant denies the allegations made by Plaintiff in the Lawsuit, Lane Bryant decided to settle the Lawsuit to avoid the continued expense and distraction from to operating its business. The Court approved the settlement and certain Store Managers are entitled to money from this settlement.

- You are receiving this Notice because records show that you were an hourly-paid Store Manager during the relevant time periods, which means you are eligible to receive money from the settlement. This Notice tells you about your rights and responsibilities under the settlement.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM BY THE DEADLINE** | By properly completing and returning the enclosed Claim Form by [date 60 days from mailing of Notice or 30 days from remailing ("Deadline")], you will receive a settlement check in an amount estimated to be $[AMOUNT].  In exchange, you will be releasing Lane Bryant of the FLSA claims alleged in this case, along with related state and local wage and hour claims. |
| **DO NOT SUBMIT A CLAIM FORM BY THE DEADLINE** | If you do not submit a Claim Form by the Deadline, you will receive a settlement check in an amount estimated to be $[1/2 AMOUNT], which is half of the you would receive by submitting a claim form. |
| | If you negotiate (cash, indorse or deposit) the settlement check, you will be releasing Lane Bryant of the FLSA claims alleged in this case, along with related state and local wage and hour claims. |
| | If you do not submit a claim form by the Deadline or cash the settlement check, you retain the right to pursue these claims against Lane Bryant in a subsequent action, subject to the applicable statute of limitations. |

**This notice contains information that affects your rights.  Please read it carefully.**

## 1.   What are the terms of the Settlement Agreement?

Lane Bryant will pay a total of up to $1,395,000 (the "fund") to compensate hourly Store Managers who worked: (i) in Connecticut, Idaho, Illinois, Iowa, Kansas, Nevada, New York, Ohio, Pennsylvania, Rhode Island, or Tennessee between November 8, 2015 and February 25, 2020; or (ii) in any other state besides California between February 25, 2017 and February 25, 2020.  The fund will also cover the settlement administrator's costs, Plaintiffs' attorneys' fees and costs, and service awards to the Plaintiff and other individuals who submitted evidence in support of the case.

## 2.   How was my share of the settlement payment calculated?

The amount that each Store Manager is eligible to receive under the terms of the settlement is based upon the number of weeks that the individual worked as a Store Manager within the relevant periods discussed in Section 1.  The number of weeks that you worked as a Store Manager and recorded at least 38 hours worked during the relevant periods was used to determine your settlement allocation.

Your total individual settlement amount is estimated to be $[ **AMOUNT**], less deductions for applicable payroll taxes on the W-2 portion of the settlement payment.  Half of this payment is subject to deductions for applicable taxes and withholdings like any other paycheck, for which you will receive a W-2, and half of the payment will be reported on a 1099 form.

*Plaintiffs' Counsel, Lane Bryant's Counsel, and Lane Bryant and all Releasees do not make any representations concerning the tax consequences of this settlement.  Consult with a tax advisor regarding the payment.*

## 3.   How do I get my payment?

To receive your settlement payment of approximately $[ **AMOUNT**], you must submit a completed Claim Form by [**Deadline**].  A Claim Form is enclosed with this Notice.  You may submit this form using the enclosed pre-paid envelope, by e-mail to [address], by facsimile to [number], or via regular mail addressed to [Settlement Administrator address].  You may also submit the Consent to Join and Claim Form online by logging onto www.[URL].com, using [identifier] as your log-in name and the last four digits of your Social Security Number as the password.

If your Claim Form is not submitted by [**deadline**], you will still receive a settlement check for one half of the amount you are estimated to receive.  That is, if do no return a timely and complete Claim Form your settlement payment is estimated to $[ **½ AMOUNT**].

Although we do not know the exact date when you will get your check, the settlement checks are expected to be mailed out on or before [**105 days from mailing of Notice**].  Upon issuance, those settlement checks that are not cashed on or before the 120th day after they are mailed will be null and void.

**4.   What is the legal effect of the settlement?  Am I giving up anything?**

If you submit your Claim Form or negotiate (cash, indorse or deposit) your settlement check, you will release Lane Bryant and all Releasees (as defined in the settlement agreement) from all state, federal, and local overtime claims that could have arisen up to and including [**approval order date**], whether known or unknown, that were or could have been asserted in this case, arising from your employment as an hourly Store Manager.  The Released Claims also include related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.   For hourly Store Managers employed in New York, this also includes claims for unpaid non-overtime hours and alleged paystub deficiencies.

**4.  What happens if I do nothing?**

If you do not return the Claim Form or negotiate (cash, indorse or deposit) your settlement check within the time allotted, you waive your right to benefit financially from this case.  As a result, you will not release any claims you may have against Lane Bryant.  This means you will retain the right to file your own case.  Because the types of claims brought in this case are subject to certain filing deadlines – the statute of limitations – you should consult an attorney if you are considering this option.

