

May 5, 2021

**<u>Via ECF</u>**
Hon. A. Kathleen Tomlinson, U.S.M.J.
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      **Re:** *Meo v. Lane Bryant, Inc.*
            Case No. 18 Civ. 6360 (AKT)

Dear Judge Tomlinson:

Kessler Matura P.C. and Shavitz Law Group, P.A., ("Plaintiffs' Counsel") represent Plaintiff, Amanda Meo, and the 15 Opt-In Plaintiffs (collectively, "Plaintiffs"). Plaintiffs write to request that the Court: (1) reopen this case for the limited purposes of reviewing the parties' revised Settlement Agreement; (2) approve the revised Settlement Agreement (Ex. 1) for the reasons set forth below; and (3) so order the Proposed Approval Order (Ex. 2).

## I.    Factual and Procedural Background

### A. The Original Settlement.

This is a collective action lawsuit brought under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") to recover unpaid overtime on behalf of non-exempt, hourly-paid Store Managers ("SMs") who worked at Defendant's Lane Bryant retail stores nationwide. Plaintiffs allege that, due to a company-wide policy or practice discouraging the recording of overtime hours, SMs worked off the clock in the store – assisting customers and stocking – and outside of the store – scheduling, on calls, marketing, and responding to associates. *See* Ex. 4 (Kessler Decl., May 11, 2020) ¶¶ 4-5. Plaintiffs worked as SMs at over 35 different stores in 12 states. *Id*. ¶ 5.

Plaintiff Meo filed this action on November 8, 2018. *Id*. ¶ 8. On December 18, 2018, Lane Bryant answered the Complaint. *Id*. ¶ 9. On January 25, 2019, Plaintiff moved for conditional certification. *Id*. ¶ 10. By February 28, 2019, Plaintiff's motion for conditional certification was fully briefed. *Id*. After the initial conference on April 2, 2019, the Parties engaged in paper discovery while Plaintiff's motion was pending. *Id*. ¶ 14.

On September 30, 2019, the Court conditionally certified a collective of SMs from the 12 states in which Plaintiffs and known witnesses had worked. *Meo v. Lane Bryant, Inc.*, No. 18 Civ. 6360, 2019 WL 5157024, at *10 (E.D.N.Y. Sept. 30, 2019). After agreeing upon the final notice, the Parties agreed to mediate before disseminating it. Ex. 4 (Kessler Decl., May 11, 2020) ¶¶ 16-



18. As such, the Parties engaged in an informal data exchange and executed a tolling agreement. *Id.* ¶¶ 18, 21-24.

On February 25, 2020, the Parties settled after a full day of negotiations facilitated by experienced mediator Stephen Sonnenberg, Esq. *Id*. ¶ 26. On May 11, 2020, following over two months of further negotiations, the Parties executed a formal settlement agreement. *Id*. ¶ 28.

On July 17, 2021, Your Honor approved the Settlement Agreement on July 17, 2021, with a Gross Settlement Amount of $1,395,000.00, and closed the case. *See* ECF Nos. 57 (Order Approving Settlement and Dismissal with Prejudice of Claims ("Approval Order")), 58 (Stipulation and Order of Dismissal). The Approval Order and original Settlement Agreement provides that Your Honor retains jurisdiction over this matter, for purposes of enforcement of the settlement. *Meo v. Lane Bryant, Inc.*, No. 18 Civ. 6360, 2020 WL 4047897, at *3 (E.D.N.Y. July 17, 2020) (ECF No. 57) ("Pursuant to the terms of the Settlement Agreement, the Court retains jurisdiction over this matter for purposes of enforcement of the settlement. Settlement Agreement, Section 9.9.").

**B. Defendant's Bankruptcy and The De Minimis Claims Order.**

On July 23, 2020, Defendant filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia. *See* ECF No. 59 (Notice of Suggestion of Bankruptcy). Defendant's bankruptcy filing occurred prior to the funding of the original Gross Settlement Amount. *See* Kessler Decl. ¶ 8.

In order to protect the interests of Plaintiffs and the putative class and collective action, Plaintiffs' Counsel retained Matthew Dundon, Esq. of Dundon Advisers, LLC, a firm which concentrates in asset management, restructuring advisory, and credit origination and transaction services. *Id*. ¶ 9. The Named Plaintiff immediately sought to be appointed to the Official Committee of Unsecured Creditors. *Id*. ¶ 10. After an interview, the United States Trustee appointed the Named Plaintiff to the Official Committee and she, along with Plaintiffs' counsel and her advisers, served in the Bankruptcy Cases prior to the efficacy of the Plan. *Id*. ¶ 11. The Named Plaintiff and her advisers accordingly devoted considerable time and effort for the benefit of all unsecured creditors with claims in the Bankruptcy Cases. *Id*. ¶ 12.