**5.   How will the lawyers get paid?**

The Court has approved payment to Plaintiffs' Counsel of one-third of the settlement fund for attorneys' fees.  These fees compensate Plaintiffs' Counsel for investigating the facts, litigating the case, and negotiating the settlement.  The Court also has approved payment of Plaintiffs' Counsel's out-of-pocket costs.  The costs of the Settlement Administrator are also paid from the settlement fund.  In addition, the Court has approved payments to the Plaintiff and 15 other plaintiffs to recognize the risks they took and the service to the collective action, including representing your interests as authorized.

**6.   Are there more details about the Settlement?**

This Notice summarizes the key provisions of the settlement.  More details are in the Settlement Agreement.  To the extent there is any inconsistency between this Notice and the Settlement Agreement, the provisions in the Settlement Agreement control.  You may obtain a copy of the Settlement Agreement by sending a request, in writing, to the Settlement Administrator at the contact information listed in Section 3, above.

If you have other questions about the settlement, you can contact the Settlement Administrator, or Plaintiffs' Counsel at:

Troy Kessler                                      Gregg I. Shavitz
Garrett Kaske                                     Michael Palitz
Kessler Matura P.C.                               Logan Pardell
534 Broadhollow Road, Suite 275                   Shavitz Law Group, P.A.
Melville, New York 11747                          951 Yamato Road, Suite 285
Telephone: (631) 499-9100                         Boca Raton, Florida 33431
E-mail: info@kesslermatura.com                    Telephone: (800) 616-4000
                                                  E-mail: info@shavitzlaw.com

You can also visit www.[URL].com using [Identifier] as the log-in name and the last four digits of your Social Security Number as the password.

Dated:  [INSERT DATE]

# **<u>Exhibit B.2</u>**

*Meo v. Lane Bryant, Inc.*, No. 18 Civ. 6360 (E.D.N.Y.)

[NAME]
[ADDRESS]
[CITY, STATE ZIP]

## CONSENT TO JOIN SETTLEMENT, RELEASE, AND CLAIM FORM

**DEADLINE:** This form must be returned to the Settlement Administrator so that it is postmarked or otherwise received by mail delivery, facsimile, email, or through the website by [60 DAYS FROM DATE OF MAILING OR DAYS FROM REMAILING].  If you lose the enclosed return envelope, you should send the Claim Form to:

Lane Bryant Store Manager Settlement
Address
City, State Zip
Phone: (___) ___-____
Facsimile: (___) ___-____
E-mail:_____
Website
(Your log-in is [Identifier] and your password is the last four digits of your Social Security Number)

**CHANGE OF ADDRESS:** If you change your address, please inform the Settlement Administrator of your new address to ensure processing of your claim.  It is your responsibility to keep a current address on file with the Settlement Administrator.

**CONSENT TO JOIN & AGREEMENT TO BE BOUND TO RELEASE:** I hereby acknowledge that I have read the Notice of Collective Action Settlement, and I consent and opt in to become a party plaintiff for settlement purposes in this lawsuit.  I consent and agree to be bound by the Joint Stipulation of Settlement and Release, and any adjudication of this action by the Court. I hereby designate Shavitz Law Group, P.A., and Kessler Matura P.C. to represent me in this action.  I understand that, by returning this Claim Form, I fully release the Released Parties from the Released Claims, including but not limited to claims for unpaid overtime, to the full extent provided by the Joint Stipulation of Settlement and Release.

Signature: _____   Date:_____

Print:_____
            First                                    Middle                        Last
Former Names worked under, if any:_____

_____
Street Address

_____
City                                            State                              Zip Code

_____
Email Address                          Home Phone                    Cell Phone

# **Exhibit C**

[Settlement Administrator]
P.O. Box XXX
[City], [State] [Zip]

[Name]
[Address]
[City], [State] [Zip]

**RE: <u>Lane Bryant Store Manager Settlement</u>**

# Exhibit D

**Lane Bryant Store Manager Settlement**
c/o XXX
P.O. Box XXX
[City], [State] [Zip]


**Forwarding Service Requested**



[insert name and address of class member]


---

**REMINDER REGARDING THE
LANE BRYANT STORE MANAGER SETTLEMENT**

You should have received a Notice explaining that you are eligible to participate in a settlement for certain current and former Store Managers.

Our records show that you have not submitted a Claim Form.  If you would like to receive your full proportionate share of the settlement, you must complete a Claim Form and mail, fax, or email it by [date] to the Settlement Administrator at:

**[Settlement Administrator]
P.O. Box XXX
[City], [State] [Zip]
Phone: (XXX) XXX-XXX
Fax: (XXX) XXX-XXXX
E-mail: XXX@XXX.com**

**You may also submit the Claim Form at www.[URL].com. Your login is [Identifier] and your password is the last four digits of your Social Security Number.**

If you have any questions, you can contact the Settlement Administrator at [insert number] and [insert e-mail address].  Thank you.