On November 10, 2020, the Hon. Kevin R Huennekens, U.S.B.J., issued an Order which allowed the Parties to this litigation to resolve their claims outside of the bankruptcy court, so long as the Settlement Amount was $500,000.00 or less. *See In re Ascena retail Group, Inc.*, No. 20-33113, Doc. No. 1110 (E.D. Va. Bankr. Nov. 12, 2020) ("De Minimis Claims Order") (attached as Exhibit 3).



### C. The Revised Settlement Agreement.

Thereafter, over the course of the next several months, the Parties discussed resolving this matter for a revised settlement amount which was within the boundaries set by the De Minimis Claims Order. Kessler Decl. ¶ 14.

Given the Defendant's bankruptcy, the Parties agreed to settle the claims of Plaintiffs and the members of the nationwide FLSA Collective ("Collective Members") for the revised gross settlement amount of $350,000.00. *Id*. ¶¶ 15, 17. Consistent with the original Settlement Agreement, the proposed settlement creates a common fund from which the Collective Members will receive a payment based on their pro-rata share, based on the amount of eligible weeks worked, and in exchange the Collective Members who negotiate their checks will release their FLSA and applicable state law claims. *Id.* ¶ 18.

After approval, the Settlement Administrator will mail the proposed Notice and Claim Forms to the estimated 900 Collective Members, who will have 60 days to return the Claim Form. *Id*. ¶ 19. Thereafter, the Settlement Administrator will mail settlement checks to all Collective Members, regardless of whether they return a Claim Form. *Id*. ¶ 20. The settlement checks will total 100% of their pro-rata share for Collective Members who return Claim Forms and 50% of their pro-rata share for those who do not. *Id*.

## II. The Settlement is Fair and Reasonable

In addition to the reasons set forth in Plaintiffs' prior motion (ECF No. 55) and Your Honor's original Approval Order, the Amended Settlement warrants settlement approval because it is a fair, reasonable, and arms-length resolution reached during the pendency of a bankruptcy matter. As a result, this letter will only address the main issue: whether the reduced value of the settlement should stand in the way of its approval. In short, it should not. The bankruptcy has rendered the collectability of the original Settlement Amount, or an amount greater than the Amended Settlement, improbable.

Courts have found that even the likelihood of bankruptcy or a bankruptcy of one of the defendants weighs strongly in favor of approval. *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *1 (S.D.N.Y. Dec. 14, 2015); *Cortes v. New Creators, Inc.,* No. 15 Civ. 5680, 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016). Because of the finality of bankruptcy, the settlement of pre-petition claims may not require judicial approval if the bankruptcy proceeding has already run its course. *Gao v. Perfect Team Corp*., 249 F. Supp. 3d 636, 639 (E.D.N.Y. 2017).

Here, because continuing to press for a greater recovery in the bankruptcy matter is a substantial all-or-nothing risk on top of proving the collective's liability under the FLSA, the settlement amount is fair and reasonable. Kessler Aff. ¶¶ 21-22.


**III.     Plaintiffs' Request for Attorneys' Fees and Service Awards.**

The Parties have agreed that Plaintiffs' Counsel's attorneys' fees will be one-third of the gross settlement amount.  Plaintiffs' Counsel, which now includes bankruptcy counsel Dundon Advisers, LLC,  requests fees amounting to $116,666.67, which is less than 0.4 times their lodestar amount of $304,630.00 at the time of Plaintiffs' first motion for approval and *before* the bankruptcy matter.  Kessler Decl. ¶ 26; ECF No. 55-4 (Summary).  Plaintiffs' Counsel's fee request of $116,666.67 is inclusive of Dundon Advisers' fee.  Because Plaintiffs' Counsel is only seeking one-third of the revised settlement amount, which is significantly less than their lodestar amount (and significantly less than the previously approved attorneys' fees), it should be approved. *See* Kessler Decl. ¶¶ 27-29.

Consistent with the original Settlement Agreement, Plaintiffs again request $50,000 in aggregate service payments for Plaintiff Meo, eight declarant-Opt-In Plaintiffs, and seven Opt-In Plaintiffs, in the amounts of $9,000, $2,850, and $2,600, respectively.  *See* Ex. 1 (Agr.) § 3.3.  These payments are reasonable and should again be approved.  In addition to the reasons set forth in the prior motion, it is important to note that Plaintiff Meo has been actively involved in the bankruptcy matter and without her contributions, the putative collective may not have achieved the second settlement at all.  *See* Kessler Decl. ¶¶ 23, 24.

**IV.     Conclusion**

Plaintiffs request that Your Honor approve the revised Settlement Agreement, and so order the proposed revised approval order.  While mindful of Your Honor's extensive docket, given the economic hardships caused by the coronavirus pandemic and the impact Defendant's bankruptcy has had upon Plaintiffs, the Plaintiffs respectfully request that this matter be considered in an expedited manner.

Thank you for Your Honor's consideration of this matter.

                                                  Respectfully submitted,

                                                  /s/ Troy L. Kessler
                                                     Troy L. Kessler

Enc.